UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
RINA OH n/k/a RINA OH AMEN,                        Case No.: 21-cv-8839

                                  Plaintiff,

                    -against-


VIRGINIA L. GIUFFRE
                                  Defendant.
---------------------------------------------------------X


**MEMORANDUM IN SUPPORT OF DEFENDANT VIRGINIA L. GIUFFRE'S
MOTION FOR SUMMARY JUDGMENT PURSUANT TO
<u>FEDERAL RULE OF CIVIL PROCEDURE 56 (a)</u>**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................1

STATEMENT OF FACTS ....................................................................................1

BACKGROUND ........................................................................................2

    A.   Parties ...........................................................................................2

    B.   Events Leading Up to the Comments Posted on Twitter ...............................2

    C.   Plaintiff Omits the Full Context of the Challenged Communications .....................3

    D.   Plaintiff Engaged in the Epstein Discourse on Twitter Before and After this Action.4

ARGUMENT ...........................................................................................11

    A.   Legal Standard ..............................................................................11

    I.    DEFENDANT'S STATEMENTS ARE NON-ACTIONABLE PROTECTED
OPINION MADE IN THE BROADER CONTEXT OF A SOCIAL MEDIA FEUD. ......12

    A.   Expressions of Opinion are Protected by the First Amendment ...............................12

        1)   Expressions of Opinion are Not Defamation by Definition..........................................12

        2)   Courts Apply a Factors Test.......................................................................13

    B.   The Overall Context of the Statement is the Most Critical Factor ...........................14

    C.   Statements Made in the Context of a Social Media Communications are Generally
Considered Protected Opinions. .........................................................................15

    D.   Hyperbole is Protected Opinion ...................................................................17

    E.   Within the Broader Context of this Online Dispute, Defendant's Comments are Not
Actionable ..........................................................................................18

    F.   Defendant's Comments on Twitter are Protected Speech .........................................18

**II. PLAINTIFF FAILS TO SHOW THAT DEFENDANT'S TWEET MEET THE ACTUAL MALICE STANDARD** ........................................................................22

   **A.  Applicable Standard** ........................................................................22

   **B.  Defendant Does Not Need to Prove that Plaintiff was a Public Figure or Even a Limited Public Figure for Actual Malice Standard to Apply** ..............................................23

   **C.  Plaintiff Cannot Prove that Defendant Acted with Actual Malice** ............................24

**III. THIS COURT LACKS SUBJECT MATTER JURISDICTION** ....................................25

   **A.  This Court Lacks Jurisdiction Where there is a Legal Certainty that Plaintiff Cannot Recover the Statutory Jurisdictional Amount** ..........................................25

   **B.  It is a Legal Certainty that Plaintiff Fails to Establish that She can Recover the Amount in Controversy** ........................................................................26

      1)  Plaintiff and Defendant's Expert both Attribute Any Emotional Injuries to Other Sources ........................................................................27

      2)  Plaintiff Fails to Meet her Burden to Show Economic Damages ............................28

## <u>TABLE OF AUTHORITIES</u>

*600 West 115th Street Corp. v Von Gutfeld,*
    80 NY2d 130 [1992]……………………………………………………………………19

*Adelson v Harris,*
    876 F3d 413 [2d Cir 2017]……………………………………………………………..19

*Amendola v Cavallero,*
    SDNY, Jan. 13, 2025, 23-CV-10607 (KMK)………………………………….………27

*Bellavia Blatt & Crossett, P.C. v Kel & Partners LLC,*
    151 F Supp 3d 287, 295 [EDNY 2015]……………………………………… 16, 17

*Brian v. Richardson,*
    87 N.Y.2d 46, 51 (1995)…………………………………………………………………14

*BYD Co. Ltd. v. VICE Media LLC,*
    531 F.Supp.3d 810, 823 [S.D.N.Y. 2021]………………………………………………26

*Celle v. Filipino Reporter Enters.*
    209 F.3d 163, 177 [2d Cir. 2000]……………………………………………………...14

*Celotex Corp. v Catrett,*
    477 US 317, 322 [1986]………………………………………………………....12

*Center for Medical Progress v Planned Parenthood Federation of Am.,*
    551 F Supp 3d 320, 325 [SDNY 2021]……………………………………….………13

*Cestaro v Prohaska,*
    681 F Supp 3d 121, 125 [SDNY 2023]………………………………………….....12

*Chau v. Lewis,*
    771 F.3d 118, 129 [2d Cir. 2014]…………………………………………………......15

*Contemporary Mission, Inc. v N.Y. Times Co.,*
    842 F2d 612 [2d Cir 1988]……………………………………………………….....25

*Dillon v City of New York,*
    261 AD2d 34, 38 [1st Dept 1999]……………………………………………………18, 22

*Donald J. Trump for President v WP Co.,*
    [DDC, Feb. 3, 2023, Civil Action 20-626 (RC)]…………………………….…15, 17, 21

*Flamm v American Ass'n of University Women,*
    201 F3d 144, 153 [2d Cir 2000]………………………………………….…….…15, 19

*Gonzalez v. City of* Schenectady,
  728 F.3d 149, 154 (2d Cir.2013)………………………………………...…..12

*Graubart v Jazz Images, Inc.,*
  [SDNY, Apr. 27, 2006, No. 02-CV-4645 (KMK)]……………………….…...…27

*Holland v Lions Gate Entm't & Films,*
  [SDNY, May 2, 2024, 21-CV-2944 (AT) (JLC)]…………………..…………...25, 26

*Jacob v Lorenz,*
  626 F Supp 3d 672 [SDNY 2022]……………………………………….....…24, 25

*Khan v New York Times Co.,*
  269 AD2d 74, 77 [1st Dept 2000]……………………………………….……26

*Live Face on Web, LLC v Five Boro Mold Specialist Inc.,*
  [SDNY, Apr. 28, 2016, No. 15 CV 4779-LTS-SN]………………………….……16

*Mann v Abel,*
  10 NY3d 271 [2008]……………………………………………………….……14

*Max v Lissner,*
  [SDNY, Mar. 3, 2023, 22-CV-5070 (VEC)]……………………..……...……25

*Mirza v Amar,*
  513 F Supp 3d 292, 297 [EDNY 2021]……………………………………...14

*New York Times Co. v Sullivan,*
  376 US 254 [1964]……………………………………………………………14

*Palin v N.Y. Times Co.,*
  940 F3d 804, 809 [2d Cir 2019]…………………………………………….....13

*Rapaport v Barstool Sports Inc.,*
  [2d Cir, Jan. 9, 2024, 22-2080-cv]……………………………………15, 16, 19

*Rosa v Eaton,*
  [SDNY, June 25, 2024, 23 Civ. 6087 (DEH)]…………………….…...…....18, 19, 20

*Satz v Org. for The Resolution of Agunot,*
  [SDNY, Mar. 28, 2024, 23-cv-36 (MKV)]…………………………………...13, 14

*Small Bus. Bodyguard Inc. v House of Moxie, Inc.,*
  230 F Supp 3d 290 [SDNY 2017]……………………………………………18, 19

*Steinhilber v Alphonse,*

68 NY2d 283 [1986]………………………………………………………………………………14

*Stolatis v Hernandez,*
    77 NYS3d 473, 475 [2d Dept 2018]……………………………………………14, 17

*Sweigert v Goodman,*
    [SDNY, Apr. 22, 2021, 1:18 cv-08653 (VEC) (SDA)]………………………………..23

