# Exhibit "A"
# 1-3

Ira Scot Meyerowitz (IM 2449)
Meyerowitz Law Firm
295 Madison Avenue
22 Floor
New York, New York 10017
Tel: (917) 863-4460
Fax: (212) 542-8883
irameyerowitz@gmail,com

*Attorneys for Plaintiff Rina Oh Amen*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

RINA OH n/k/a RINA OH AMEN,

        Plaintiff,

    vs.

VIRGINIA L. GIUFFRE,

        Defendant.
-------------------------------------------------------------------x

**AMENDED COMPLAINT**

Case No.: 21 cv 8839

Plaintiff Demands a Trial by Jury

        Plaintiff RINA OH n/k/a/ RINA OH AMEN ("Plaintiff"), by her attorneys, the Meyerowitz Law Firm, as and for her Amended Complaint against defendant VIRGINIA L. GIUFFRE ("Defendant"), alleges as follows:

## THE PARTIES

        1.  Plaintiff Rina Oh n/k/a Rina Oh Amen is an individual who was and is a citizen of the State of New Jersey, United States.

        2.  Defendant Virginia L. Giuffre is an individual who was and is a citizen of the State of Colorado, United States.

## JURISDICTION AND VENUE

        3.  This Court has subject matter, i.e., diversity jurisdiction, over this action pursuant to 28 USC § 1332(a)(2) as the amount in controversy exceeds the sum or value

of $75,000, exclusive of interest and costs, and this controversy is between citizens of different states.

4.    This Court has personal jurisdiction over Defendant, pursuant to New York's long arm statute NYCPLR 302(a), as Defendant has committed the tortious actions complained of herein in this State by making the defamatory statements related to Plaintiff herein that were published in this State on her twitter account and other platforms and publishing outlets. Defendant has also availed herself of the jurisdiction and use of this Court in commencing an action on August 09, 2021 in the matter entitled *Virginia Giuffre v. Prince Andrew*, 21 cv 06702, United States District Court, Southern District of New York.

5.    Venue is proper pursuant to 28 USC §1391 for reasons similar to this Court having personal jurisdiction over Defendant on the grounds that, among other reasons, including, but not limited to, that: (i) a substantial part of the events and/or wrongful conduct that give rise to the claims alleged herein occurred in this District, i.e., amongst other reasons, the publishing and dissemination of Plaintiff's defamatory statements; (ii) Plaintiff suffered the effects and damages of Defendant's defamatory statements in this venue; and (iii) Defendant has availed herself of the use of this Court as set forth above.

## FACTUAL ALLEGATIONS

6.    Today, Plaintiff is married and a respected and well regarded artist.

7.    However, twenty years ago, during some or all of the years 2000 and 2001, starting when Plaintiff was only around (21) twenty-one years' old, Plaintiff was solicited, manipulated, exploited, abused, and sex trafficked by the notorious Jeffrey Epstein ("Epstein"), and his co-conspirators, Ghislaine Maxwell ("Maxwell") and others.

8. Defendant knew or should have known that, at all relevant times, Plaintiff was a young victim of Epstein and not a co-conspirator of Epstein or a part of his inner circle of criminals (as concluded by the authorities, including the FBI).

9. Defendant knew or should have known that, just as Defendant claims purportedly happened to her, at all times, Plaintiff was being used, abused, exploited and manipulated by Epstein and his inner circle.

10. During that time in 2000 and 2001, Plaintiff was introduced by Epstein or Maxwell to Defendant and Plaintiff and Defendant spoke and saw each other on only a few occasions in Palm Beach, Florida and few occasions in New York.

11. On no occasion did Plaintiff sexually abuse or assault Defendant, or cut Defendant, and Defendant knows this to be true.

12. In the last 20 years, since Defendant and Plaintiff last saw each other in 2001, Defendant has never accused Plaintiff of any bad or criminal acts from that time.

13. However, recently Defendant began falsely and wrongly defaming and slandering Plaintiff on numerous occasions.

14. For instance, Defendant maintains a Twitter account under the handle and account name "Virginia Giuffre" at URL https://twitter.com/VRSVirginia.

15. On October 28th through October 31st, and December 31th of 2020, amongst other times, by and through her Twitter account, Defendant wrote certain Tweets, and then, by hitting send, Defendant published and broadcast those Tweets out to the world.

16. The foregoing Tweets, amongst others, with time stamps when Defendant published them, contained the following statements of fact that Defendant knew or should have known to be false.

a.  Virginia Giuffre @VRSVirginia "Ladies & Gentlemen meet Rina who now is pleading innocence since there's a $VCF$ she has decided to come out as a victim, when on the record she was #Epstein's GF"& was rewarded with $$ in trade for victims- real victims. May karma be upheld and justice be done." @FBI @nytimes Butterfly https://twitter.com/MoonProfessor/status/1321613698637598720 9:24 PM Oct 28, 2020 Twitter for iPhone https://twitter.com/VRSVirginia/status/1321623957183684610

b.  Virginia Giuffre @VRSVirginia Oct 28, 2020 "Rina- if you read this I hope you live in shame for the rest of your life. You don't intimidate me any longer & the physical & mental scares you left me with should be enough to put your a** in jail, my line in the sand is drawn & your guilty! #LockHerUp" 7:03 PM Oct 28, 2020 Twitter for iPhone https://twitter.com/VRSVirginia/status/1321588495467491328

c.  Virginia Giuffre @VRSVirginia Oct 28, 2020 "Jeffrey Epstein 'recruiter' admits bringing girls but denies abuse" Pathetic excuses from a deranged woman who was NO victim & should be sitting in jail next to #GhislaineMaxwell Rina-woman to woman, now that I am a woman, U disgust me. @DailyMail" 7:21 PM · Oct 28, 2020·Twitter for iPhone https://twitter.com/VRSVirginia/status/1321593015622758405

d.  Virginia Giuffre @VRSVirginia "What really makes sense is that Rina, a co-conspirator for #Epstein & #GhislaineMaxwell would go on to marry a fellow co-conspirator involved with #MichaelJackson . 2 sick peas in a pod, you can't even imagine how beyond sickened I feel right now. @pinkPeptobismol @teresajhelm" 7:59 PM · Oct 28, 2020·Twitter for iPhone https://twitter.com/VRSVirginia/status/1321602627554045953

e.  Virginia Giuffre @VRSVirginia "This picture that Rina painted with the sliced leg bleeding is exactly what she used to do to me, I have a 6 inch scar on my left leg from her cutting me. I can let a lot of s**t go, but this I will never forget. #PureEvil #LockHerUp" @FBI @thedailybeast @nytimes #Justice" Drop of bloodFolded handsButterfly 8:09 PM · Oct 28, 2020 Twitter for iPhone https://twitter.com/VRSVirginia/status/1321605000628371456