*Tagliaferri v Szulik,*
    [SDNY, May 25, 2016, 15 Civ. 2685 (LGS)]…………………………………….18, 20

*Tongkook America, Inc. v Shipton Sportswear,*
    14 F3d 781, 785 [2d Cir 1994]………………………………………………… 27

*Uribe v Nieves,*
    [EDNY, Sep. 13, 2022, No. 17-CV-5155-RPK-JRC]…………………………………19

*Valley Elecs. AG v Polis,*
    [2d Cir, Mar. 28, 2022, 21-2108-cv]……………………………………………..19

## **Federal Rules**

Fed. R. Civ. P. 12. (b)………………………………………………..……………..26

Fed. R. Civ. P. 56 (a)………………………………………………………………12

## **Statutes**

28 U.S.C. § 1332………………………………………………………………………..26

New York Civil Rights Law § 76……………………………………………………23, 24, 25

## PRELIMINARY STATEMENT

Plaintiff Rina Oh Amen's ("Plaintiff" or "Ms. Oh Amen") has instituted this present lawsuit as an apparent effort to silence speech by Defendant Virginia Giuffre ("Defendant" or "Ms. Giuffre"), a recognized survivor of the prolific sexual abuser and human trafficker, Jeffrey Epstein, which is protected by the New York and Federal constitutions. Plaintiff's sole defamation claim against Ms. Giuffre arises from a podcast in which Plaintiff willingly participated, in which Plaintiff discussed allegations by Epstein survivors that she had recruited women to Epstein for abuse. Plaintiff immediately regretted her comments when the podcast, *Broken: Seeking Justice*, released the episode, entitled, "The Recruiters" and sought to sue the producers and media company in an effort to claw back her statements. Upon realizing the insurmountable task of taking on media giants in a defamation litigation, Plaintiff turned her sights on Ms. Giuffre.

Plaintiff initiated this defamation lawsuit based solely a limited series of tweets that Ms. Giuffre posted as genuine reactions immediately upon hearing Plaintiff's comments on the podcast. For Ms. Giuffre, the tweets ended there, but Plaintiff and her husband, Vincent Amen, continue their one-sided Twitter feud to this day. Meanwhile, Ms. Giuffre has been forced to endure the emotional and financial burden of litigating a retaliatory case that has no legal basis. Now, upon the close of discovery, Ms. Giuffre respectfully requests this Honorable Court to dismiss the claim against her pursuant to Federal Rule of Civil Procedure 56(a).

## STATEMENT OF FACTS

For a complete statement of material facts assumed to be undisputed for purposes of Defendant's Motion for Summary Judgment only, the Court is respectfully referred to Plaintiff's

1

Local Civil Rule 56.1 Statement, dated February 17, 2025 ("Pl.'s 56.1") which is submitted concurrently herewith.

A brief recitation of the salient facts is set forth herein for the Court's consideration:

## BACKGROUND

### A. Parties

Plaintiff Rina Oh Amen (hereinafter "Plaintiff" or "Ms. Oh Amen") is an adult female residing in New Jersey. Am. Compl. ¶1. She identifies as a "respected and well regarded artist." Am. Compl. ¶6.

Defendant Virginia L. Giuffre (hereinafter "Defendant" or "Ms. Giuffre") is an adult female citizen of Colorado, residing in Australia. Am. Compl. ¶2. From as early as 2007, Ms. Giuffre has been identified as a victim of child sexual abuse and sex trafficking by Jeffrey Epstein and others in his circle. (SOMF ¶ 15).

### B. Events Leading Up to the Comments Posted on Twitter

Prior to October 2020, the podcast series, *Broken: Seeking Justice*, ("Podcast") produced by an investigative journalist, Tara Palmeri, was published by Sony Entertainment, and told the stories of women who were victimized by Jeffrey Epstein, as well as exposed others in Epstein's circle of confidantes and enablers. (SOMF ¶ 18). Both Plaintiff and Defendant voluntarily participated in interviews that were to become part of an episode of the Podcast. (SOMF ¶¶ 19, 22, 23).

As part of the interview, Plaintiff admitted that she brought three women to meet Jeffrey Epstein, including another participant in the Podcast, Marijke Chartouni.    (SOMF ¶¶ 7, 10). Plaintiff was identified as a "recruiter" for Jeffrey Epstein in the "Recruiter" episode of the Podcast. (SOMF ¶¶ 23, 24).

2

During the interviews with Defendant, Defendant described her encounters with Plaintiff and identified her as abuser that had sexually abused Plaintiff as a minor. For example, Plaintiff stated that Defendant used a razor to cut her body during the sex acts and showed Ms. Palmeri a scar that remains on her leg. (SOMF ¶¶ 21). Defendant also testified in deposition about the same acts of abuse (SOMF ¶¶ 29 - 35). When asked to respond, Plaintiff in her separate interview denied harming Defendant and claimed that she "was nothing but nice to this girl." (SOMF ¶ 26).

On October 28, 2020, Ms. Tara Palmeri posted on the social media platform Twitter (now X) about the release of the "Recruiter' episode that featured the parties' interviews. (SOMF ¶ 36).

The same day, Defendant listened to the Podcast episode and became very upset when she heard Plaintiff's interview. (SOMF ¶ 36).

Ms. Giuffre testified as follows:

> I believe it was the same day. I  believe it was the same day. I just remember listening to it and it made me so mad, like just  hearing her voice and, like, saying, you know, like, "I wasn't a victim, I was Jeffrey's girlfriend, and he was my sugar daddy," and then she, like, called  me a liar and -- you know. It just -- it was infuriating.

Deposition of Virginia Giuffre, 225: 9 -16.

The same day that Tara Palmeri posted about the release of the "Recruiter" episode, Ms. Giuffre emotionally reacted on Twitter to Plaintiff's comments about her for the Podcast episode. (SOMF ¶ 37). Those tweets form the basis of Plaintiff's lawsuit.

### C. Plaintiff Omits the Full Context of the Challenged Communications

Defendant alleges that nine comments posted on Twitter by Defendant caused her alleged damages (Pl. Amed. Comp. ¶¶ 16, 17. Dk. No. 12). Conveniently, Plaintiff does not disclose the full context of the communications. The references and context are omitted.

3

Screenshots of the subject nine tweets in their entirety are incorporated in the accompanying Defendant's Statement of Facts, paragraphs 53 – 82 and annexed as Exhibit N.

Defendant respectfully refers the Court to the accompanying Defendant's Statement of Facts, paragraphs 18 – 82, for the full discussion on the actual context and references Ms. Giuffre makes in her statements.

### D. Plaintiff Engaged in the Epstein Discourse on Twitter Before and After this Action

For over a decade, Twitter has been a known social media platform for people to air the views, opinions, feelings, and comments in connection with the Jeffrey Epstein "saga." (*See e.g.*, SOMF ¶¶ 11, 12). In 2019, Plaintiff also posted on Twitter in connection with the Jeffrey Epstein. For example, Plaintiff responded on September 13, 2019, to a Twitter post about Defendant being a victim of Jeffrey Epstein, stating "Let her get justice." (SOMF ¶¶ 11). In a post from August 28, 2019, Ms. Oh Amen tweets support for Ms. Giuffre in response to a post about Prince Andrew (SOMF ¶¶ 11).

After the October 28, 2020 release of the Podcast, Plaintiff posted numerous comments on Twitter regarding Defendant, including the comment that "Virginia Giuffre went to Thailand to rape and murder an indigenous child." (SOMF ¶ 51).