f.  Virginia Giuffre @VRSVirginia "Still being robbed of justice- just ask all the men & women I've named in my court docs why they still have their freedom to carry on with their untainted lives why I sit here crying my eyes out over rerun & rerun of the abusers still affecting my life." @FBI @SDNYnews #unfair Butterfly 8:34 PM · Oct 28, 2020·Twitter for iPhone https://twitter.com/VRSVirginia/status/1321611245712150533

g.  Virginia Giuffre @VRSVirginia "Design from 2000-2002 and classically trained in sculpture," Uh Rina- those were the years in which you procured & partook in the abuse of minors with #Epstein Did he pay for that too? Your no survivor, your an oxygen thief. A virus on humanity." #Karma                                         #Justice https://twitter.com/MoonProfessor/status/1321611635258134528 9:13 PM Oct        28,        2020        Twitter        for        iPhone https://twitter.com/VRSVirginia/status/1321621244144312320

17. Then, Defendant continued to publicly defame and shame Plaintiff on December 31, 2020, by and through her Twitter account, where Defendant tweeted and/or re-tweeted the following falsehoods to the world:

a.  Virginia Giuffre @VRSVirginia "The only issues I have Vincent is your sick, pathetic, psychopathic wife and the other Epstein women who take advantage of young victim. My credibility is full proof and the ppl that know me know that. Good luck with your smear campaign though" December 31, 2020.

b. Virginia Giuffre @VRSVirginia Retweet of a Tweet with a picture of an Asian baby holding money [Plaintiff is Asian] and stating that Plaintiff "only came forward after Epstein was already dead. I am "starting" to think they both [referring to Plaintiff and her husband] are here just for the benjamins." December 31, 2020.



18. All of the foregoing statements are and were maliciously false, and Defendant knew them to be false when she published them.

19. Plaintiff did not do or say the things that Defendant accuses her in these Tweets. Plaintiff is and always was a victim and not a co-conspirator of Epstein and his gang. Plaintiff never cut, sexually assaulted or sexually abused Defendant. Plaintiff was and is guilty of no crime, and has never been charged with one.

20. Considering the high profile nature of the Jeffrey Epstein, Ghislaine Maxwell and Prince Andrew story, Defendant knew that accusing Plaintiff, a fellow victim, of such horrible things, that it would maximize the spread and harm and damage to Plaintiff, thereby making it more malicious and damaging.

21. Defendant has maliciously reiterated and republished these defamations and slanders in prior and subsequent tweets and interviews on podcasts, TV and for magazines, as well as in her memoirs entitled Billionaire's Playboy Club.

22. These defamations and slanders by Defendant are causing Plaintiff great harm.

23. Plaintiff commences this action against Defendant to stop Defendant from continuing to spew here false and defamatory bile and to hold Defendant accountable for the damages she knowingly has caused Plaintiff.

## FIRST CAUSE OF ACTION

### (DEFAMATION)

24. Plaintiff hereby repeats and realleges the allegations state above as if fully forth herein.

25. As set forth in detail above and herein, Defendant wrote and spoke certain statements of fact that she knew or should have known were false, and indeed were said by Defendant with knowledge and malicious disregard for the truth.

26. Said defamatory statements were created, written, spoken published and broadcast by Defendant, amongst other places, on her Twitter account and through a podcast, for third-parties and all the world to read, see and hear.

27. Said defamatory statements by Defendant were then picked up by major news organizations, like the NY Post, Vogue, and Daily Beast, as Defendant knew they would, and republished throughout the world news media, TV, and the world wide web.

28. Though these statements are false, and even when Plaintiff prevails herein, they will never die and will live in the internet forever, forever causing Plaintiff injury.

29. Defendant had no privilege, absolute, qualified or otherwise, to make said defamatory statements.

30. Defendant's defamatory statements directly and proximately caused Plaintiff to suffer compensatory damages related to both economic and non-economic damages, including, but not limited to, the following: loss of earnings and income, loss of business and contracts, loss of business and economic opportunities, damages to Plaintiff's name, reputation, and character, and business and standing in the community, as well as for pain and suffering, humiliation, shame, disgrace, mental anguish, loss of enjoyment of life, and anxiety and extreme emotion distress, amongst other things.

31. By this Amended Complaint, Plaintiff amended the initial Complaint herein to add the defamatory statements made by Defendant alleged and set forth in paragraph 17, above.  For purposes of the statute of limitations, and pursuant to FRCP Rule 15(c), said statements relate back to the date of the other statements made by Plaintiff in her initial Complaint in that they involve the parties and arose out of the conduct set out in the initial Complaint herein.

32. Accordingly, for all of the foregoing reasons, Plaintiff is entitled to an award of compensatory damages in an amount to be determined at the trial, but in no event less than Ten Million ($10,000,000) Dollars.

33. In light of the malicious, intentional and/or willful nature of Defendant's actions, Plaintiff is entitled to punitive damages, in an amount to be determined at trial, but believed to be in excess of Ten Million ($10,000,000) Dollars.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief on the counts stated above as against Defendant as follows:

a.      On the First Cause, that Plaintiff be awarded compensatory damages in an amount to be determined at trial and which is otherwise incalculable at this time, but is not less than Ten Million ($10,000,000) Dollars;

b.      On the First Cause of Action, that Plaintiff be awarded punitive damages in an amount to be determined at trial, but in no event less than Ten Million ($10,000,000) Dollars;

c.      That Plaintiff be awarded its attorneys' fees and costs under statutory and common law;

d.      That Plaintiff be awarded pre- and post-judgment interest cost and disbursements; and

      e.      That Plaintiff be awarded all other and further relief as the Court may

deem just and proper.