Further, Plaintiff communicated with a celebrity ex-girlfriend of Prince Andrew about wanting to sue Politico and Ms. Palmeri "for misrepresenting" her character and that "Politico has $$$" and she also thought "about approaching Gloria Allred but she may not way to rep a case of 2 Epstein victims fighting." (SOMF ¶ 48).

Plaintiff also testified that she "was advised not to sue the press" because she would not be able to win a lawsuit against the media, but "most attorneys will not take a case unless there's money involved". (SOMF ¶ 49).

4

1.  **PLAINTIFF PROFFERS NO EVIDENCE OF DAMAGES CLAIMED**

Defendant retained two damages experts: 1) Dr. Bassman and his colleague Dr. Neinaber to conduct an psychological evaluation for the emotional harms alleged (*See* Ex. S, Bassman Report); and 2) Tobias Czudej, AAA, an art advisor and appraiser, to assess the alleged economic losses. (*See* Ex. T, Czudej Report) In addition, Defendant subpoenaed Mr. Gregory Wright, who Plaintiff claimed was her former mentor, who stopped working with her as a result of the subject Tweets. (SOMF ¶ 111).

Plaintiff has did not proffer any damages expert or any rebuttal experts. Plaintiff did not subpoena any witnesses to speak to her damages. Plaintiff did submit any evidence of loss of earnings and income, loss of business and contracts, loss of business and economic opportunities.

A.  **Plaintiff failed to Rebut Expert Opinion finding her Emotional Damages are Not Due to Ms. Giuffre's Tweets**

On September 22, 2023 and September 23, 2023, Plaintiff was evaluated by Defendant's experts Dr. Stuart W. Bassman and his colleague, Dr. Rachel Nienaber. (*See* Ex. S, Bassman Report);

In their report, Dr. Nienaber and Dr. Bassman opine, with a reasonable degree of psychological certainty, Ms. Oh Amen's assertion that she has been emotionally damaged as a result of Ms. Giuffre's tweets is **not** substantiated. [Expert Report of Dr. Bassman and Dr. Nienaber, at p. 3, emphasis in original].

The experts further explain:

> Although Ms. Oh Amen recounts being portrayed in a negative light and subsequently perturbed as a result of the information being disseminated on social media, this does not fulfill the specificity for Criterion A. It is our expert opinion that because of the pre-existing traumas that Ms. Oh Amen had prior to the tweets, precipitated her reported emotional disarray.

> Ms. Oh Amen does have lasting emotional and mental injuries from the past abuse she suffered. Proximate to the childhood sexual abuse was the development of anxiety, mood disorder, and an eating disorder. The long-term implications include difficulties in her personality, loss of identity, loss of safety, lack of trust in others, severe mistrust, apprehension, fearfulness about the world, and self-destructive behaviors. She reported self-blame, flashbacks, avoidance, feeling cut off from others, hypervigilance, and difficulty concentrating. *In conclusions, the tweets posted by the defendant did not cause her PTSD.* (emphasis added)

[Expert Report of Dr. Bassman and Dr. Neinaber, at p. 3.]

Plaintiff did not offer a rebuttal expert or depose Dr. Bassman or Dr. Nienaber.

To formulate this opinion, Defendant was assessed through two separate zoom evaluations for approximately three hours, and Dr. Nienaber and Dr. Bassman reviewed (SOMF ¶ 101).   Ms. Oh Amen's deposition, and medical records produced in discovery from St. Joseph's Hospital, New Bridge Hospital, William Clark, PhD, and Clearview Pyramid Acquisition Company. The experts also utilized five different clinical assessments in formulating their opinion. (*See* Ex. S Bassman Report).

As Ms. Oh Amen testified in her deposition and during her evaluation with the experts, she has "struggled with feeling victimized and being taken advantage of for most of her life." [Expert Report, p. 12.]. Ms. Oh Amen reported experiencing multiple instances of sexual abuse from childhood through adulthood. According to the experts, "She developed dysfunctional personality traits, such as borderline, histrionic, and narcissistic treated that have trouble her relationships and outlook on life. " [*Id*. at 13].

Plaintiff did not meet clinical criteria for depression or anxiety, but did meet criteria for a PTSD diagnosis, "however, **her PTSD was not caused by the defendant's tweets but were proximate to the history of sexual abuse and sexual assault she recounted prior to these social media posts.**" *Id*. (emphasis added).

Where Plaintiff has failed to rebut or even question these findings, she cannot sustain a

claim for emotional damages as necessary to proceed on her defamation claim against Defendant.

**B.  Plaintiff's Own Testimony Refutes Her Damages Claims**

When discussing her injuries, Plaintiff directly attributes them to Podcast and subsequent

news articles and the alleged abuse of Jeffrey Epstein. (SOMF ¶ 94). Not Defendant's tweets. In

her deposition, Ms. Oh Amen testified that she is "on a cocktail of psychiatric medication."  When

asked about this statement, Ms. Oh Amen testified:

> A.      I was also experiencing, you know—I'm on a cocktail of
> psychiatric medication. I have a lot of things that are—that have
> happened to me since all these experiences commenced with Jeffrey
> Epstein. And sometimes, you know, I'm in and out of
> consciousness, okay.  I want you to understand that.
>
> **Q.    And when you say you're – did you say you are on a**
> **cocktail of psychiatric medication or were on a cocktail of**
> **psychiatric medication?**
>
> A.       No. I am on a cocktail of psychiatric medication, and it has
> – my condition has aggravated since the podcast was published and
> the secondary article that was written for Politico magazine was
> published. I started getting physical panic attacks
> .

[Deposition of Oh Amen, 119:3-20].   Ms. Oh Amen further testified, as to her psychiatric
treatment:

> A.      ...when there are things such as depositions, court dates,
> defamatory articles that are written about me, I experience extreme
> amounts of anxiety, and this is when I take more medicine. That's as
> needed.
>
> **Q.    So this deposition and the court dates that you're talking**
> **about, this has caused you extreme amounts of anxiety?**
>
> A.      The accusations, the court dates, the publications that are
> defamatory, and, you know, reading about my traumatic
> experiences, my sexual abuse, yes, all of those things increases my
> anxiety and gives me -- you know, it destabilizes my mental health.
>
> **Q.      And the publications that you're talking about, one of**
> **those is the podcast you mentioned earlier, and you said that**

7

**your "condition has aggravated since the podcast"; is that right?**

A.       That's correct. However -- actually, no. My condition began when I first started reading the stories about the minors being sexually abused by Jeffrey Epstein in Florida. That triggered my memories to return of what he did to me, and I was hospitalized as a result of it. And this is the first time I've ever been hospitalized

## C. Plaintiff failed to Demonstrate Any Economic Damages related to Ms. Giuffre's Tweets

Not only does Ms. Oh Amen fail to prove emotional and psychological damages, her claim for economic damages is equally unsupported by the evidence. In her defamation claim, Ms. Oh Amen seeks $10,000,000 in damages for "loss of earnings and income, loss of business and contracts, loss of business and economic opportunities, damages to Plaintiff's name, reputation, and character, and business and standing in the community" Am. Compl. ¶30.  Ms. Oh Amen fails to produce any evidence of economic damages, and failed to rebut expert opinion finding that Ms. Oh Amen 's claim of loss of earnings or income is "unsupported by materials documents provided or by additional research." [See, Ex. T, Expert Report of Tobias Czudej, AAA, at p. 4).