Date:  New York, New York
         January 4, 2022

                                   MEYEROWITZ LAW FIRM

                                   By:_____
                                     Ira Scot Meyerowitz (IM 2449)
                                 295 Madison Avenue
                                 22nd Floor
                                 New York, New York 10017
                                 Tel: (917) 863-4460
                                 Fax: (212) 542-8873
                                 irameyerowitz@gmail,com

                                 *Attorneys for Plaintiff Rina Oh Amen*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------x
RINA OH n/k/a RINA OH AMEN,

                 Plaintiff,                Case No.: 1:21-cv-08839-NRB

       v.                        **ANSWER AND**
                                **COUNTERCLAIMS**

VIRGINIA L. GIUFFRE,

                 Defendant

-----------------------------------------------x

     Defendant VIRGINIA L. GIUFFRE (hereinafter "Defendant" or "Ms. Giuffre") answers Plaintiff RINA OH n/k/a RINA OH AMEN's, (hereinafter "Plaintiff" or "Ms. Oh") Amended Complaint and further counterclaims, by and through her attorney, Thomas Counselors at Law, LLC,  as follows:

### <u>INTRODUCTION</u>

     1.     Ms. Giuffre did not defame Ms. Oh. To the contrary, Ms. Giuffre's statements at issue in Ms. Oh's underlying defamation action are true statements and protected opinions. In particular, Ms. Oh was never a victim of Jeffrey Epstein's sex trafficking organization. To the contrary, Ms. Oh, who has admitted meeting Jeffrey Epstein when she was twenty-one years old, has publicly described herself as Jeffrey Epstein's "girlfriend."  She has called Epstein her older rich boyfriend.

     2.     Further, the opinions formed and stated by Ms. Giuffre as outlined in Ms. Oh's Amended Complaint ¶¶ 16 – 17, were in response to the misstatements publicly made by Ms. Oh, a public figure at the time that the comments were made, that Ms. Oh was never an abuser and never sexually or physically assaulted Ms. Giuffre.  That is false.

3. Ms. Giuffre was the victim of the sadomasochist sexual and physical abuse perpetrated against her by Ms. Oh, including cutting, slashing and other physical injuries during the sadomasochist sessions that have left Ms. Giuffre with permanent emotional and physical scars.

4. Ms. Oh has admitted publicly that she brought three women to Jeffrey Epstein's New York mansion for his sexual purposes.

5. Ms. Oh has admitted publicly that, as directed by Epstein, she took Ms. Giuffre (who was seventeen at the time) shopping on St. Mark's Place for a "sexy" schoolgirl outfit after Epstein called her (Ms. Oh) and said, "You would know where to go. Take her there."

6. While she was Epstein's girlfriend, Ms. Oh physically and sexually abused Ms. Giuffre for Epstein's pleasure.

7. While Ms. Oh previously described herself as Epstein's "girlfriend," when an opportunity to profit presented itself, she changed her description from being Epstein's "girlfriend" to being his "victim." By such fraudulent misrepresentations, Ms. Oh was able to obtain money from the Epstein victim compensation fund.

8. Later, when Ms. Oh saw an opportunity to try and extract money from Ms. Giuffre, Ms. Oh sued Ms. Giuffre for defamation for $10 million.

9. New York has given Ms. Giuffre a substantive right to recover damages and attorneys' fees against Ms. Oh, because Ms. Oh's lawsuit against Ms. Giuffre is an attempt burden Ms. Giuffre's exercise of her constitutional rights to free speech.

10. Ms. Giuffre now files her Answer and Counterclaim in order to protect her constitutional rights to free speech, and to further protect against Ms. Oh's false claims and

improper abuse of this country's judicial system.

## ANSWER AND INCORPORATED COUNTERCLAIM

### PARTIES[1]

1.      Ms. Giuffre is without knowledge or information sufficient to form a belief as to Plaintiff's residency alleged in paragraph 1.

2.      Ms. Giuffre admits that she is a citizen of Colorado (residing in Australia), as alleged in paragraph 2.

### JURISDICTION AND VENUE

3.      Paragraph 3 contains legal conclusions for which no response is required.  To the extent the Court determines a response is required, Ms. Giuffre denies that the amount in controversy exceeds $75,000.  Ms. Giuffre denies knowledge or information sufficient to form a belief as to the remaining allegations in paragraph 3.

4.      Ms. Giuffre admits the Court has personal jurisdiction over her but denies that she has committed any tortious actions in this District.

5.      Ms. Giuffre denies that venue is proper in this District because: (1) no wrongful events occurred in this District and no substantial part of the underlying events occurred in this District; (2) Plaintiff did not suffer effects from Ms. Giuffre's statements in this District; and (3) any use of by Ms. Giuffre of this Court is irrelevant to a venue determination.

### FACTUAL ALLEGATIONS

6.      Ms. Giuffre denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 6.

7.      Ms. Giuffre denies the allegations contained in Paragraph 7.

---

[1] Ms. Giuffre's Answer tracks the headings and paragraph numbers contained in Ms. Oh's First Amended Complaint to facilitate cross-reference between the two documents.

3

8.      Ms. Giuffre denies the allegations contained in Paragraph 8.

9.      Ms. Giuffre denies the allegations contained in Paragraph 9.

10.     Ms. Giuffre admits that, as alleged in paragraph 10, in approximately 2000 and 2001 she saw Plaintiff in New York, but Ms. Giuffre denies seeing Plaintiff at any time outside of the State of New York, and denies the conclusion that the New York meetings constituted only "a few occasions."

11.     Ms. Giuffre denies the allegations contained in paragraph 11.

12.     Ms. Giuffre admits that she last saw Plaintiff in about 2001, as alleged in paragraph 12. Ms. Giuffre does not understand what the remainder of paragraph 12 means, since it alleges that Ms. Giuffre "has never accused Plaintiff of any bad or criminal acts from that time [i.e., from 2001]," and yet the Complaint appears to rest on allegations that Ms. Giuffre has made statements about Plaintiff that involve bad acts.

13.     Ms. Giuffre denies the allegations in paragraph 13.

14.     Ms. Giuffre admits that she as used a Twitter account under the name "Virginia Giuffre" at URL https://twitter.com/VRSVirginia.

15.     Ms. Giuffre admits that during the times mentioned in paragraph 15 she distributed various Tweets.

16.     Ms. Giuffre denies the allegations in paragraph 16 that she published Tweets that contained statements of fact that she knew or should have known to be false. In addition, Ms. Giuffre denies that the statements described in paragraphs 16(a), 16(b), 16(c), 16(d), 16(e), 16(f), and 16(g) contained statements of fact that she knew or should have known to be false. In addition, Ms. Giuffre denies that any of the aforementioned allegations were false statements, and to the extent that any of these statements are found to be false statements of fact, Ms. Giuffre denies that

she knew or should have known that they were false.

17.    Ms. Giuffre denies the allegations in paragraph 17 that she tweeted and retweeted falsehoods.

18.    Ms. Giuffre denies the allegations in paragraph 18 that any statements of hers were false. Ms. Giuffre denies that she acted maliciously in making any statements. Ms. Giuffre denies that she knew or should have known any of the statements were false.