When Ms. Oh Amen was asked under oath what earnings or income she was claiming were lost due to Ms. Giuffre's tweets, Ms. Oh Amen testified, "I lost the opportunity to create a monument that I was being prepared for." (SOMF ¶ 110).   She also claimed that a former art mentor, Greg Wyatt, stopped speaking to her and canceled the program for creating monuments, attributing these things to Ms. Giuffre's tweets. (SOMF ¶ 111).   Ms. Oh Amen estimated that she lost out on $700,000 of potential earnings, based on speaking to "many sculptors, including two sculptors who made the Towers of Light that light up every year at the memoriam of the World Trade Center attacks." (SOMF ¶ 112).

Ms. Oh Amen claims she also lost a contract for an artist residency program with Mr. Wyatt, but also testified that it was a grant opportunity and could not provide the value of this alleged lost opportunity. (SOMF ¶ 112).   According to Ms. Oh Amen, "My photographs were circulated online standing next to mostly Greg Wyatt's work. So he disassociated from me altogether as a result of it. That's what I am assuming. That's my opinion." (SOMF ¶ 114).

Ms. Oh Amen failed to produce any documentary evidence of these claims, and Mr. Wyatt's testimony on October 4, 2023, disproves that she suffered pecuniary or reputational loss due to Ms. Giuffre's October 2020 tweets. [See, Deposition of Greg Wyatt]. For instance, Mr. Wyatt testified that he was not a mentor for Ms. Oh Amen, (SOMF ¶ 116).   He does not and has never participated in social media (SOMF ¶ 116) and he never, until his deposition, saw any of Ms. Giuffre's' tweets about Ms. Oh Amen (SOMF ¶ 116).   In fact, before being asked to give testimony in this case, he had never heard of Virginia Giuffre and had never heard about any alleged involvement between Ms. Oh Amen and Jeffrey Epstein (SOMF ¶ 117).

> At any time, did you intentionally not engage or not work with Ms. Rina Oh as a result of Twitter comments made by Virginia Giuffre?
>          A.    No.  As I said, I don't know how to Twitter or tweet.  The answer is no.

[Deposition of Greg Wyatt, 56:17-22]. Despite Ms. Oh Amen's testimony connecting her lost contracts and opportunities for earning to her relationship with Mr. Wyatt, she never reached out to him anytime after August of 2020, which pre-dates Ms. Giuffre's tweets by two months. (SOMF ¶ 119).

As to any other pecuniary loss related to her artwork and Ms. Giuffre's tweets, Defendant hired Tobias Czudej, AAA, an art advisor and appraiser, who is compliant with the Universal Standards of Professional Appraisal Practice (USPAP) and a certified member of the Appraiser's Association of America. [See Ex. T, Expert Report of Tobais Cruzaj, at p. 2]. Upon review of Ms. Oh Amen's Amended Complaint, deposition, tax returns, and all documentary evidence offered by Plaintiff, Mr. Czudej opined, in relevant part:

    a. Rina Oh Amen has no formal fine art education;
    b. Rina Oh Amen is a dedicated hobbyist and not a professional artist;
    c. There is no tangible market for Rina Oh Amen's artwork;
    d. Rina Oh Amen's understanding of production and her formula for valuing commission opportunities is incorrect;
    e. The opportunities lost, as stated by Rina Oh Amen, if realized, would not have directly led to earnings or income;
    f. The claim of loss of earnings or income as it relates to Plaintiff's art is unsupported.

*Id*. at pp. 6-10.

Crucially, Ms. Oh Amen did not retain an expert to rebut Mr. Czudej's opinion, nor did she depose or question him.

As such, the factual record clearly demonstrates that Plaintiff cannot prove any damages here—as required to sustain her claim of defamation against Ms. Giuffre.

## 2. PROCEDURAL HISTORY

Plaintiff initiated this suit by way of Complaint on November 1, 2021[1]. Dk. No. 7. Plaintiff filed an Amended Complaint on January 4, 2022, seeking damages in the amount of Ten Million ($10,000,000) dollars based on one cause of action defamation. Dk. No. 12.  Defendant was served on March 16, 2022. Dk. No. 18.

On May 7, 2022, Defendant filed her Answer, along with a Counterclaim pursuant to New York Civil Rights Law §§70 and 76 for violating New York's Anti-SLAPP. Dk. No. 23.

---

[1] Plaintiff first attempted to file her Complaint on October 28, 2021, but it was returned for multiple filing errors. See, e.g. Dk. Nos. 1-3, 6.

A discovery order was issued on January 3, 2023. Dk. No. 41. An extension to discovery deadlines was ordered on December 5, 2023. Dk. No. 54. Discovery is now closed.

By text order, this Court granted permission for Defendant to bring her motion for summary judgement without a pre-motion conference. Dk. No. 64.

Defendant now moves for summary judgement as Plaintiff has failed to establish any factual support for her defamation claims and there is no genuine issue of material fact that is appropriate to be presented to a jury.

## **ARGUMENT**

### A.  **Legal Standard**

To prevail on a motion for summary judgment pursuant to Fed. R. Civ. P. 56 (a) the movant must "show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The moving party first bears the burden to show that summary judgment should be awarded because "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v Catrett*, 477 US 317, 322 [1986]; *see also Gonzalez v. City of* Schenectady, 728 F.3d 149, 154 (2d Cir.2013).

Additionally, "the court must consider whether there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party… (citation omitted), and grant summary judgment where the nonmovant's evidence is inadequate" *Cestaro v Prohaska*, 681 F Supp 3d 121, 125 [SDNY 2023].

Once the movant has met their burden, the burden shifts to the nonmoving party who "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he

nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.'*" *Caldarola*, 298 F3d at 160.

## I.    DEFENDANT'S STATEMENTS ARE NON-ACTIONABLE PROTECTED OPINION MADE IN THE BROADER CONTEXT OF A SOCIAL MEDIA FEUD.

In this Action, Plaintiff brings one cause of action for defamation against Defendant. Comp. ¶¶ 25 – 30. The alleged causes of action are based exclusively on nine cherry-picked statements made on the social media platform Twitter. Comp. ¶¶ 16, 17.  The statements at issue have been taken out of context and misrepresented. Defendant's statements are constitutionally protected nonactionable opinions.

Pursuant to New York and Federal Court authority, this Court must consider the context and surrounding circumstances of the alleged defamatory statements. This is particularly true for social media forums such as the one at issue in this case. Further, hyperbolic language- even criminally accusatory hyperbole- is not actionable. Here, given the full story of the "Twitter feud" at issue, Defendant's tweets are protected speech and this Action should be dismissed.

### A.  Expressions of Opinion are Protected by the First Amendment

#### 1)  *Expressions of Opinion are Not Defamation by Definition*

Defamation is defined as "the injury to one's reputation either by written expression, which is libel, or by oral expression, which is slander." *Center for Medical Progress v Planned Parenthood Federation of Am.*, 551 F Supp 3d 320, 325 [SDNY 2021]; *see also Satz v Org. for The Resolution of Agunot, *10 [SDNY, Mar. 28, 2024, 23-cv-36 (MKV)].*

A claim for defamation must meet the following elements: "(1) a written defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability" *Palin v N.Y. Times Co.*, 940 F3d 804, 809 [2d Cir 2019].

12

However, an expression of opinion, as opposed to assertions of fact, is not defamation "no matter how offensive, [and] cannot be the subject of an action for defamation." *Mann v Abel*, 10 NY3d 271 [2008]; *Stolatis v Hernandez*, 77 NYS3d 473, 475 [2d Dept 2018].