19.    Ms. Giuffre denies sufficient knowledge to form a belief as to whether Plaintiff ever was, or is, formally criminally charged with a crime for being a co-conspirator in the Jeffrey Epstein sex trafficking organization, but denies the remaining allegations contained in paragraph 19.

20.    Ms. Giuffre denies the allegations in paragraph 20.

21.    Ms. Giuffre denies the allegations in paragraph 21. Specifically, Ms. Giuffre denies that she has acted with any malice and that she has reiterated and republished any defamations and slanders.

22.    Ms. Giuffre denies the allegations in paragraph 22.

23.    Ms. Giuffre denies the allegations in paragraph 23.

## COUNT 1:  DEFAMATION

24.    In response to Plaintiff's restatement of her allegations in paragraph 24, Ms. Giuffre restates all of the foregoing answers contained in paragraphs 1-23 above.

25.    With respect to the defamation cause of action alleged in paragraph 25, Ms. Giuffre denies the allegation in its entirety. In addition, Ms. Giuffre denies that she has made any statements of fact that were false or that she should have known were false about Plaintiff. In addition, to the extent paragraph 25 states conclusions or characterizations of the law about what

is "defamatory," while no response is required, Ms. Giuffre denies that any of these statements about Plaintiff were defamatory. In addition, Ms. Giuffre denies that she acted with any malice.

26.     Ms. Giuffre denies the allegations contained in paragraph 26 that she has created, written, spoken, published, and broadcast defamatory statements about Plaintiff.

27.     Ms. Giuffre denies the allegations contained in paragraph 27 that news organizations republished any false and defamatory statements from her about Plaintiff, as she has never made any false and defamatory statements about Plaintiff.

28.     Ms. Giuffre denies the allegations contained in paragraph 28.

29.     To the extent paragraph 29 states conclusions or characterizations of the law, no response is required. Ms. Giuffre otherwise denies the allegations contained in paragraph 29.

30.     Ms. Giuffre denies the allegations contained in paragraph 30.

31.     To the extent paragraph 31 states conclusions or characterizations of the law, no response is required. Ms. Giuffre otherwise denies the legal conclusions contained in paragraph 31.

32.     To the extent paragraph 32 states conclusions or characterizations of the law, no response is required. Ms. Giuffre otherwise denies the legal conclusions contained in paragraph 32.

33.     To the extent paragraph 33 states conclusions or characterizations of the law, no response is required. Ms. Giuffre otherwise denies the legal conclusions contained in paragraph 33.

## **AFFIRMATIVE DEFENSES**

34.     Plaintiff's Complaint fails to state a claim upon which relief could be granted.

35.     Plaintiff's claims may be barred by the statute of limitations.

36.     Plaintiff's claims are barred because she has filed her action in an improper venue.

37.     Plaintiff's claims involve Ms. Giuffre's communications in a public forum in connection with issues of public interest and other lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest.

38.     Plaintiff's claims are barred by the "single publication" rule.

39.     Plaintiff's claims are barred because the statements made by Ms. Giuffre were non-actionable opinions.

40.     Plaintiff's claims are barred because the statements made by Ms. Giuffre or her agents (if any) were constitutionally protected opinions under the First Amendment and Article I, Section 8 of the New York State Constitution.

41.     Plaintiff's claims are barred because the statements made by Ms. Giuffre or her agent (if any) were non-defamatory statements of fact.

42.     Plaintiff's claims are barred because the statements made by Ms. Giuffre or her agent (if any) were protected by the self-defense privilege, including self-defense against statements made by Plaintiff's agents, including Plaintiff's husband.

43.     Plaintiff's claims are barred because the statements made by Ms. Giuffre or her agent (if any) were protected by qualified or conditional privileges.

44.     Plaintiff's claims are barred because she is a public figure and unable to prove that Ms. Giuffre acted with "actual malice."

45.     Plaintiff's claims are barred because the statements made by Ms. Giuffre or her agent (if any) were substantially true.

46.     Plaintiff's claims are barred because the statements made by Ms. Giuffre or her agent (if any) constituted "fair comment."

47. Plaintiff's claims are barred because, at all times relevant herein, Plaintiff has failed to act in good faith with respect to Ms. Giuffre.

48. Plaintiff's claims are barred by the incremental harm doctrine.

49. Plaintiff's claims are barred because the statements made by Ms. Giuffre or her agent (if any) cannot realistically have caused impairment to Plaintiff's reputation.

50. This Court lacks subject matter jurisdiction to adjudicate Plaintiff's claims because they do not exceed the sum or value of $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a).

51. Plaintiff's alleged damages, if any, are speculative, hypothetical, unsupported by any reasonable methodology, and are not cognizable as a matter of law.

52. Plaintiff's claims are barred because the statements made by Ms. Giuffre or her agent (if any) did not cause or contribute to any damages suffered by Plaintiff.

53. To the extent that Plaintiff suffered any injury, because Plaintiff has previously described herself as Jeffrey Epstein's "girlfriend," any statements made by Ms. Giuffre cannot have caused additional injury to Plaintiff.

54. To the extent Plaintiff suffered an injury, she failed to take reasonable, necessary, appropriate and feasible steps to mitigate her alleged damages, and to the extent of such failure to mitigate, she should be barred from recovering some or all of the alleged damages she seeks.

55. Plaintiff's damages, if any, are the proximate result of intervening causes, pre-existing medical and mental conditions of Plaintiff, and/or causes that occurred without knowledge or participation of Ms. Giuffre and for which Ms. Giuffre is not responsible.

56. Plaintiff's damages, if any, were the result of her own conduct or the conduct of others and were not proximately caused by any action of Ms. Giuffre.

57.     Plaintiff's claims are barred, in whole or in part, by the affirmative defenses of waiver, ratification, estoppel, laches, and/or unclean hands.

58.     As described in greater detail below, Plaintiff's claims are also barred by N.Y. Civ. R. § 76-a(1)(a), New York's anti-SLAPP law (i.e., New York's law barring "Strategic Lawsuits Against Public Participation").  Ms. Giuffre's statements were communications in a public forum in connection with an issue of public interest and were part of an exercise of her constitutional rights.

59.     Under New York's anti-SLAPP law, Plaintiff cannot establish her claims by "clear and convincing evidence."

60.     Ms. Giuffre reserves the right to raise any and all other affirmative defenses she deems proper based on the discovery process or any future development of the case.