Expressions of opinions receive an absolute protection of the First Amendment of the U.S. Constitution. *New York Times Co. v Sullivan*, 376 US 254 [1964]; *Steinhilber v Alphonse*, 68 NY2d 283 [1986]. As such, Courts should err on the side of protecting the First Amendment. *See Satz*, *10 [23-cv-36 (MKV)].

    *2) Courts Apply a Factors Test*

Whether the statement(s) at issue are protected opinion as opposed to a factual assertion is an issue of law for the Courts to determine. *Rapaport v Barstool Sports Inc., *4 - 5 [2d Cir, Jan. 9, 2024, 22-2080-cv]; see also Celle v. Filipino Reporter Enters*., 209 F.3d 163, 177 (2d Cir. 2000) ("[w]hether particular words are defamatory presents a legal question to be resolved by the court[s] in the first instance.")

New York Courts generally apply a factors test to distinguish protected opinion from assertions of fact:

> (1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal readers or listeners that what is being read or heard is likely to be opinion, not fact.

*Rapaport* *4-5 [22-2080-cv]; *Mirza v Amar*, 513 F Supp 3d 292, 297 [EDNY 2021]; *Brian v. Richardson*, 87 N.Y.2d 46, 51 (1995).

Further, the Court must take the analysis one step further to determine whether the statement is "pure opinion" or "mixed opinion".

13

The Second Circuit distinguishes the difference as follows:

> Pure opinion is a "statement of opinion which is accompanied by a recitation of the facts upon which it is based" or does not imply that it is based on undisclosed facts. Mixed opinion, on the other hand, is an opinion that does imply a basis in undisclosed facts, or facts known only to the author, and is actionable.

*Rapaport*, *5 [22-2080-cv] (quoting *Chau v. Lewis*, 771 F.3d 118, 129 [2d Cir. 2014]).

**B.  The Overall Context of the Statement is the Most Critical Factor**

The third factor regarding the overall context of the statement is weighed heavily by New York courts to determine if the statement was protected opinion. *See Rapaport* *5 [22-2080-cv]; see also Flamm v American Ass'n of University Women*, 201 F3d 144, 153 [2d Cir 2000] ("the Court of Appeals of New York has consistently focused its analysis on the overall context in which the complained-of assertions were made.").

The Second Circuit clarifies that the factors test is not a rigid one, but that "the court should look to the over-all context in which the assertions were made and determine on that basis whether the reasonable reader would have believed that the challenged statements were conveying facts about the libel plaintiff." *Flamm*, 201 F3d at 153; *see also Donald J. Trump for President v WP Co.*, *12 [DDC, Feb. 3, 2023, Civil Action 20-626 (RC) ("[r]ather than sifting through a communication for the purpose of isolating and identifying assertions of fact, the court should look to the over-all context in which the assertions were made and determine on that basis whether the reasonable reader would have believed that the challenged statements were conveying facts.").

The Court must look at both the immediate circumstance and the broader context of the statement.  In *Rapaport v Barstool Sports Inc*, the Second Circuit upheld this Court's decision to grant summary judgment to defamation-defendants in a matter involving statements made on social media and other online platforms. *Id*. at *3.

14

The Second Circuit found that this Court properly focused the analysis on the district court's determination was based on "careful evaluation of all of the surrounding circumstances" *Id*. at *3.

In *Rapaport*, the defendant's statements at issue involved criminal accusations that the Plaintiff was a stalker and had committed domestic violence. The defamation-defendant's comments also involved accusations racism and fraud, and that the Plaintiff had herpes. *Id*. at *3.

The Second Circuit agreed with the Court's analysis as follows:

> "[T]he statements were largely laden with epithets, vulgarities, hyperbole, and nonliteral language and imagery; delivered in the midst of a public and very acrimonious dispute between the Barstool Defendants and Rapaport that would have been obvious to even the most casual observer; and published on social media, blogs, and sports talk radio, which are all platforms where audiences reasonably anticipate hearing opinionated statements."

*Rapaport.*, *7 [22-2080-cv].

## C. Statements Made in the Context of a Social Media Communications are Generally Considered Protected Opinions.

The colloquial nature of social media platforms such as X f/k/a Twitter are generally considered a place where speech is opinion and not fact. *See Valley Elecs. AG v Polis*, *3 [2d Cir, Mar. 28, 2022, 21-2108-cv] ("the article published on the blog section of Polis's personal website and Polis's Instagram comments used medi[a] that [are] typically regarded by the public as… vehicle[s] for the expression of individual opinion rather than the rigorous and comprehensive presentation of factual matter.") *see also Live Face on Web, LLC v Five Boro Mold Specialist Inc.*, *6 [SDNY, Apr. 28, 2016, No. 15 CV 4779-LTS-SN] ("the media vehicles used to disseminate the Publications - a Wordpress blog, social media posts, and an unsigned press release complaining about litigation tactics - suggest to readers that they contain opinions, not facts, and they are written in an amateurish fashion"); *see also Bellavia Blatt & Crossett, P.C. v Kel & Partners LLC*, 151 F

Supp 3d 287, 295 [EDNY 2015] ("[t]he culture of Internet communications, as distinct from that of print media such as newspapers and magazines, has been characterized as encouraging a freewheeling, anything-goes writing style" and that readers "give less credence to allegedly defamatory remarks published on the Internet than to similar remarks made in other context").

Statements made in the course an online dispute, even where the singular statement may be one of fact, are generally deemed to be statements where a reasonable reader can assume opinions and hyperbole will be used. *See Stolatis v Hernandez*, 77 NYS3d 473, 476 [2d Dept 2018] ("Even apparent statements of fact may assume the character of opinion when made in public debate where the audience may anticipate the use of rhetoric or hyperbole").

In *Stolatis v Hernandez,* the New York Appellate Division, Second Department granted the defendant's summary judgment motion, and reasoned that the Court's analysis must be based on the broader context of the social media debate, and not the individual statements taken out of context:

> Here, given the context in which the statements set forth in paragraph 26 of the complaint were made, and viewing the content of the post as a whole, as well as the content of the other contemporaneous posts on the same Facebook pages, a reasonable reader would have believed that the defendant was communicating his opinion as to whether plaintiff and his company intended from the outset to preserve or replace the building. Although one could sift through the series of posts, including the challenged one, and argue that the author made false factual assertions, viewing the entire series of posts as a whole, as we must, we conclude that the posts constituted an expression of protected opinion and, therefore, summary judgment was properly awarded to the defendant.

*Stolatis*, 77 NYS3d at 477.

Similarly, in *Donald J. Trump for President v WP Co.*, *12 [Civil Action 20-626 (RC)], the District Court found that even where the individual statements could be proven true or false,

given the broader context, a reasonable person would determine that the comments are expressions of opinion.

For example, in *Donald J. Trump for President*, the Court determined that the statement, "who knows what sort of aid Russia and North Korea will give to the Trump campaign, now that he has invited them to offer their assistance?" would first appear to be factual assertion. *Id.* at *12. ("Either Trump invited their assistance, or he did not.").

However, the Court, in applying New York law, determined that the overall context deemed the statement nonactionable opinions. The Court reasoned as follows:

> The New York Court of Appeals has instructed that, '[r]ather than sifting through a communication for the purpose of isolating and identifying assertions of fact, the court should look to the over-all context in which the assertions were made and determine on that basis 'whether the reasonable reader would have believed that the challenged statements were conveying facts about the . . . plaintiff.' *Id.* at *12.