**JURY DEMAND**

61.     Ms. Giuffre demands a jury trial as to the claims against her.

        WHEREFORE, on Plaintiff's complaint, Defendant Virginia Giuffre demands judgment as follows:

A.     That Plaintiff Rina Oh take nothing by way of her Complaint;

B.     That the Complaint be dismissed *with prejudice*;

C.     That Judgment be entered in favor of Defendant Virginia Giuffre and against Plaintiff Rina Oh;

D.     That Defendant Ms. Virginia Giuffre be awarded her costs and fees in this action, including reasonable attorneys' fees and pre- and post-judgment interest; and

E.     All other such relief as this Court deems just and proper.

9

## COUNTERCLAIM

### Introduction

1.     This is an action for damages arising out of Ms. Oh's re-victimization and re-traumatization by subjecting Ms. Giuffre to a baseless, retaliatory, and emotionally draining lawsuit because Ms. Giuffre spoke her truth about her perpetrator, Ms. Rina Oh (counterclaim defendant) that sexually and physically abused her and other victims of Jeffrey Epstein.

2.     Counterclaim Plaintiff Virginia Giuffre ("Ms. Giuffre") has a substantive right to maintain a claim and counterclaim to recover damages against Counterclaim Defendant Rina Oh ("Ms. Oh") under New York's anti-SLAPP (Strategic Lawsuit Against Public Participation) statute, N.Y. Civ. Rights § 70-a.

### PARTIES

3.     Ms. Giuffre is an individual who was and is a citizen of the State of Colorado residing in Australia.

4.     Ms. Oh is an individual who was and is a citizen of the State of New Jersey.

5.     Ms. Oh is defined as a public figure under federal constitutional law.

### JURISDICTION AND VENUE

6.     This is an action, claim, and counterclaim for damages in an amount in excess of the minimum jurisdictional limits of this Court.

7.     Insofar as this Court has subject matter jurisdiction over Ms. Oh's complaint, it has supplemental jurisdiction over Ms. Giuffre's counterclaim pursuant to 28 U.S.C. § 1367.

8.     This Court has jurisdiction over Ms. Oh because she has voluntarily submitted to jurisdiction in this District by filing her complaint here and because she has tortiously and maliciously caused injury to Ms. Giuffre in this District.

9.     Venue is proper in this district, pursuant to 28 U.S.C. § 139l(b), and this Court has personal jurisdiction over Plaintiff - Counterclaim Defendant Ms. Oh, who asserted her own claims in this district and has voluntarily submitted to its jurisdiction. *See, e.g., Grupke v. Linda Lori Sportswear, Inc*., 174 F.R.D. 15, 18 (E.D.N.Y. 1997) (holding plaintiff, "by virtue of bringing suit, waives venue and personal jurisdiction objections to a defendant's counterclaims.").

## FACTUAL ALLEGATIONS

10.     During around 2000-2002, beginning when Ms. Giuffre was 16, Ms. Giuffre was the victim of sex trafficking and abuse by convicted sex offender Jeffrey Epstein.

11.     Epstein's trafficking scheme involved recruiting young girls, often by claiming they would be paid $200 for simply providing a massage to a wealthy billionaire. The young girls would then be brought up to Epstein's bedroom where Epstein would be on a massage table; Epstein would then sexually abuse the girl. This same pattern was repeated numerous times with numerous children.

12.     "From between 1999 – 2007, Jeffrey Epstein sexually abused more than 30 minor girls … in his mansion in Palm Beach Florida, and elsewhere in the United States and overseas…. In addition to his own sexual abuse of the victims, Epstein directed other persons to abuse the girls sexually. Epstein used paid employees to find and bring minor girls to him. Epstein worked in concert with others to obtain minors not only for his sexual gratification, but also for the sexual gratification of others." United States District Court Judge Marra,  Summary Judgment Order at 2, Case No.: 9:08-cv-80786 (S.D. Fla. Feb. 21, 2019) (internal citations omitted).

13.     Like other minor children who came before and after her, Ms. Giuffre was initially recruited to provide massages, and thereafter to engage in a variety of sexual acts, for Epstein. Ms. Giuffre was required to be on call for Epstein for sexual purposes and frequently traveled with him

both nationally and internationally. Ms. Giuffre was regularly abused by Epstein and was lent out by Epstein to others for sexual purposes.

14.     During the years that Ms. Giuffre was the victim of sex trafficking and abuse, she was cut and slashed by Plaintiff in this underlying Action, Ms. Oh. The cutting, slashing and other injuries inflicted on Ms. Giuffre was part of the sadomasochist sexual and physical abuse perpetrated against her by Ms. Oh for Epstein's pleasure.

15.     Ms. Giuffre still has permanent emotional and physical scaring, including a physical scar on her leg, as a result of the abuse perpetrated against her by Ms. Oh.

16.     On October 28, 2020, the podcast *The Recruiters, Broken: Seeking Justice* was released as part of an ongoing series of episodes related to survivors of Jeffrey Epstein's criminal sexual misconduct.

17.     The podcast episode synopsis reads as follows: "Epstein relied on a network of women to bring him new victims. Nearly 20 years later, one survivor tracked down her own recruiter."     Tara     Palmeri.     *Broken:          Seeking          Justice*     (2020), https://podcasts.apple.com/us/podcast/the-recruiters/id1478460758?i=1000496307220)

18.     The "recruiter" referred to in the above-mentioned synopsis is Ms. Oh. *See. id.*

19.     During the podcast interview, Ms. Oh discusses her artwork that depicts the infamous and highly circulated photograph of Ms. Giuffre (original version is of Ms. Giuffre next to Prince Andrew, Duke of York), but with a slashed and bleeding leg.



(image retrieved from Ms. Rina Oh's Instagram account)

20.    In Ms. Oh's interview for the subject episode, Ms. Oh does not discuss Ms. Giuffre's bleeding leg, but instead says that Prince Andrew "may not be wrong when he said that the picture was doctored." Ms. Oh goes on to claim that in the original photograph the "lighting doesn't look right" and makes further comments suggesting that the photograph was manipulated, and she believes that it is a "composite image." *See Broken: Seeking Justice, supra.*

21.    Ms. Oh also claimed that "she and Epstein were in a relationship" and that he was an "older rich boyfriend" *See. Id.*

22.    When Ms. Giuffre's age was brought up by the interviewer, Ms. Oh responded, "Seventeen is not a child." *Id*

23.    Upon hearing Ms. Oh's statements made during the podcast interview, Ms. Giuffre was extremely upset, retraumatized, and suffered further mental and emotional distress.

24.    Ms. Giuffre suffered serious psychological, sexual, and physical abuse at the hands of Ms. Oh. To hear Ms. Oh claim that she was a victim and that she was "not an abusive person" caused Ms. Giuffre harm and exacerbated Ms. Giuffre's emotional injuries.