## D.  Hyperbole is Protected Opinion

A statement that a reasonable reader would consider to be hyperbolic language or epithet, is not an actionable statement of fact, particularly on social media platforms. This is true even in cases where the hyperbolic statement contains a criminal accusation. *See e.g., Rosa v Eaton*, *7-8 [SDNY, June 25, 2024, 23 Civ. 6087 (DEH)]; *see also Tagliaferri v Szulik,* *4 [SDNY, May 25, 2016, 15 Civ. 2685 (LGS)]; *see also Dillon v City of New York*, 261 AD2d 34, 38 [1st Dept 1999] ("Loose, figurative or hyperbolic statements, even if deprecating the plaintiff, are not actionable ").

When looking at the broader context, Courts have determined that expressions such as "predator" "face of evil" "engaged in criminal conduct" "abuser" "extortion" were not actionable statements. *See e.g., Tagliaferri*, [15 Civ. 2685 (LGS)]; *See also Small Bus. Bodyguard Inc. v*

*House of Moxie*, Inc., 230 F Supp 3d 290 [SDNY 2017] (holding that a statement that the plaintiff "engaged in 'extortion, manipulation, fraud, and deceit'" is a "a vague statement . . . of the 'loose, figurative, or hyperbolic' sort that is not actionable for defamation"); *see also* R*osa v Eaton*, *7-8 [23 Civ. 6087 (DEH)]; *see also 600 West 115th Street Corp. v Von Gutfeld*, 80 NY2d 130 [1992] (concluding the statements "as fraudulent as you can get and it smells of bribery and corruption." were constitutionally protected); *see also Uribe v Nieves* [EDNY, Sep. 13, 2022, No. 17-CV-5155-RPK-JRC] (granting summary judgment where defendant started an Instagram account "botchedbyjimenez" claiming the doctor-plaintiff was a "butcher").

**E. Within the Broader Context of this Online Dispute, Defendant's Comments are Not Actionable**

Here, pursuant to the relevant authority, the Court must analyze the nine Twitter comments at issue within the broader context of the communications. *Flamm*, 201 F3d 144; *Rapaport* * 5 [22-2080-cv]; this is particularly true given that all nine comments at issue were published on the social media platform Twitter. *Valley Elecs. AG*, *3 [21-2108-cv]; *Stolatis*, 77 NYS3d at 477. Further, the comments originated in response to Plaintiff's statements made during an interview for a podcast about Jeffrey Victim"s. The reader is not left to guess what undisclosed sources that Defendant is referring to in her opinions. *See Rapaport*, *5 [22-2080-cv]

Given the full context of the dispute, a reasonable reader would have understood that Defendant was expressing her outrage and opinions, and not knowingly asserting falsehoods based on unknown facts to the reader. *See e.g., Rosa*, *7-8 [Civ. 6087 (DEH)]; *see also Tagliaferri,* *4 [15 Civ. 2685 (LGS)]; *see also Dillon*, 261 AD2d at 38; ("Loose, figurative or hyperbolic statements, even if deprecating the plaintiff, are not actionable ").

**F. Defendant's Comments on Twitter are Protected Speech**

Taken in the full context, Defendant's opinions expressed in each of the nine comments are protected speech.

    i.    Defendant's comment identified in ¶ 16 (a):  "Ladies & Gentlemen meet Rina who now is pleading innocence since there's a $VCF$ she has decided to come out as a victim, when on the record she was #Epstein's GF"& was rewarded with $$ in trade for victims- real victims. May karma be upheld and justice be done."

This comment is in response to a statement that is no longer available and was not appropriately captured by Plaintiff. (SOMF ¶ 54). Ms. Giuffre's expressed feelings in response to what she heard on the Podcast regarding Plaintiff's application for the Victim's Compensation Fund. (SOMF ¶ 55). With the full comment shown, it is revealed the Ms. Giuffre was responding to a prior Twitter comment that was deleted.  The reader is not left to guess what is the source of the comment.

    ii.    Defendant's comment identified in ¶ 16 (b):  "Rina- if you read this I hope you live in shame for the rest of your life. You don't intimidate me any longer & the physical & mental scares you left me with should be enough to put your a** in jail, my line in the sand is drawn & your guilty! #LockHerUp"

This comment directly links to the Podcast, the source of her outrage, where Defendant heard Plaintiff's interview. (SOMF ¶ 58). Further, this comment does not contain identifiable provable facts.  Stating "your *[sic]* guilty" and "the physical & mental scares you left me" do not rise to the level of factual assertions. *See e.g. Tagliaferri*, [15 Civ. 2685 (LGS)]; *see also* R*osa*, *7-8 [23 Civ. 6087 (DEH)]; *see also 600 West 115th Street Corp.*, 80 NY2d 130; *Uribe v Nieves* [No. 17-CV-5155-RPK-JRC] This does not indicate that Defendant was attempting to assert falsehoods about Plaintiff, especially given the context.

    iii.    Defendant's comment identified in ¶ 16 (c):  "Jeffrey Epstein 'recruiter' admits bringing girls but denies abuse" Pathetic excuses from a deranged woman who was NO victim & should be sitting in jail next

to #GhislaineMaxwell Rina-woman to woman, now that I am a woman,
U disgust me. @DailyMail"

Similarly, this is Ms. Giuffre's expressed feelings in response to a linked article in the Daily

Mail publication. (SOMF ¶ 61).  A reasonable reader would understand this to be hyperbolic

language or epithet, is not an actionable statement of fact.

> iv.  Defendant's comment identified in ¶ 16 (d):  "What really makes
> sense is that Rina, a co-conspirator for #Epstein & #GhislaineMaxwell
> would go on to marry a fellow co-conspirator involved with
> #MichaelJackson . 2 sick peas in a pod, you can't even imagine how
> beyond sickened I feel right now. @pinkPeptobismol @teresajhelm"

Similarly, this is Ms. Giuffre's expressed feelings in response to a linked posting by

Plaintiff's husband on to the cite "The Michael Jackson Innocence Project".  (SOMF ¶ 65).

Further, within the context, these are vague, "loose, figurative or hyperbolic statements" which

"even if deprecating the plaintiff, are not actionable." *Dillon*, 261 AD2d at 38.

> v.  Defendant's comment identified in ¶ 16 (e): "This picture that Rina
> painted with the sliced leg bleeding is exactly what she used to do to
> me, I have a 6 inch scar on my left leg from her cutting me. I can let a
> lot of s**t go, but this I will never forget. #PureEvil #LockHerUp"

Defendant is directly responding to another Twitter users post regarding a "disturbing" painting

by Plaintiff.  (SOMF ¶ 72). Although, similar to *Donald J. Trump for President v WP Co*., *12 [Civil

Action 20-626 (RC)], it could be proven that Plaintiff did or did not cut Defendant's leg, this comment

must be taken in the overall context.  Defendant is responding to Plaintiff's comments made during the

interview for the Podcast. Further, Defendant testified that she was cut by Plaintiff and had shown the

interviewer the scar. (SOMF ¶ 21). Therefore, Plaintiff cannot prove as a matter of law that Defendant

made a knowingly false comment with actual malice.

> vi.  Defendant's comment identified in ¶ 16 (f): "Still being robbed of
> justice- just ask all the men & women I've named in my court docs why
> they still have their freedom to carry on with their untainted lives why

20

I sit here crying my eyes out over rerun & rerun of the abusers still affecting my life."

Plaintiff is not identified in this comment. It is not in response to a comment from or about Plaintiff. (SOMF ¶ 76).

      vii.    Defendant's comment identified in ¶ 16 (g): "Design from 2000-2002 and classically trained in sculpture," Uh Rina- those were the years in which you procured & partook in the abuse of minors with #Epstein Did he pay for that too? Your no survivor, your an oxygen thief. A virus on humanity." #Karma #Justice.