13

25.     Ms. Giuffre responded with her protected opinions and truth as set forth in Ms. Oh's Amended Complaint ¶¶ 16 - 17.

26.     Ms. Giuffre's comments were and are protected opinions, the truth, and nonactionable free speech.

## COUNT ONE – NEW YORK STATE ANTI-SLAPP CLAIM

27.     Ms. Giuffre realleges and incorporates by reference herein each of the prior paragraphs.

28.     Ms. Oh's underlying Action is a "strategic lawsuit against public participation" or "SLAPP action" as defined by N.Y. Civ. R. § 76-a(1)(a).

29.     New York defines a "SLAPP action" as a claim based upon "(1) any communication in a place open to the public or a public forum in connection with an issue of public interest; or (2) any other lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest, or in furtherance of the exercise of the constitutional right of petition." N.Y. Civ. R. § 76-a(1)(a).

30.     Pursuant to New York Civil Rights Law §§ 70 and 76, Ms. Giuffre's brings her substantive cause of action for damages against Ms. Oh for Ms. Oh's SLAPP action unlawfully brought against Ms. Giuffre.

31.     In responding to the false statements that Ms. Oh made during the above-mentioned interview for "The Recruiters" podcast, Ms. Giuffre was communicating in a public forum in connection with an issue of public interest and engaging in lawful conduct in furtherance of her exercise of the constitutional right of free speech in connection with an issue of public interest.

32.     Ms. Giuffre's exercise of her rights is exactly the class of rights intended to be protected by the New York anti-SLAPP laws. *See* New York State Senator Brad Hoylman. Press

Release. ("With the signing of this bill, New York will have one of the strongest anti-SLAPP suit laws in the nation, protecting New Yorkers' free speech from vindictive bullies.").[2]

33.    Ms. Oh had no substantial basis in fact or law for her lawsuit against Ms. Giuffre.

34.    Ms. Giuffre's speech was constitutionally protected opinion.

35.    Even if Ms. Giuffre's subject comments could somehow be found to be unsubstantiated, Ms. Giuffre's comments would remain protected speech and opinion.  *See Coleman v Grand*, 523 F Supp. 3d 244, 263 [EDNY 2021] ("assertions that a person is guilty of 'blackmail,' 'fraud,' 'bribery' and 'corruption' could, in certain contexts, be understood as mere, nonactionable 'rhetorical hyperbole' or 'vigorous epithet[s]'" or "even when uttered or published in a more serious tone" nonactionable if based on disclosed facts and framed as "personal surmise built upon those facts").

36.    Ms. Oh has brought her lawsuit to harass, intimidate, punish, and maliciously inhibit Ms. Giuffre's free speech rights.

37.    Ms. Oh has brought her lawsuit for the sole purpose of harassing, intimidating, punishing, and maliciously inhibiting Ms. Giuffre's free speech rights.

38.    There exists a causal connection between Ms. Oh's conduct and damages suffered by Ms. Giuffre.

39.    As a result of the Ms. Oh's malicious conduct, Ms. Giuffre has suffered and continues to suffer emotional distress and other injuries.

40.    Ms. Giuffre has a substantive right to maintain an action, claim, cross-claim, and counterclaim to recover costs, compensatory damages, punitive damages, and attorneys' fees from Ms. Oh under New York Civ. Rights § 70-a.

---

[2] Press Release. Sen. Brad Hoylman. (November 10, 2020) *available at* https://www.nysenate.gov/newsroom/press-releases/brad-hoylman/free-speech-slapps-back-governor-signs-hoylmanweinstein

41.     New York law recognizes that Ms. Giuffre has a substantive right to bring this action under this section, because "[t]he right to bring an action under this section [i.e., the anti-SLAPP section] can be waived only if it is waived specifically." New York Civ. Rights § 70-a(2). Ms. Giuffre has never waived her right to bring her action against Ms. Oh.

## JURY DEMAND

42.     Virginia Giuffre demands a jury trial as to her counterclaim.

WHEREFORE, on her counter-claim, Counterclaim Plaintiff Virginia Giuffre demands judgment as follows:

A.     That judgment be entered in Counterclaim Plaintiff Ms. Giuffre's favor against Counterclaim Defendant Ms. Oh;

B.     That Ms. Giuffre be awarded compensatory damages in an amount to be determined at trial and in excess of this Court's jurisdictional limits.

C.     That Ms. Giuffre be awarded punitive damages in an amount to be determined at trial;

D.     That Defendant Ms. Virginia Giuffre be awarded her costs and fees in this action, including reasonable attorneys' fees and pre- and post-judgment interest; and

E.     All other such relief as this Court deems just and proper.

Dated:   May 7, 2022
         New York, New York

                                        Respectfully submitted,

                                        _____/s/_____
                                        Kathleen R. Thomas, Esq.
                                        THOMAS COUNSELOR AT LAW, LLC
                                        11 Broadway, Suite 615
                                        New York, NY 10004
                                        kat@tlclawllc.com
                                        Ph: 917-508-9698
                                        Fax: 917-591-3335

                                        *Attorney for Virginia Giuffre*

## CERTIFICATE OF SERVICE

I certify that on May 7, 2022 I electronically served this *Answer* via ECF on the following:

Ira Scot Meyerowitz, Esq. (IM 2449)
Meyerowitz Law Firm
295 Madison Avenue, 22nd Floor
New York, NY 10017
Tel: (917) 863-4460
Fax: (212) 542-8883
irameyerowitz@gmail.com


<u>                    /s/                    </u>
Kathleen R. Thomas, Esq.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

RINA OH n/k/a RINA OH AMEN,

                Plaintiff,

        vs.

VIRGINIA L. GIUFFRE,

                Defendant.

-------------------------------------------------------------x

**PLAINTIFF'S ANSWER TO
DEFENDANT COUNTERCLAIM**

Case No.: 21 cv 8839

Plaintiff RINA OH n/k/a/ RINA OH AMEN ("Plaintiff"), by her attorneys, the Meyerowitz Law Firm, as and for her Answer to the Counterclaim of defendant VIRGINIA L. GIUFFRE ("Defendant"), alleges as follows:

**PLAINTIFF'S ANSWER TO DEFENDANT'S INTRODUCTION**

1.    Plaintiff denies the allegations in this corresponding paragraph of Defendant's Counterclaim, and further alleges as follows:

> Defendant defames Plaintiff stating that Plaintiff was not a victim of Jeffrey Epstein ("Epstein") and Ghislaine Maxwell ("Maxwell"), and that she was a co-conspirator in the horrible Epstein sex trafficking enterprise. That is simply not true. After fully investigating Plaintiff and conducting numerous and lengthy interviews of Plaintiff, the FBI and the U.S. Attorney's Office, among other governmental agencies, as well as with Epstein's Estate Trust, have all come to the same conclusion, and named and classified Plaintiff as a victim, and not a recruiter, co-

1

conspirator or anything else. Indeed, Plaintiff was never charged or prosecuted for any illegal acts or for being a co-conspirator of Epstein and Maxwell because Plaintiff was manipulated by and was a victim of Epstein and Maxwell, and not a co-conspirator or recruiter or anything else.