This tweet was also in response to an unidentified post from another user on the same day as the podcast release. The underlying post was not captured by Plaintiff before the user deleted their post, although it would have provided additional context to Ms. Giuffre's statement (SOMF ¶ 78 - 79). A reasonable reader would understand this to be hyperbolic language or epithet, is not an actionable statement of fact.

      viii.    Defendant's comment identified in ¶ 16 (h): "The only issues I have Vincent is your sick, pathetic, psychopathic wife and the other Epstein women who take advantage of young victim. My credibility is full proof and the ppl that know me know that. Good luck with your smear campaign though" December 31, 2020.

This is a response to tweets by Plaintiff's husband claiming that Defendant has "Credibility Issues" and that "Giuffre recruited." (SOMF ¶ 84). Within the context discussed, these are vague, "loose, figurative or hyperbolic statements" which "even if deprecating the plaintiff, are not actionable " *Dillon*, 261 AD2d at 38.

      ix.    Virginia Giuffre @VRSVirginia Retweet of a Tweet with a picture of an Asian baby holding money [Plaintiff is Asian] and stating that Plaintiff "only came forward after Epstein was already dead. I am "starting" to think they both [referring to Plaintiff and her husband] are here just for the benjamins." December 31, 2020.

Defendant did not author this comment. It was "retweeted" by Defendant. Regardless, within the context these are vague, "loose, figurative or hyperbolic statements" which "even if deprecating the plaintiff, are not actionable " *Dillon*, 261 AD2d at 38.

In sum, none of the nine comments are actionable assertions of fact.  These expressed opinions are clearly protected speech that have been cherry-picked out of a twitter feud in a veiled attempt to recovery unwarranted money damages from Plaintiff.

## II.    PLAINTIFF FAILS TO SHOW THAT DEFENDANT'S TWEET MEET THE ACTUAL MALICE STANDARD

### A.  Applicable Standard

This Action is an "action involving public petition and participation" involving "communication in a place open to the public or a public forum in connection with an issue of public interest" as defined by the New York Civil Rights Law § 76 otherwise known as the "Anti-SLAPP" statute.

New York's Anti-SLAPP statute defines actions involving public participation as follows:

> any communication in a place open to the public or a public forum in connection with an issue of public interest; or (2) any other lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest, or in furtherance of the exercise of the constitutional right of petition.

*See* Civil Rights Law § 76-a; *Sweigert v Goodman*, *2 [SDNY, Apr. 22, 2021, 1:18 cv-08653 (VEC) (SDA)].

The term "public interest" is broadly defined as any "subject other than a purely private matter." Id. § 76-a(1)(d); *see also  Sweigert*, *2 [1:18-cv-08653 (VEC) (SDA)]

The Southern District of New York holds that protections of the New York Anti-SLAPP law are applicable to "action involving public petition and participation" brought in federal court.

*Sweigert*, *4 [1:18-cv-08653 (VEC) (SDA)] (*quoting Palin v. N.Y. Times Co.,* 510 F.Supp.3d 21,

24 [S.D.N.Y. 2020] ("As a federal court sitting in diversity, this Court must apply Civil Rights

Law § 76-a "because it is a substantive, rather than a procedural, provision."); *see also Jacob v*

*Lorenz*, 626 F Supp 3d 672 [SDNY 2022].

Here, the subject tweets are indisputably communication in an open public forum. The

issue of the Jeffrey Epstein victims is widely covered by the media and involves a Sony

Entertainment Podcast.

Therefore, the comments at issue trigger the protections afforded under New York Civil

Rights Law § 76.

**B. Defendant Does Not Need to Prove that Plaintiff was a Public Figure or Even a
Limited Public Figure for Actual Malice Standard to Apply**

On November 10, 2020, amendments were made to the New York Anti-SLAPP statute

changing the "actual malice" standard to apply regardless of the status of the plaintiff.[2]

N.Y. Civil Rights Law § 76-a states:

> In an action involving public petition and participation, damages
> may only be recovered if the plaintiff, in addition to all other
> necessary elements, shall have established by clear and convincing
> evidence that any communication which gives rise to the action was
> made with knowledge of its falsity or with reckless disregard of
> whether it was false, where the truth or falsity of such
> communication is material to the cause of action at issue.

Civ. Rights Law § 76-a (2); *see also Jacob*, 626 F Supp 3d at 686 ("to state a claim,

plaintiffs must plead 'plausible grounds to infer actual malice by alleging enough facts to raise a

reasonable expectation that discovery will reveal evidence of actual malice.'").

---

[2] Plaintiff's original Complaint was commenced on August 9, 2021, after the amendments to the NY Anti-SLAPP laws were made. 17. Dk. Nos. 1-3

Since the 2020 amendments, the status of the plaintiff as a "public figure" or "limited public figure"[3] or "private citizen" are no longer part of the analysis for determining whether the Plaintiff must prove actual malice by the defendant. *Holland v Lions Gate Entm't & Films*, *36 [SDNY, May 2, 2024, 21-CV-2944 (AT) (JLC)] ("As courts in this District have held, a defamation plaintiff is required to establish the defendant's "actual malice," regardless of whether the plaintiff is a "public figure," if the allegedly defamatory statement is made in connection with an issue of public interest."); *see also  Sweigert*, *4 [1:18-cv-08653]; *see also Adelson v Harris*, 876 F3d 413 [2d Cir 2017]; *Max v Lissner*, *19 n 21 [SDNY, Mar. 3, 2023, 22-CV-5070 (VEC)] ("… a defamation plaintiff must plead "plausible grounds to infer actual malice by alleging enough facts to raise a reasonable expectation that discovery will reveal evidence of actual malice.").

### C.  Plaintiff Cannot Prove that Defendant Acted with Actual Malice

At the summary judgment stage, to recover any damages, the defamation-plaintiff must prove actual malice by clear and convincing evidence. *See* N.Y. Civil Rights Law § 76-a; *New York Times Co. v Sullivan*, 376 US 254 [1964]; *Holland v Lions Gate Entm't & Films,* *36 [SDNY, May 2, 2024, 21-CV-2944 (AT) (JLC)]; *Palin,* 510 F Supp 3d 21 [SDNY 2020]. *Jacob v Lorenz*, 626 F Supp 3d 672, 691-92 [SDNY 2022]

The defamation-plaintiff must allege that a statement was made "with knowledge that it was false or with reckless disregard of whether it was false or not."  *See* N.Y. Civil Rights Law § 76-a.  As this Court has held, the plaintiff "must show that a defendant had the subjective belief the statement at issue was false, *and* that defendant was "knowing" or "reckless" in its conduct."

---

[3] Regardless of the application of the 2020 amendments, Plaintiff here is a "limited-purpose public figure" under Civ. Rights Law § 76-a because Plaintiff "voluntarily injected" herself into a "particular public controversy and thereby becomes a public figure for a limited range of issues." by voluntarily participating in the subject podcast. *See Contemporary Mission, Inc. v N.Y. Times Co*., 842 F2d 612 [2d Cir 1988].

*Holland*, \*36 [21-CV-2944]; *see also BYD Co. Ltd. v. VICE Media LLC*, 531 F.Supp.3d 810, 823 [S.D.N.Y. 2021].