Like many other victims, Epstein and Maxwell played psychological games and manipulated and groomed Plaintiff. In fact, Defendant participated in this attempted grooming of Plaintiff, as well as with other females. Defendant even tried to coax Plaintiff into dating other men by telling her that is what Epstein liked. Plaintiff was never Epstein's "girlfriend". Notably, Defendant was called, and referred to herself as Epstein's "number one" girl. When Plaintiff realized what was happening to her, and that Epstein and Maxwell were trying to sex-traffic her to Epstein's friends, and after Epstein violently sexually assaulted her, Plaintiff was able to break free of their psychological hold and left them and escaped their sexual abuse and attempts to traffic her.

Defendant knew and was aware of the foregoing, which makes Defendant's public and defamatory accusations all the more malicious and hurtful.

2. Plaintiff denies the allegations in this corresponding paragraph of Defendant's Counterclaim, and further alleges as follows:

Plaintiff had remained anonymous for approximately 20 years, and never had any intention of speaking publicly about what happened with Epstein and Maxwell. That all changed when Defendant violated Plaintiff's statutory right to privacy and anonymity as a victim of sexual abuse, and publicly outed Plaintiff by name in a memoir Defendant intended to publish and through other public comments. Once Plaintiff was illegally and maliciously outed and named by Defendant, and then defamed by Defendant, Plaintiff had no choice but to come forward to address Defendant's defamatory statements, and to bring this action for defamation. Plaintiff was not a public figure and never wanted to be. Defendant tried to make one by publicly defaming and naming Plaintiff in violation of Plaintiff's right to privacy.

Defendant employed tactics of intimidation and false allegations to dissuade Plaintiff, a witness in the criminal investigations, from testifying for government agencies and other parties involved, including meeting Refia Banu Kucukkoylu and Johanna Sjoberg, both of whom Defendant spent significant time. In addition, Defendant also befriended the person who recruited Plaintiff, Lisa Phillips.

3. Plaintiff denies the allegations in this corresponding paragraph of Defendant's Counterclaim, and further alleges as follows:

Plaintiff never perpetrated any sadomasochistic acts or sexual abuse upon Defendant. To the contrary, Defendant (who was of legal age at the time) sexually assaulted Plaintiff. Indeed, Plaintiff was surprised when she was called to the massage room to see Epstein, and found Epstein and Defendant waiting for her. Defendant then proceeded to touch Plaintiff without Plaintiff's consent and much to her horror. Plaintiff did not reciprocate or sexually touch Defendant. Plaintiff never engaged in any sadomasochism, nor did she ever cut or slash Defendant. These are lies. It was Plaintiff who was sexually assaulted and abused by Defendant at Epstein's direction. Plaintiff

4

did not participate in any threesome with Defendant and
Epstein. On another occasion, Defendant and other females
sexually assaulted Plaintiff while Epstein watched. Plaintiff
only saw Defendant a few times at Epstein's estates before
Plaintiff left Epstein's orbit. Defendant remained to groom
and bring many more girls to Epstein, including minors as
an adult.

4.   Plaintiff denies the allegations in this corresponding paragraph of Defendant's
Counterclaim, and further alleges as follows:

Plaintiff did not bring three women to Epstein for sexual
purposes. Whereas, on the other hand, Defendant recruited
numerous girls, including many minors, for Epstein and
Maxwell, whom Defendant groomed for Epstein and to be
sexually abused and sex trafficked. Defendant has admitted
as much. Indeed, Defendant even went to Thailand with the
intent to recruit girls for Epstein to be sex trafficked, one
girl being around twelve years of age. When Plaintiff
realized what Epstein and Maxwell wanted her to do
(recruit girls and sleep with Epstein's friends), Plaintiff left
and never returned. On the other hand, Defendant
continued recruiting for Epstein remained as much as a
year after Plaintiff left.

5.   Plaintiff denies the allegations in this corresponding paragraph of Defendant's Counterclaim, and further alleges as follows:

> In the presence of Defendant, Maxwell asked Plaintiff to go shopping with Defendant. Maxwell gave Defendant money to buy a "schoolgirl" outfit, and Defendant used that money to buy a dress that Defendant selected. Defendant also wanted to get, and got, a belly button piercing, and convinced Plaintiff to get a piercing too. After shopping Plaintiff went home.

6.   Plaintiff denies the allegations in this corresponding paragraph of Defendant's Counterclaim, and further alleges as follows:

> Epstein's so called "number one" girl, Defendant, sexually abused Plaintiff for Epstein's pleasure.

7.   Plaintiff denies the allegations in this corresponding paragraph of Defendant's Counterclaim, and further alleges as follows:

> Defendant continuously accuses Plaintiff of things that Defendant did. Here too, regarding being out for the money, the same accusation herein could be levelled at Defendant, who has received large cash payouts from the Epstein Victim's Compensation Fund, as well as receiving

$15,000,000 by suing and then settling with Prince Andrew of the United Kingdom. She also sued and settled with Maxwell. Plaintiff was not Epstein's "girlfriend" and never sought to profit from her abuse. Indeed, she had remained anonymous for 20 years and would have continued to remain anonymous, if it were not for Defendant who illegally outed Plaintiff as a sexually abuse victim. Defendant did not seek to be compensated. Rather, Plaintiff was contacted by Brad Edwards, an attorney representing and assisting victims and survivors of Epstein, and made a claim for Plaintiff. To be sure, after vetting by the FBI, US Attorney's Office, and the Epstein's Estate Trust, Plaintiff was and has always been categorized as a victim, and not a recruiter or anything else, and lawfully received compensation (far less than Defendant), that she never sought out in the first place. Plaintiff sued no other parties. Defendant collected from no less than three parties and is embroiled in still another suit. Defendant is victim shaming Plaintiff.

8. Plaintiff denies the allegations in this corresponding paragraph of Defendant's Counterclaim, and further alleges as follows:

Defendant defamed Plaintiff. This case is not about money. This case is about justice and clearing Plaintiff's name of Defendant's lies. Moreover, Defendant's defamation has caused Plaintiff to lose significant business and to suffer significant damage her name and reputation, as well as to suffer from extreme mental distress, humiliation, shame, embarrassment and trauma. This case is also an effort to stop Defendant from continuing to publicly spew lies about Plaintiff.