Defendants are entitled to summary judgment where the plaintiff fails to show that the statements are false or that they were made with a "high degree of awareness their probable falsity." *Khan v New York Times Co.*, 269 AD2d 74, 77 [1st Dept 2000] (finding that "IAS court should have held that plaintiff failed to present evidence with 'convincing clarity; that defendants were aware that the two *Times* articles were probably false.").

Here, Plaintiff cannot meet her burden of proving that Defendant made knowingly false statements or made with a "high degree of awareness their probable falsity." It is a legal impossibility for Plaintiff to show by clear and convincing evidence that Defendant acted with actual malice.

Plaintiff does not deny that Defendant is a victim of Jeffrey Epstein. As to any of the subject comments that identify specific acts, Defendant testified under oath about her interactions with Plaintiff and Jeffrey Epstein.

There is nothing in the record or that was exchanged in discovery that would support a finding that Defendant malicious made false statements about Plaintiff. As such, this issue does not need to reach the factfinder because Plaintiff cannot meet her burden to prove that Defendant acted with actual malice.

## III.    THIS COURT LACKS SUBJECT MATTER JURISDICTION

### A. This Court Lacks Jurisdiction Where there is a Legal Certainty that Plaintiff Cannot Recover the Statutory Jurisdictional Amount

This Court lacks subject matter jurisdiction for any action which the action does not or cannot exceed $75,000. 28 U.S.C. § 1332; Fed. R. Civ. P. 12. (b) and (h) (3). Facially, there is a

presumption that "the complaint is a good faith representation of the actual amount in controversy" *Amendola v Cavallero*, *9 [SDNY, Jan. 13, 2025, 23-CV-10607 (KMK)].

However, the defendant "can overcome this presumption if it appears to be "a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *Amendola*, *9. 23-CV-10607 (KMK); *see also Tongkook America, Inc. v Shipton Sportswear*, 14 F3d 781, 785 [2d Cir 1994].

When it is clear from the record, that the plaintiff will not meet the amount in controversy-whether in in the initial pleadings or after discovery begins- then the action must be dismissed for lack of subject matter jurisdiction. *Tongkook America, Inc.*, 14 F3d at 781; *Graubart v Jazz Images, Inc.*, *6 [SDNY, Apr. 27, 2006, No. 02-CV-4645 (KMK)] ("the party claiming jurisdiction must support the jurisdictional amount with competent proof and justify its allegations by a preponderance of the evidence.").

In *Tongkook America, Inc.*, the Second Circuit found that even if the initial damages was made in "good faith," at the pleadings stage, that will not be enough to defeat summary judgment if the facts revealed in discovery demonstrate that claims cannot meet statutory jurisdictional amount.

> We accept [plaintiff's]assertion that, at the time it instituted suit, it believed the amount in controversy exceeded the statutory jurisdictional amount. However, good faith has an objective element, and we cannot ignore what pre-trial discovery revealed — that from the outset, *Tongkook*, to a "legal certainty," could not recover the statutory jurisdictional amount. A plaintiff's subjective belief, alone, cannot be the controlling factor where, pre-trial, there is "[a] showing that, as a legal certainty, [the] plaintiff cannot recover the jurisdictional amount."

*Tongkook America, Inc.*, 14 F3d at 785; *see also Graubart.*, [No. 02-CV-4645 (KMK)].

**B. It is a Legal Certainty that Plaintiff Fails to Establish that She can Recover the Amount in Controversy**

After discovery closed, Plaintiff failed to produce any evidence to support her damages claim, and has failed to dispute evidence produced by Defendant that disposes of any claim that Plaintiff suffered any economic or noneconomic damages as a result of the 2020 tweets by Ms. Giuffre.

### 1) Plaintiff and Defendant's Expert both Attribute Any Emotional Injuries to Other Sources

Defendant does not dispute that Plaintiff has dealt with emotional and mental health issues for some time. However, any emotional injuries suffered by Plaintiff are not attributable to Defendant's Tweets.

Plaintiff testified that she was on a "cocktail of psychiatric medications" "since all these experiences commenced with Jeffrey Epstein" (SOMF ¶ 96). Plaintiff testified that her condition was "aggravated since the podcast was published and the secondary article that was written for Politico magazine was published. I started getting physical panic attacks." (SOMF ¶ 94).

When Plaintiff was asked about what cause her extreme anxiety, she testified broadly about several sources, without specifying that Defendant's nine comments caused her emotional harms.

Plaintiff testified as follows:

> The accusations, the court dates, the publications that are defamatory, and, you know, reading about my traumatic experiences, my sexual abuse, yes, all of those things increases my anxiety and gives me -- you know, it destabilizes my mental health. (SOMF ¶ 97).

Further, Plaintiff did not depose Defendant's damages expert Dr. Nienaber and Dr. Bassman or rebut their expert reports, which concluded that Plaintiff's mental health issues were unrelated to the nine tweets. (SOMF ¶ 104). ("however, her PTSD was not caused by the defendant's tweets but were proximate to the history of sexual abuse and sexual assault she recounted prior to these social media posts.").

2)  *Plaintiff Fails to Meet her Burden to Show Economic Damages*

As discussed at length in Defendant's Statement of Material Facts and the above Facts Section, the record void of any support for Plaintiff's vague and conclusory assertions of economic damages claims.  When asked about specifics in her deposition, Plaintiff claimed that she lost opportunities with her art mentor, Greg Wyatt, stopped speaking to her and she estimated $700,000 in potential earnings. (SOMF ¶ 110 - 114).

Mr. Wright testified that he was not a mentor for Ms. Oh Amen, (SOMF ¶ 116). He does not and has never participated in social media and he never, until his deposition, saw any of Ms. Giuffre's' tweets about Ms. Oh Amen In fact, before being asked to give testimony in this case, he had never heard of Virginia Giuffre and had never heard about any alleged involvement between Ms. Oh Amen and Jeffrey Epstein(SOMF ¶ 116-119).

Further, Defendant's expert, Tobias Czudej opined that:

> 1) Rina Oh Amen has no formal fine art education; 2) Rina Oh Amen is a dedicated hobbyist and not a professional artist; 3) There is no tangible market for Rina Oh Amen's artwork; 4) Rina Oh Amen's understanding of production and her formula for valuing commission opportunities is incorrect; 5) The opportunities lost, as stated by Rina Oh Amen, if realized, would not have directly led to earnings or income; 6) The claim of loss of earnings or income as it relates to Plaintiff's art is unsupported.

Mr. Czudej was not deposed by Plaintiff and no rebuttal report was proffered to dispute these findings.

As a legal certainty, Plaintiff cannot recover the jurisdictional amount because she has failed to present any support for her damages claims, and failed to rebut any of defendant's evidence as to damages.

Therefore, this court lacks subject matter jurisdiction and this Action must be dismissed.

## **CONCLUSION**

For the forgoing reasons, Defendant Virginia Giuffre respectfully requests that this Court grant Defendants' Motion for Summary Judgment.

Dated: February 18, 2025
       New York, NY

                               **THOMAS COUNSELORS AT LAW, LLC**

BY:         _____/s/_____
                     Kathleen R. Thomas, Esq.
                     One World Trade Center, 85th Fl.
                     New York, NY 10007
                     917-209-6446
                     kat@tlclawllc.com

                     **STARK & STARK, P.C.**

BY:         _____/s/_____
                     Jillian Roth, Esq. (admitted *Pro Hac Vice*)
                     777 Township Line Rd.
                     Yardley, PA 19067
                     (267) 907-9607
                     jroth@stark-stark.com

                     *Attorneys for Defendant Virginia Giuffre*