9.  Plaintiff denies the allegations in this corresponding paragraph of Defendant's Counterclaim, and further alleges as follows:

Defendant does not have the right to defame someone. Plaintiff has a legal right to sue for defamation.

10. Plaintiff denies the allegations in this corresponding paragraph of Defendant's Counterclaim, and further alleges as follows:

Plaintiff is not seeking to silence Defendant. Plaintiff is simply seeking to stop the lies that Defendant continues to spread about Plaintiff. Defamation is an age old legal claim that is constitutionally permissible despite free speech and the First Amendment; no one has the right to defame

another person. The First Amendment does not allow Defendant to defame Plaintiff.

Plaintiff's claim for defamation is not barred by N.Y. Civ. R. § 76-a(1)(a), New York's anti-SLAPP law (the "anti-SLAPP law"). Defendant's counterclaim, pursuant to the anti-SLAPP law, is not applicable in this situation where Plaintiff is suing for defamation. None of the elements of the anti-SLAPP law are met in this case, and neither was the anti-SLAPP law ever intended to bar a legitimate claim for defamation. Defendant's counterclaim under the anti-SLAPP law is without merit and, indeed, an effort to silence Plaintiff in the face of Defendant's public lies about Plaintiff. Defendant's counterclaim should therefore be dismissed for failing to state a claim upon which relief may be granted.

## PLAINTIFF'S ANSWER TO THE DEFENDANT'S ANSWER AND INCORPORATED COUNTERCLAIM

1. Plaintiff neither admits nor denies the allegations in this corresponding paragraph of Defendant's Answer / Counterclaim.

2. Plaintiff neither admits nor denies the allegations in this corresponding paragraph of Defendant's Answer / Counterclaim.

3.   Plaintiff denies the allegations in this corresponding paragraph of Defendant's Answer / Counterclaim.

4.   Plaintiff denies the allegations in this corresponding paragraph of Defendant's Answer / Counterclaim.

5.   Plaintiff denies the allegations in this corresponding paragraph of Defendant's Answer / Counterclaim.

6.   Plaintiff neither admits nor denies the allegations in this corresponding paragraph of Defendant's Answer / Counterclaim.

7.   Plaintiff denies the allegations in this corresponding paragraph of Defendant's Answer / Counterclaim.

8.   Plaintiff denies the allegations in this corresponding paragraph of Defendant's Answer / Counterclaim.

9.   Plaintiff denies the allegations in this corresponding paragraph of Defendant's Answer / Counterclaim.

10. Plaintiff denies the allegations in this corresponding paragraph of Defendant's Answer / Counterclaim.

11. Plaintiff denies the allegations in this corresponding paragraph of Defendant's Answer / Counterclaim.

12. Plaintiff denies the allegations in this corresponding paragraph of Defendant's Answer / Counterclaim.

13. Plaintiff denies the allegations in this corresponding paragraph of Defendant's Answer / Counterclaim.

14. Plaintiff admits the allegations in this corresponding paragraph of Defendant's Answer / Counterclaim.

15. Plaintiff admits the allegations in this corresponding paragraph of Defendant's Answer / Counterclaim.

16. Plaintiff denies the allegations in this corresponding paragraph of Defendant's Answer / Counterclaim.

17. Plaintiff denies the allegations in this corresponding paragraph of Defendant's Answer / Counterclaim.

18. Plaintiff denies the allegations in this corresponding paragraph of Defendant's Answer / Counterclaim.

19. Plaintiff denies the allegations in this corresponding paragraph of Defendant's Answer / Counterclaim.

20. Plaintiff denies the allegations in this corresponding paragraph of Defendant's Answer / Counterclaim.

21. Plaintiff denies the allegations in this corresponding paragraph of Defendant's Answer / Counterclaim.

22. Plaintiff denies the allegations in this corresponding paragraph of Defendant's Answer / Counterclaim.

23. Plaintiff denies the allegations in this corresponding paragraph of Defendant's Answer / Counterclaim.

24. Plaintiff neither admits nor denies the allegations in this corresponding paragraph of Defendant's Answer / Counterclaim.

25. Plaintiff denies the allegations in this corresponding paragraph of Defendant's Answer / Counterclaim.

26. Plaintiff denies the allegations in this corresponding paragraph of Defendant's Answer / Counterclaim.

27. Plaintiff denies the allegations in this corresponding paragraph of Defendant's Answer / Counterclaim.

28. Plaintiff denies the allegations in this corresponding paragraph of Defendant's Answer / Counterclaim.

29. Plaintiff denies the allegations in this corresponding paragraph of Defendant's Answer / Counterclaim.

30. Plaintiff denies the allegations in this corresponding paragraph of Defendant's Answer / Counterclaim.

31. Plaintiff denies the allegations in this corresponding paragraph of Defendant's Answer / Counterclaim.

32. Plaintiff denies the allegations in this corresponding paragraph of Defendant's Answer / Counterclaim.

33. Plaintiff denies the allegations in this corresponding paragraph of Defendant's Answer / Counterclaim.

## **PLAINTIFF'S AFFIRMATIVE DEFENSES TO COUNTERCLAIM**

1. Defendant fails to state a claim upon which relief can be granted in her counterclaim.

2.   Defendant's anti-SLAPP law counterclaim is without merit and does not bar Plaintiff's claim for defamation.

3.   Defendant has and had no lawful right or privilege, qualified or conditional, to defame Plaintiff.

4.   Defendant's counterclaim is barred by the doctrines of waiver, ratification, estoppel, laches, bad faith and unclean hands.

### PRAYER FOR RELIEF WITH RESPECT TO COUNTERCLAIM

**WHEREFORE**, Plaintiff prays for relief with respect to the Counterclaim of Defendant as follows:

a.       That Defendant's counterclaim be dismissed in its entirety and with prejudice;

b.       That Plaintiff be awarded its attorneys' fees and costs under statutory and common law; and

c.       That Plaintiff be awarded all other and further relief as the Court may deem just and proper.

Date:   New York, New York
        June 6, 2022

MEYEROWITZ LAW FIRM

By: _____
    Ira Scot Meyerowitz (IM 2449)
    295 Madison Avenue
    22nd Floor
    New York, New York 10017
    Tel: (917) 863-4460
    Fax: (212) 542-8883
    irameyerowitz@gmail,com

*Attorneys for Plaintiff Rina Oh Amen*