UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
RINA OH n/k/a RINA OH AMEN,                    Case No.: 21-cv-8839 (NRB)

                              Plaintiff,

            -against-

VIRGINIA L. GIUFFRE,

                              Defendant.
-------------------------------------------------------X

### PLAINTIFF RINA OH n/k/a RINA OH AMEN's RESPONSE TO DEFENDANT VIRGINIA GIUFFRE'S LOCAL CIVIL RULE 56.1 STATEMENT

Pursuant to Local Rule 56.1 of the Civil Rules of this court, Plaintiff Rina Oh n/k/a Rina Oh Amen submits the following responses to Defendant Virginia L. Giuffre's Local Civil Rule 56.1 Statement, and a statement of additional material facts in support of her opposition to Defendant Virginia L. Giuffre's motion of summary judgment.

### I.    BACKGROUND FACTS

#### A.  Background on Plaintiff Rina Oh Amen

1.    Plaintiff Rina Oh Amen (hereinafter "Plaintiff" or "Ms. Oh Amen") is an adult female residing in New Jersey. Am. Compl. ¶1.

<u>Response</u>:       Undisputed.

2.    Ms. Oh Amen claims she is a "respected and well regarded artist." Am. Compl. ¶6.

<u>Response</u>:       Undisputed.

3.    Ms. Oh Amen asserts that she met Jeffrey Epstein ("Epstein") in or around 2000.

-1-

Am. Compl. ¶¶7-10.

<u>Response</u>:     Undisputed.

4.     Ms. Oh Amen was introduced to Epstein through a friend after Ms. Oh Amen

suggested to her friend, "'Maybe if I met a very rich guy, it will help me forget

about [my ex-boyfriend]. So Lisa said, 'I know the perfect man.' I used the word

'sugar daddy' when I told her, 'Maybe if I met a sugar daddy, it would be easier for

me to forget [my ex-boyfriend].'"  Deposition of Rina Oh Amen, 95:6-18.

<u>Response</u>:     Disputed as the testimony is a summary and an incomplete statement of

the events leading up to Ms. Oh Amen's introduction to Jeffrey Epstein.

5.     Following their first meeting, Ms. Oh Amen had a sexual relationship with Jeffrey

Epstein.  Deposition of Rina Oh Amen, 82:12-14.

<u>Response</u>:     Disputed as the cited testimony does not support that Ms. Oh Amen and

Jeffrey Epstein has a sexual relationship following their "first meeting."

6.     Through her relationship with Epstein, Ms. Oh Amen met Defendant Virginia

Giuffre (hereinafter "Defendant" or "Ms. Giuffre) and encountered Ms. Giuffre on

multiple occasions while spending time at Epstein's property. Am. Compl. ¶10;

Plaintiff000998.

<u>Response</u>:     Undisputed.

7.     During the period of approximately 2000 to 2001, Ms. Oh Amen introduced

multiple other women to Epstein. Plaintiff's Response to Defendant's Request for

Admission, ¶5; Deposition of Rina Oh Amen, 114:9-25; Plaintiff000994; *Broken:*

*Seeking Justice,* Episode: "The Recruiters".

<u>Response</u>:        Undisputed that Ms. Oh Amen introduced other women to Epstein.

Disputed only to the extent that Plaintiff000994 does not support the statement and that there are

no citations to pages or times relating to *Broken: Seeking Justice,* Episode: "The Recruiters".

8.      These introductions included sexual interactions between Ms. Oh Amen, the

        friend she was introducing, and Epstein. Plaintiff000997; Plaintiff001000.

<u>Response</u>:        Disputed to the extent that it suggests that every introduction included

sexual interactions.  Disputed as to Giuffre's characterization of "interactions" between Ms. Oh

Amen, the friend she was introducing, and Epstein with reference to the cited pages.

9.      Ms. Oh Amen also acknowledges having a sexual experience with Ms. Giuffre,

        which included Epstein. Deposition of Rina Oh Amen, 153:10-19;

        Plainitff001000;

<u>Response</u>:        Disputed as to Giuffre's characterization of "experience with Ms. Giuffre,

which included Epstein."

10.     One of the women Ms. Oh Amen introduced to Epstein was Marijke Chartouni.

        Plaintiff's Response to Defendant's Request for Admission, ¶6; *Broken: Seeking*

        *Justice,* Episode: "The Recruiters".

<u>Response</u>:        Undisputed.

11.     In the years leading up to the present litigation, Plaintiff used the Twitter (now

        X.com) platform to post public statements in support of Ms. Giuffre as a victim of

        notorious sex trafficker Jeffrey Epstein:

        a.      See, for example, the post by Ms. Oh Amen on September 13, 2019

                (Plaintiff000970): (Picture omitted).

b.    In a post from August 28, 2019, Ms. Oh Amen tweets support for Ms. Giuffre in response to a post about Prince Andrew (DEFVG000025): (Picture omitted).

c.    In one post from August 29, 2019, Ms. Oh Amen replies to a tweet alleging that a photo of Ms. Giuffre and Prince Andrew was fake DEFVG000024: (Picture omitted).

Response:    Undisputed.

12.    At all times relevant, Plaintiff was the owner and manager of the X/Twitter accounts for the following X/Twitter accounts:

a) @rinaohamen
b) @mozieamen
c) @forkandscissors
d) @twolittlebakers
e) @diningwithoutlaws

Deposition of Rina Oh Amen, 194:21-2, Declaration of Brian Wolfinger ¶ 4, 7.

Response:    Undisputed.

13.    Plaintiff deleted or "deactivated" the X/Twitter account with the handle @mozieamen. Deposition of Rina Oh Amen, 162: 15 - 25: Declaration of Brian Wolfinger ¶ 7.

Response:    Undisputed but incomplete.  The account was deleted on January 28, 2021 after the death of Rina Oh Amen's dog, Mozie Amen.  Decl. Thomas, Ex. B., pages 162-163.

14.    Both before and after the subject tweets, Ms. Oh Amen regularly engaged in public discourse on Twitter on matters involving Epstein and others associated with him. For example: (Pictures a, b, and c omitted).

Response:     Undisputed.

**B. Background of Defendant Virginia Giuffre**

15.     Defendant Virginia L. Giuffre (hereinafter "Defendant" or "Ms. Giuffre") is an

adult female citizen of Colorado, residing in Australia. Am. Compl. ¶2.

Response:     Undisputed.

16.     As a teenager, Ms. Giuffre was recruited and groomed by Ghislane Maxwell to

work for, and ultimately, be sexually abused and trafficked by Jeffrey Epstein.

Deposition of Virginia Giuffre 69:2-25; 87:4-20.

Response:     Disputed in that Giuffre mischaracterizes the testimony.  The cited pages

do not support characterization that Giuffre was sexually abused and trafficked by Jeffrey

Espstein.

17.     From as early as 2007, Ms. Giuffre has been identified as a victim of child sexual

abuse and sex trafficking by Jeffrey Epstein and others in his circle. DEFVG_001290 to

DEFVG_001292.

Response:     Disputed based on DEFVG_001290 to DEFVG_001292 not being

contained in a single Exhibit annexed to the Thomas Declaration.

18.     Ms. Oh Amen acknowledges that Ms. Giuffre was a victim of Epstein. Am.

Compl. ¶20.

Response:     Undisputed.

19.     Ms. Giuffre has been an outspoken advocate for other victims of Epstein and

sexual abuse and human trafficking victims internationally. Deposition of Virginia

Giuffre, 8:7-25; 229:10-15.

Response:       Disputed in that Giuffre mischaracterizes the testimony.  The cited pages

support that Giuffre characterizes herself as a victims advocate, and is the

figurehead of a charity.

**C.  The Broken: *Seeking Justice* Podcast**

20.     The podcast series, *Broken: Seeking Justice*, produced by an investigative

journalist, Tara Palmeri, and published by Sony Entertainment, told the stories of

women who were victimized by Jeffrey Epstein, as well as exposed others in

Epstein's circle of confidantes and enablers. Deposition of Rina Oh Amen,

Exhibit 3.

Response:       Undisputed.  Disputed that Exhibit 3 to Deposition of Rina Oh Amen

supports this statement.

21.     Ms. Giuffre participated in the podcast, going cross-country and talking with

people she remembered from her years as Epstein's victim, sometimes even

asking them to come forward with any knowledge they had in order to support

other victims who were looking for answers. Deposition of Virginia Giuffre,

22:10-17.

Response:       Undisputed.

22.     Another of Epstein's victims, Marijke Chartouni, also participated in the podcast

and asked Ms. Giuffre to help her and other victims find the people that

introduced them to Epstein. "Marijke could vividly remember Rina, but she

couldn't remember Rina's name." Deposition of Virginia Giuffre, 213:15-18;

214:17-25.

Response:        Undisputed.

23.    In discussing Rina Oh Amen for the podcast, Ms. Giuffre shared with Ms. Palmeri and Ms. Chartouni that Ms. Oh Amen had participated in sexually abusing her with Epstein and that Ms. Oh Amen used a razor to cut her body during the sex acts and showed Ms. Palmeri a scar that remains on her leg.  Deposition of Virginia Giuffre, 211:20-22.

Response:        Disputed as testimony in the deposition makes no mention of sexual abuse with Epstein, or that the razor and cut on the leg were a result of sex acts.  Disputed to the extent that there is no mention of the razor and cut on the leg on the actual podcast.  Decl. Thomas, Ex. C.

24.    Ms. Palmeri then contacted Ms. Oh Amen and asked her to participate in an interview for the *Broken* podcast. Plaintiff000048; *Broken: Seeking Justice,* Episode – "The Recruiters."

Response:        Disputed as Plaintiff000048 is not an Exhibit to the Thomas Declaration. If the Defendant is referring to Plaintiff000049, the statement is disputed as Giuffre mischaracterizes the communication to be as a request to participate in an interview for the *Broken* podcast.

25.    Ms. Oh Amen met with Palmeri in the summer of 2020 and provided an interview, during which Ms. Oh Amen admitted that she introduced Marijke and two other women to Epstein but denied engaging in any sexual acts with Ms. Giuffre. *Broken: Seeking Justice,* Episode 11, "The Recruiters" at 37:00-38:00.

Response: Disputed that the cited portion of the podcast mentions Marijke and two other

women.  It is further disputed that the Ms. Oh Amen's statement in the podcast denies engaging

in any sexual acts with Giuffre.  It is further disputed that the interview took place in the summer,

rather, Ms. Palmieri states on the podcast that the interview took place on "a brisk day in

January."  Decl. Thomas, Ex C [00:29:00].

26.     When Ms. Palmeri asked Ms. Oh Amen if she knew about Epstein's abuse of Ms.
        Giuffre, Ms. Oh Amen replied, "You know, 17 is a minor. 17 is not a child. And
        17 is of legal age in New York state…and you're asking me, well, what was she
        doing? I was like, well, she was there to serve a purpose. Like she was groomed to
        do this at an early age." *Broken: Seeking Justice,* Episode 11, "The Recruiters" at
        38:00-39:00.

Response:     Disputed in that it mischaracterizes that the statement is in response to

whether Mr. Oh Amen knew of Epstein's abuse.  It is further disputed that the cited portion of

the podcast contains the statement: "You know, 17 is a minor. 17 is not a child. And 17 is of

legal age in New York state…," although it is undisputed that the statement is made in the

podcast.

27.     Ms. Palmeri asked Ms. Oh Amen about Ms. Giuffre's allegation that Ms. Oh
        Amen had participated in her sexual abuse and cut Ms. Giuffre with a razor,
        which Ms. Oh Amen denied: "I'm just letting you know that what she accused me
        of doing is a complete fabricated lie. And I was nothing but nice to this girl."
        *Broken: Seeking Justice,* Episode 11, "The Recruiters" at 37:30.

Response:     Disputed. There is nothing on the podcast to indicate that Ms. Oh Amen's

             response was in response to anything related to Ms. Giuffre being cut with

a razor. Decl. Thomas, Ex. C.

28.     Later in the interview, Ms. Palmeri reminded Ms. Oh Amen that Marijke would

hear the episode, and asked if she would say anything to Marijke. Ms. Oh Amen

replied, "I would say, I'm sorry. I don't know what was going to happen. If you

had a bad experience, you know, you had a bad experience, but I was not abusive.

I'm not an abusive person." *Broken: Seeking Justice,* Episode 11, "The

Recruiters" at 42:00.

Response:     Undisputed.

    i. Ms. Giuffre's Emotional Response to Hearing Ms. Oh Amen's Interview on
       the *Broken* Podcast Episode

29.     The *Broken: Seeking Justice*, "The Recruiters" episode was released to the public

on October 28, 2020. Upon hearing the interview, Ms. Giuffre was retraumatized,

outraged, and upset:

> *Rina was my abuser. She wasn't being told what to do. She was coming in*
> *on her own accord, and she was asking to be more involved, you know. This*
> *is not the sound of somebody who is trying to escape from abuse. She --*
> *after I heard the podcast, she called Jeffrey "her boyfriend" and that she*
> *was never a victim up until the Victims' Compensation Fund came out, and*
> *then she changed her mind. So it's my opinion that Rina and Vincent are*
> *doing all of this for money and to continue to torture me.*

Deposition of Virginia Giuffre, 229:22-25; 230:2-9.

Response:     Disputed in that the statement by Giuffre summarizes and mischaracterizes

her testimony to state that she was retraumatized, outraged, and upset.  Undisputed that Giuffre

made the statement during her deposition.

30.     It is Ms. Giuffre's belief, memory, and sworn testimony that Ms. Oh Amen

sexually abused her, with and in front of Epstein, in violent, degrading, and painful ways. Deposition of Virginia Giuffre, 109:9-20; 111:2-16; 113:21-25; 114:2-25; 115:2-25; 116:2-25; 117:2-25; 118:2-25; 119:2-25; 133:17-25; 150:20-25; 151:2-21; 152:8-25; 132:2-9. *Broken: Seeking Justice,* Episode: "The Recruiters" at 24:00-25:30; 34:00-35:00.

Response:    Disputed as to the characterization of "belief" and "memory."  Disputed that Ms. Giuffre makes any statement in the podcast that Ms. Oh Amen sexually abused her, with and in front of Epstein, in violent, degrading, and painful ways.  Decl. Thomas, Ex C.

31.    In recounting her experience, Ms. Giuffre recalls Epstein upon first introducing her to Ms. Oh Amen, he told then of his sadism and masochism (S&M) fantasies, and gave them both a book called, "The Story of O", a story about a woman learning to be submissive to a lover in increasingly graphic and violent sexual experiences. Deposition of Virginia Giuffre, 109:9-20; 111:2-16.

Response:    Undisputed that it is Virginia Giuffre's deposition testimony.

32.    Ms. Giuffre recalls about a week after this introduction, Epstein summoned Ms. Giuffre down to his massage room, where he and Ms. Oh Amen all showered together and Epstein asked to watch as Ms. Oh Amen performed oral sex on Ms. Giuffre. Deposition of Virginia Giuffre, 113:21-25; 114:2-25; 115:2-25; 116:2-25; 117:2-25; 118:2-25; 119:2-25.

Response:    Undisputed that it is Virginia Giuffre's testimony.  Disputed as to the truth of the statement.  Decl. Dudelson, Exhibit A.

33.    Ms. Giuffre testified about another sexual encounter with Epstein and Ms. Oh

-10-

Amen, stating,

> *It was so traumatizing. This is why I can remember the first time and I can remember the last time. Everything she did to me was torture. It was painful.  She was a sadist. And she got off – she really seriously sexually was engrossed in what she was doing to me, and she enjoyed it. Even Jeffrey agreed. And that's a lot for a pedophile to say.*

Deposition of Virginia Giuffre, 133:17-25.

<u>Response</u>:    Undisputed that it is Virginia Giuffre's deposition testimony.  Disputed as

to the truth of the statement.  Decl. Dudelson, Exhibit "A."

34.    In recalling her experiences with Ms. Oh Amen, Ms. Giuffre further testified:

> A. *...I do have benchmark memories that will help with some of the questions that you have. But when it comes to Rina – like in other depositions I can tell you one, two, three, four, five. With Rina it was so degrading, so humiliating, painful. It was just awful and I – I see everything that she's done to me in my mind. I can't tell you what day it was. I can't even tell you what year it was. Well, I can tell you what year it was. But I can't – like I can't give you a chronological order, which I know you really want. And I wish I could give it to you, I just can't.*

> ....

> **Q. *Do you know when it first started?***

> A. *It kind of escalated -- yeah. It went from, you know, like talking dirty and spanking me and using like a leather chokehold on me and stuff like that, and then as time progressed -- and I'm not talking about much time; I'm talking days or weeks -- she started to get much more physical. She would, like, have me get on my knees and hands and make me crawl, and if I didn't crawl fast enough, she'd kick me to the floor, put her shoe on my face, her stiletto, not the heel but the toe part, and like smoosh my face into the carpet. She would call me things like "worthless" and "disgusting." Yeah, she -- Yeah. That was some other stuff that happened.*

> **Q. *Okay. So you had men- -- you had discussed the first sexual encounter in the massage room in what may have been February of 2001. Did these acts escalate on the very next time that you saw Rina?***

A *Yeah. It just got worse and worse.*

**Q. *Okay. So after the -- the first sexual encounter, how much time went by until you had the second sexual encounter with Rina?***

A. *Jeffrey was really into it, so it was happening like very close to each other.*

…

**Q. *Okay. So after the -- during the second sexual encounter, what happened between you and Rina?***

A. *I want nothing more to give you chronological order because I -- I want to win this case because this person took something from me that I'll never get back. And if I could give you chronological order, I would. I just -- it is a blur of memories of what she did to me, the humiliation, the spits, the urination, the razors. And then the fucking huge scar she left on my leg. And that was the last time. I told Jeffrey I couldn't do it anymore. And this was all at her behest. Like Jeffrey wasn't telling her, I want you to do this to Virginia, I want you to do that to Virginia. He gave Rina complete control over exactly what she wanted to do to me. So I became a toy and not a human. And she treated me worse than -- I would never wish this on any other human being, ever. It was -- no other word for it but torture.*

Deposition of Virginia Giuffre, 133:17-25; 150:20-25; 151:2-21; 152:8-25; 132:2-9.

Response:    Undisputed that it is Virginia Giuffre's deposition testimony.  Disputed as to the truth of the statements.  Decl. Thomas, Exhibit B; p. 81, lines 14-18; p. 141, lines 9-13; p. 141, lines 19-25; p. 142, lines 2-3; Decl. Dudelson, Ex A.

35.    Ms. Giuffre testified that there were also instances when Ms. Oh Amen used razor blades to cut her during the sexual encounters. Deposition of Virginia Giuffre, 157:24-25; 158:2-25; 159:2-16.

Response:    Undisputed that it is Virginia Giuffre's testimony.  Disputed as to the truth

of the statements.  Decl. Thomas, Exhibit B; p. 81, lines 14-18; p. 141, lines 9-13; p. 141, lines 19-25; p. 142, lines 2-3; Decl. Dudelson, Ex A.

36.    Ms. Giuffre became depressed "when Rina demoralized me, and Jeffrey let all that happen." 145:18-24.

Response: There is no Exhibit cited.  Undisputed that it is Virginia Giuffre's testimony. Disputed as to the truth of the statements.  Decl. Thomas, Exhibit B; p. 81, lines 14-18; p. 141, lines 9-13; p. 141, lines 19-25; p. 142, lines 2-3; Decl. Dudelson, Ex A.

ii.    Ms. Giuffre Expressed Her Outrage and Anger on Twitter Following the Publication of Ms. Oh Amen's Podcast Interview

37.    On October 28, 2020, Ms. Palmeri posted about the release of the podcast episode that featured Ms. Oh Amen's interview: (Picture omitted).

Response:    Undisputed.

38.    The same day, Ms. Giuffre responded on X/Twitter to Plaintiff's comments on the Podcast episode that was released. Deposition of Virginia Giuffre, 225: 7-16.

Response:    Undisputed.

39.    Ms. Giuffre testified as follows:

> A I believe it was the same day. I believe it was the same day. I just remember listening to it and it made me so mad, like just hearing her voice and, like, saying, you know, like, "I wasn't a victim, I was Jeffrey's girlfriend, and he was my sugar daddy," and then she, like, called me a liar and -- you know. It just -- it was infuriating.
>
> Deposition of Virginia Giuffre, 225: 9 -16.

Response:    Undisputed that it is Virginia Giuffre's deposition testimony.

40.    Ms. Giuffre's expressions posted on X/Twitter in the wake of the podcast form

the basis of Plaintiff's first seven statements alleging to have caused Plaintiff

injuries. Am. Comp. ¶16 (a – g).

Response:    Disputed in that Giuffre mischaracterizes her tweets as "expressions."

41.    Ms. Giuffre does not dispute that she authored the statements on X/Twitter in ¶ 16

(a – g) of Plaintiff's Amended Complaint.

Response:    Undisputed.

42.    However, the X/Twitter postings included in Plaintiff's Amended Complaint are

incomplete, misrepresent Ms. Giuffre's statements, and fail to include the crucial context

of her statements. Am. Comp. ¶ 16 (a – g).

Response: Disputed. The statement is a legal argument and conclusion.

iii.    The Airing of the *Broken* Podcast Episode Prompted Broader Twitter
Engagement, Yet Plaintiff Only Targeted Ms. Giuffre with Costly and
Emotionally Burdensome Litigation

43.    In the immediate aftermath of the publication of the *Broken* podcast episode

featuring Ms. Oh Amen, numerous individuals took to X/Twitter to react. In

particular, one unidentified user referred to Ms. Oh Amen as a "PEDO

ENABLER FROM HELL" and a "MONSTER WHO BROUGHT HIM FRESH

MEAT", among dozens of other acrimonious posts about Plaintiff. Exhibit ___:

Plaintiff000968-Plaintiff000993.

Response:    Undisputed.

44.    Ms. Palmeri, the podcast host, authored multiple posts and re-tweeted media

write-ups about her podcast, which call Plaintiff a 'recruiter'. Plaintiff000031, Plaintiff000032.

Response: Undisputed.

45.    In all her nine (9) posts, Ms. Giuffre is responding or reacting to other public

comments about Plaintiff, the podcast, or about surviving sexual abuse.

Plaintiff000004-Plaintiff000008; Plaintiff000019.

Response: Undisputed, although Plaintiff000019 is not attached to the Thomas

Declaration.

46.    Ms. Giuffre is the only defendant in Ms. Oh Amen's defamation suit. Am.

Compl., generally.

Response:    Undisputed.

47.    Plaintiff wanted to sue Politico, Sony, and Ms. Palmeri. Deposition of Rina Oh

Amen, 263:9-25.

Response:    Undisputed.

48.    Plaintiff communicated with a celebrity ex-girlfriend of Prince Andrew about

wanting to sue Politico and Ms. Palmeri, and thought "about approaching Gloria

Allred but she may not way to rep a case of 2 Epstein victims fighting: (Picture

omitted).

Response:    Undisputed.

49.    However, Ms. Oh Amen "was advised not to sue the press" because she would not

be able to win a lawsuit against the media, but "most attorneys will not take a case

unless there's money involved". Deposition of Rina Oh Amen, 263:9-25.

Response:    Undisputed.

50.    Ms. Oh Amen thus turned her litigious attention to Ms. Giuffre: (Picture omitted).

Response:    Disputed as to the characterization that plaintiff "thus turned her litigious

attention to Ms. Giuffre."   Ms. Giuffre was always the subject of the plaintiff's potential lawsuit.

51.    Meanwhile, Ms. Oh Amen continued to post to Instagram and Twitter about Ms.

Giuffre: (Picture's a through i omitted).

Response:    Disputed that the pictures supports that Ms. Oh Amen continued to post to

Instagram and Twitter about Ms. Giuffre.

52.    Ms. Giuffre, however, did not post any further tweets or make public comments

about Ms. Oh Amen after blocking her and Mr. Amen. Deposition of Virginia

Giuffre, 231:8-22.

Response:    Undisputed that it is the deposition testimony of Virginia Giuffre.

## II.    COUNT I OF PLAINTIFF'S AMENDED COMPLAINT: DEFAMATION

### A. Plaintiff's Amended Complaint Misrepresents Defendant's Twitter Posts

53.    In her paragraph 16 of her Amended Complaint, Ms. Oh Amen asserts, "The

foregoing Tweets, amongst others, with time stamps when Defendant published

them, contained the following statements of fact that defendant knew or should

have known to be false:

a. Virginia Giuffre @VRSVirginia "Ladies & Gentlemen meet Rina who now is
pleading innocence since there's a $VCF$ she has decided to come out as a victim,
when on the record she was #Epstein's GF"& was rewarded with $$ in trade for
victims- real victims. May karma be upheld and justice be done." @FBI @nytimes
Butterfly https://twitter.com/MoonProfessor/status/1321613698637598720 9:24 PM
Oct 28, 2020 Twitter for iPhone
https://twitter.com/VRSVirginia/status/1321623957183684610

b. Virginia Giuffre @VRSVirginia Oct 28, 2020 "Rina- if you read this I hope
you live in shame for the rest of your life. You don't intimidate me any longer & the
physical & mental scares you left me with should be enough to put your a** in jail,
my line in the sand is drawn & your guilty! #LockHerUp" 7:03 PM Oct 28, 2020
Twitter for iPhone https://twitter.com/VRSVirginia/status/1321588495467491328

-16-

c. Virginia Giuffre @VRSVirginia Oct 28, 2020 "Jeffrey Epstein 'recruiter' admits bringing girls but denies abuse" Pathetic excuses from a deranged woman who was NO victim & should be sitting in jail next to #GhislaineMaxwell Rina- woman to woman, now that I am a woman, U disgust me. @DailyMail" 7:21 PM · Oct 28, 2020·Twitter for iPhone https://twitter.com/VRSVirginia/status/1321593015622758405

d. Virginia Giuffre @VRSVirginia "What really makes sense is that Rina, a co-conspirator for #Epstein & #GhislaineMaxwell would go on to marry a fellow co-conspirator involved with #MichaelJackson . 2 sick peas in a pod, you can't even imagine how beyond sickened I feel right now. @pinkPeptobismol @teresajhelm" 7:59 PM · Oct 28, 2020·Twitter for iPhone https://twitter.com/VRSVirginia/status/1321602627554045953

e. Virginia Giuffre @VRSVirginia "This picture that Rina painted with the sliced leg bleeding is exactly what she used to do to me, I have a 6 inch scar on my left leg from her cutting me. I can let a lot of s**t go, but this I will never forget. #PureEvil #LockHerUp" @FBI @thedailybeast @nytimes #Justice" Drop of bloodFolded handsButterfly 8:09 PM · Oct 28, 2020 Twitter for iPhone https://twitter.com/VRSVirginia/status/1321605000628371456

f. Virginia Giuffre @VRSVirginia "Still being robbed of justice- just ask all the men & women I've named in my court docs why they still have their freedom to carry on with their untainted lives why I sit here crying my eyes out over rerun & rerun of the abusers still affecting my life." @FBI @SDNYnews #unfair Butterfly 8:34 PM · Oct 28, 2020·Twitter for iPhone https://twitter.com/VRSVirginia/status/1321611245712150533

g. Virginia Giuffre @VRSVirginia "Design from 2000-2002 and classically trained in sculpture," Uh Rina- those were the years in which you procured & partook in the abuse of minors with #Epstein Did he pay for that too? Your no survivor, your an oxygen thief. A virus on humanity." #Karma #Justice https://twitter.com/MoonProfessor/status/1321611635258134528 9:13 PM Oct 28, 2020 Twitter

Response:      Undisputed.

54.    By pleading Ms. Giuffre's tweets in such a manner, Plaintiff fails to capture the

actual context and references Ms. Giuffre makes in her statements.

Response:      Disputed.  This statement is a legal argument and conclusion

55.    Ms. Giuffre's tweet, referenced in paragraph 16(a) appears, in discovery, as

follows: (Picture omitted).

Response:       Undisputed.

56.    Because Plaintiff failed to appropriately capture and include the tweet at the time

it was made, and the tweet that Ms. Giuffre was referencing has been deleted,

there is no way to identify what Ms. Giuffre was referencing when she posted this

statement on October 28, 2020.

Response:       Disputed as to the statement that it is the Plaintiff's fault that there is no

way to identify what Ms. Giuffre was referencing.

57.    Regarding the above tweet, Ms. Oh Amen testified that it was true that she was

pleading innocence, that she decided to apply to the Victim's Compensation fund

as a victim and acknowledged she has referred to Epstein as her boyfriend.

Deposition of Rina Oh Amen, 201:2-23; 202:4-24.

Response:       Undisputed.

58.    Ms. Giuffre's tweet, referenced in paragraph 16(b) appears, in discovery, as

follows: (Picture omitted).

Response:       Undisputed.

59.    In this allegedly defamatory post, Ms. Giuffre links to the *Broken* podcast episode,

on which Ms. Oh Amen willingly participated, and shares her reaction.

Plaintiff000006.

Response:       Undisputed.

60.    In this tweet, which is a direct response to the release of the podcast episode, Ms.

Giuffre is referencing the mental and physical scars left by Ms. Oh Amen's sexual

and physical abuse described previously. Deposition of Virginia Giuffre, 218:10-
25; 219:2.

Response:    Undisputed. However, Disputed as to the truth of the sexual and physical

abuse. Decl. Dudelson, Exhibit A.

61.    Ms. Giuffre's tweet, referenced in paragraph 16(c) appears, in discovery, as

follows: (Picture omitted).

Response:    Undisputed.

62.    In this true copy of the tweet, Ms. Giuffre quotes a Daily Mail headline and reacts

to the reporting on Ms. Oh Amen's interview on the *Broken* podcast, in which Ms.

Oh Amen denied abusing Ms. Giuffre.

Response:    Undisputed.

63.    Ms. Oh Amen testified that Ms. Giuffre's post that she should be in jail is Ms.

Giuffre's opinion. Deposition of Rina Oh Amen, 207:2-4.

Response:    Undisputed.

64.    Ms. Oh Amen also acknowledged that Ms. Giuffre was quoting the Daily News

article when using the word 'recruiter' in this tweet, and that she chose not to sue

the Daily News or other media outlets because, "I didn't stand a chance against

them." Deposition of Rina Oh Amen, 208:2-13.

Response:    Undisputed.

65.    Ms. Giuffre's tweet, referenced in paragraph 16(d) appears, in discovery, as

follows: (Picture omitted).

Response:    Undisputed.

66.     In this tweet, Ms. Giuffre is reacting to a post from a third-party Twitter/X user, who commented on Vincent Amen ("Mr. Amen"), Ms. Oh Amen's husband.

<u>Response</u>:     Undisputed.

67.     Mr. Amen is a prolific Twitter user and admitted that in the same time frame as Ms. Giuffre's alleged defamatory tweets (October 28, 2020 through December 31, 2020), Mr. Amen tweeted at or about Ms. Giuffre approximately 18 times. AMEN0001-0045;

Deposition of Vincent Amen, 145:12-24.

<u>Response</u>:     Undisputed.

68.     Ms. Giuffre then blocked Mr. Amen on Twitter in 2020, "because they just kept, like fighting with me, sending me horrible messages. And I was like, you know what? I don't need this, and I blocked both of them. Other people…would, like, take screenshots and be like look what she's saying about you now." Deposition of Virginia Giuffre, 231:4-16.

<u>Response</u>:     Undisputed that it is the deposition testimony of Virginia Giuffre.

69.     Even after Ms. Giuffre blocked Mr. Amen on Twitter in 2020, Mr. Amen continued to post extensively about Ms. Giuffre. Between 2021 and 2023 alone, Mr. Amen posted 165 times about Ms. Giuffre or his wife's litigation. Deposition of Vincent Amen, 206:16:25; DEVG0001347-1508.

<u>Response</u>:     Undisputed.

70.     Mr. Amen also tweeted a photo of the Federal subpoena issued for his deposition testimony in this matter, which he had folded into an origami frog. Deposition of

Vincent Amen, 261:6-13; Exhibit Amen 11-DEVG001502.

Response:    Undisputed and completely irrelevant.

71.    At deposition, after several evasive responses, Mr. Amen admitted that he did, in

fact, bring the origami subpoena to his deposition:

Response:    Undisputed and completely irrelevant.

72.    Ms. Giuffre's actual tweet, referenced in paragraph 16(e) appears, in discovery, as

follows: (Picture omitted).

Response:    Undisputed.  However, the image is not contained in the Exhibits attached

to the Thomas Declaration.  See Decl. Dudelson, Ex E, Plaintiff000019.

73.    The alleged defamatory tweet in paragraph 16(e) of Plaintiff's Amended

Complaint, when viewed in context, shows Ms. Giuffre reacting to a tweet by an

unknown user, on the same day the *Broken* podcast released, which depicts a

painting by Ms. Oh Amen: (Picture omitted)

Response:    Undisputed, but Disputed as to Giuffre's mischaracterization of Ms.

Giuffre "reacting to a tweet."

74.    When asked about her paintings, Ms. Oh Amen testified, "It's an artistic

expression and it's my opinion. It's not a fact; it's an opinion," and acknowledged

that it is her hope that people interpret her art in different ways. Deposition of

Rina Oh Amen, 218:16-25, 219:2-

Response:    Undisputed.

75.    The typed out X/Twitter post by Ms. Oh Amen in paragraph 16(e) of her

Complaint also fails to capture her husband's reply to Ms. Giuffre's tweet:

(Picture omitted).

Response:        Undisputed and irrelevant.

76.    Ms. Giuffre's actual tweet, referenced in paragraph 16(f) of Plaintiff's Amended

Complaint in support Plaintiff's defamation claim appears, in discovery, as

follows: (Picture omitted).

Response:        Undisputed.

77.    Ms. Oh Amen first questioned if this tweet was even about her, and then assumed

that this tweet was about her because it was posted on the same day as the podcast

release. Deposition of Rina Oh Amen, 220:21-25, 221:20.

Response:        Undisputed.

78.    Ms. Giuffre's actual tweet, referenced in paragraph 16(g) of Plaintiff's Amended

Complaint in support Plaintiff's defamation claim appears, in discovery, as

follows: (Omitted).

Response:        Undisputed.

79.    This tweet was also in response to an unidentified post from another user on the

same day as the podcast release. The underlying post was not captured by Plaintiff

before the user deleted their post, although it would have provided additional

context to Ms. Giuffre's statement.

Response:        Undisputed.

80.    As to this post, Ms. Giuffre testified, "Well, I was a minor when she abused me.

And I know for a fact that she recruited Marijke, so I saw her as – as a recruiter, a

coconspirator.  I believe she belongs in jail." Deposition of Virginia Giuffre,

232:19:25.

<u>Response</u>:    Disputed.  Decl. Dudelson, Exhibit A.  Decl. Thomas, Exhibit E, Response

14.

81.    Plaintiff's husband was again quick to engage in the Twitter feud:

<u>Response</u>:    Disputed as to the characterization of a "Twitter feud."  Undisputed that

Plaintiff's husband responded to the Tweet.

82.    As to this response, Mr. Amen testified, "Basically, she's blaming Rina for issues

with Epstein that she was abusing minors, and she wasn't. So it's not Rina's fault

that—oh I just mean, that's what it said. You met Rina when you were the legal of

consent, 17."  Deposition of Vincent Amen, 147:7-13.

<u>Response</u>:    Undisputed.

83.    Plaintiff also bases her defamation claim on a tweet by Ms. Giuffre from

December 31, 2020. Am. Compl. ¶17(a).

<u>Response</u>:    Undisputed.

84.    Plaintiff also bases her defamation claim on a tweet that Ms. Giuffre did not

herself author, but reposted. Am. Compl. ¶17(b): (Picture omitted).

<u>Response</u>:    Undisputed.

85.    Plaintiff also bases her defamation claim on a tweet that Ms. Giuffre did not

herself author, but reposted. Am. Compl. ¶17(b): (Picture omitted).

<u>Response</u>:    Undisputed.

86.    This other X/Twitter user, @Momzilla, was replying to a tweet from Mr. Amen,

who was engaging in acrimonious Twitter exchanges with Ms. Giuffre's

supporters. Deposition of Vincent Amen, 193:6-13.

Response:        Undisputed.

87.    Regarding this tweet, Ms. Giuffre testified, "I had, like a group of followers

that…I would retweet because I felt like they were sane people who actually just

wanted to help and vocalize about sexual abuse and sex trafficking." Deposition

of Virginia Giuffre, 27:4-8.

Response:        Undisputed.

88.    Plaintiff also asserts, "Defendant has maliciously reiterated and republished these

defamations and slanders in prior and subsequent tweets and interviews on

podcasts, TV and for magazines, as well as in her memoirs entitled Billionaire's

Playboy Club." Am. Compl. ¶21.

Response:        Undisputed.

89.    Plaintiff has provided no evidence of "prior and subsequent tweets" other than

those included in her Amended Complaint.

Response:        Undisputed.

90.    Plaintiff has provided no evidence or support for the allegation that Ms. Giuffre

defamed her in "interviews on podcasts, TV and for magazines."

Response:        Undisputed.

91.    Plaintiff's reference to "memoirs entitled Billionaire's Playboy Club" is a

reference to Ms. Giuffre's private memoirs that were only made public through

the unsealing of the evidence in Ms. Giuffre's litigation against Alan Dershowitz,

which was covered in press articles. Deposition of Rina Oh Amen, 168:23-25;

169-171.

<u>Response</u>:        Undisputed.

### III.    THE RECORD EVIDENCE DOES NOT SUPPORT PLAINTIFF'S CLAIM FOR DAMAGES

#### A. The Record Does Not Support Plaintiff's Claim for Emotional Damages

92.    In her Amended Complaint, Ms. Oh Amen asserts:

> [C]ompensatory damages related to both economic and non-economic damages, including, but not limited to, the following: loss of earnings and income, loss of business and contracts, loss of business and economic opportunities, damages to Plaintiff's name, reputation, and character, and business and standing in the community, as well as for pain and suffering, humiliation, shame, disgrace, mental anguish, loss of enjoyment of life, and anxiety and extreme emotion distress, amongst other things.

Am. Compl. ¶30.

<u>Response</u>:        Undisputed.

93.    Ms. Oh Amen has a long history of mental health treatment which pre-dates this underlying matter, for conditions such as anxiety, generalized anxiety disorder, and anorexia nervosa. Deposition of Rina Oh Amen, 126:11-25; 127:2-25; 129:2-25; 130:2-10; 131:10-23; Plaintiff001004; Expert Report of Dr. Bassman and Dr. Neinaber.

<u>Response</u>:        Undisputed.

94.    Ms. Oh Ahmen testified that her previous conditions—anxiety, generalized anxiety, and anorexia nervosa—were aggravated by reading stories of minors abused by Epstein, the *Broken: Seeking Justice* podcast, and Politico articles. Deposition of Rina Oh Amen, 133:2-13.

<u>Response</u>:        Undisputed.

95.    Ms. Oh Amen was also placed into inpatient psychiatric care in April 2019 for

symptoms related to bipolar disorder. Deposition of Vincent Amen, 232:23-25;

233:2-25; Expert Report of Dr. Bassman and Dr. Neinaber.

<u>Response</u>:        Undisputed.

96.    In her deposition, Ms. Oh Amen offered that she is "on a cocktail of psychiatric

medication." When asked about this statement, Ms. Oh Amen testified:

> *A. I was also experiencing, you know—I'm on a cocktail of psychiatric medication. I have a lot of things that are—that have happened to me since all these experiences commenced with Jeffrey Epstein. And sometimes, you know, I'm in and out of consciousness, okay. I want you to understand that.*
>
> **Q. And when you say you're – did you say you are on a cocktail of psychiatric medication or were on a cocktail of psychiatric medication?**
>
> A. *No. I am on a cocktail of psychiatric medication, and it has – my condition has aggravated since the podcast was published and the secondary article that was written for Politico magazine was published. I started getting physical panic attacks.*
>
> Deposition of Oh Amen, 119:3-20.

<u>Response</u>:        Undisputed.

97.    Ms. Oh Amen further testified, as to her psychiatric treatment:

> A. *...when there are things such as depositions, court dates, defamatory articles that are written about me, I experience extreme amounts of anxiety, and this is when I take more medicine. That's as needed.*
>
> **Q. So this deposition and the court dates that you're talking about, this has caused you extreme amounts of anxiety?**
>
> A. *The accusations, the court dates, the publications that are*

*defamatory, and, you know, reading about my traumatic experiences, my sexual abuse, yes, all of those things increases my anxiety and gives me -- you know, it destabilizes my mental health.*

**Q. And the publications that you're talking about, one of those is the podcast you mentioned earlier, and you said that your "condition has aggravated since the podcast"; is that right?**

A. *That's correct. However -- actually, no. My condition began when I first started reading the stories about the minors being sexually abused by Jeffrey Epstein in Florida. That triggered my memories to return of what he did to me, and I was hospitalized as a result of it. And this is the first time I've ever been hospitalized.*

Deposition of Oh Amen, 123:20-25; 124:2-23.

<u>Response</u>:       Undisputed.

98.    Pursuant to this litigation, Ms. Oh Amen was evaluated by psychology experts

retained by Defendant, Dr. Rachel Nienaber and Dr. Stuart Bassman.

<u>Response</u>:       Undisputed.

99.    In their report, Dr. Nienaber and Dr. Bassman opine, with a reasonable degree of

psychological certainty, Ms. Oh Amen's assertion that she has been emotionally

damaged as a result of Ms. Giuffre's tweets is **not** substantiated. Expert Report of

Dr. Bassman and Dr. Nienaber, at p. 3, emphasis in original.

<u>Response</u>:       Undisputed that the statement is in the report.  Disputed as to the findings.

Decl. Dr. Clark, plaintiff's treating psychologist.

100.    Dr. Nienaber and Dr. Bassman further opine:

Although Ms. Oh Amen recounts being portrayed in a negative light and subsequently perturbed as a result of the information being disseminated on social media, this does not fulfill the specificity for Criterion A. It is our expert opinion that because of the pre-existing traumas that Ms. Oh Amen had prior to the tweets, precipitated her reported emotional disarray.

-27-

Ms. Oh Amen does have lasting emotional and mental injuries from the past abuse she suffered. Proximate to the childhood sexual abuse was the development of anxiety, mood disorder, and an eating disorder. The longterm implications include difficulties in her personality, loss of identity, loss of safety, lack of trust in others, severe mistrust, apprehension, fearfulness about the world, and self-destructive behaviors. She reported self-blame, flashbacks, avoidance, feeling cut off from others, hypervigilance, and difficulty concentrating. In conclusions, the tweets posted by the defendant did not cause her PTSD.

Expert Report of Dr. Bassman and Dr. Nienaber, at p. 3.

Response:    Undisputed that the statement is in the report.  Disputed as to the findings.

Decl. Dr. Clark, plaintiff's treating psychologist.

101.    To formulate this opinion, Ms. Oh Amen was assessed through two separate zoom evaluations for approximately three hours, and Dr. Nienaber and Dr. Bassman reviewed Ms. Oh Amen's deposition, and medical records produced in discovery from St. Joseph's Hospital, New Bridge Hospital, William Clark, PhD, and Clearview Pyramid Acquisition Company. The experts also utilized five different clinical assessments in formulating their opinion. Expert Report of Dr. Bassman and Dr. Nienaber, at p. 1.

Response:    Undisputed.

102.    As Ms. Oh Amen testified in her deposition and during her evaluation with the experts, she has "struggled with feeling victimized and being taken advantage of for most of her life." Expert Report of Dr. Bassman and Dr. Nienaber, at p. 12.

Response:    Undisputed.

103.    Ms. Oh Amen reported experiencing multiple instances of sexual abuse from

childhood through adulthood. According to the experts, "She developed

dysfunctional personality traits, such as borderline, histrionic, and narcissistic

treated that have trouble her relationships and outlook on life." Expert Report of

Dr. Bassman and Dr. Nienaber, at p. 12.

<u>Response</u>:    Undisputed.

104.    Plaintiff did not meet clinical criteria for depression or anxiety, but did meet

criteria for a PTSD diagnosis, "however, **her PTSD was not caused by the**

**defendant's tweets but were proximate to the history of sexual abuse and**

**sexual assault she recounted prior to these social media posts.**" Expert Report

of Dr. Bassman and Dr. Nienaber, at p. 12.

<u>Response</u>:    Undisputed that the statement is in the report.  Disputed as to the findings.

Decl. Dr. Clark, plaintiff's treating psychologist.

105.    Plaintiff did not produce rebuttal expert reports.

<u>Response</u>:    Undisputed.  Plaintiff has a treating psychologist.

106.    Plaintiff did not depose Dr. Nienaber or Dr. Bassman.

<u>Response</u>:    Undisputed.

107.    Plaintiff did not offer any expert testimony or reports to rebut Dr. Nienaber and

Dr. Bassman's report.

<u>Response</u>:    Disputed. Defendant was provided with releases and reports from the

Plaintiff's treating physicians.  <u>See</u> <u>also</u> Decl. Dr. Clark.

108.    Plaintiff did not depose either expert.

<u>Response</u>:    Undisputed as to Dr. Nienaber or Dr. Bassman, as previously stated above.

**B. The Record Does Not Support Plaintiff's Claim for Economic Damages, Lost Wages, or Future Earnings**

109.    Plaintiff is also asserting damages for "loss of earnings and income, loss of business and contracts, loss of business and economic opportunities, damages to Plaintiff's name, reputation, and character, and business and standing in the community" Am. Compl. ¶30.

Response:        Undisputed.

110.    When Ms. Oh Amen was asked under oath what earnings or income she was claiming were lost due to Ms. Giuffre's tweets, Ms. Oh Amen testified, "I lost the opportunity to create a monument that I was being prepared for." Deposition of Rina Oh Amen, 230:7-10.

Response:        Undisputed.

111.    Ms. Oh Amen also claimed that a former art mentor, Greg Wyatt, stopped speaking to her and canceled the program for creating monuments, attributing these things to Ms. Giuffre's tweets. Deposition of Rina Oh Amen, 231:13-25.

Response:        Undisputed.

112.    Ms. Oh Amen estimated that she lost out on $700,000 of potential earnings, based on speaking to "many sculptors, including two sculptors who made the Towers of Light that light up every year at the memoriam of the World Trade Center attacks." Deposition of Rina Oh Amen, 234:8-12.

Response:        Undisputed.

113.    Ms. Oh Amen claims she also lost a contract for an artist residency program with

Mr. Wyatt, but also testified that it was a grant opportunity and could not provide the value of this alleged lost opportunity. Deposition of Rina Oh Amen, 235:5-19.

<u>Response:</u>        Undisputed.

114.    According to Ms. Oh Amen, "My photographs were circulated online standing next to mostly Greg Wyatt's work. So he disassociated from me altogether as a result of it. That's what I am assuming. That's my opinion." Deposition of Rina Oh Amen, 237:19:25; 238:1-10.

<u>Response:</u>        Undisputed.

115.    Ms. Oh Amen failed to produce any documentary evidence of these claims, and Mr. Wyatt's testimony on October 4, 2023, disproves that she suffered pecuniary or reputational loss due to Ms. Giuffre's October 2020 tweets. Deposition of Greg Wyatt.

<u>Response:</u>        Undisputed.

116.    Mr. Wyatt testified that he was not a mentor for Ms. Oh Amen, he does not and has never participated in social media, and he never, until his deposition, saw any of Ms. Giuffre's tweets about Ms. Oh Amen. Deposition of Greg Wyatt, 43:2-7, 49:21-24, 50:13-23, 51:9-14.

<u>Response:</u>        Undisputed.

117.    Before being asked to give testimony in this case, he had never heard of Virginia Giuffre and had never heard about any alleged involvement between Ms. Oh Amen and Jeffrey Epstein. Deposition of Greg Wyatt, 51:15-25; 52:2.

<u>Response:</u>        Undisputed.

118. Mr. Wyatt was asked, "At any time, did you intentionally not engage or not work with Ms Rina Oh as a result of Twitter comments made by Virginia Guiffre?" Mr. Wyatt replied, "No. As I said, I don't know how to Twitter or tweet. The answer is no." Deposition of Greg Wyatt, 56:17-22.

Response:    Undisputed.

119. Despite Ms. Oh Amen's testimony connecting her lost contracts and opportunities for earning to her relationship with Mr. Wyatt, she never reached out to him anytime after August of 2020, which pre-dates Ms. Giuffre's tweets by two months. Deposition of Greg Wyatt, 56:17-22.

Response:    Undisputed.

120. Defendant hired Tobias Czudej, AAA, an art advisor and appraiser, who is compliant with the Universal Standards of Professional Appraisal Practice (USPAP) and a certified member of the Appraiser's Association of America. Expert Report of Tobais Cruzaj, at p. 2.

Response:    Undisputed.

121. Upon review of Ms. Oh Amen's Amended Complaint, deposition, tax returns, and all documentary evidence offered by Plaintiff, Mr. Czudej opined, in relevant part:

      a. Rina Oh Amen has no formal fine art education;

      b. Rina Oh Amen is a dedicated hobbyist and not a professional artist;

      c. There is no tangible market for Rina Oh Amen's artwork;

      d. Rina Oh Amen's understanding of production and her formula for valuing commission opportunities is incorrect;

e. The opportunities lost, as stated by Rina Oh Amen, if realized, would

not have directly led to earnings or income;

f. The claim of loss of earnings or income as it relates to Plaintiff's art is

unsupported.

Expert Report of Tobais Cruzaj, at p. 6-10.

<u>Response</u>:    Undisputed.

122.    Plaintiff did not produce an expert report to rebut Mr. Czudej's opinion.

<u>Response</u>:    Undisputed.

123.    Plaintiff did not depose Mr. Czudej.

<u>Response</u>:    Undisputed.

COUNTER-STATEMENT OF FACTS:

1.    *Broken: Seeking Justice,* Episode 11, "The Recruiters," is in the form of a

narrative by Tara Palmieri, which contains inserted parts of interviews with plaintiff, defendant,

and Marijke Chartouni.  Decl. Thomas, Ex C.

2.    Plaintiff Rina Oh Amen was interviewed separately from defendant Virginia

Giuffre and Marijke Chartouni.  Decl. Thomas, Ex C [00:29:00-00:30:00].

3.    *Broken: Seeking Justice,* Episode 11, "The Recruiters," does not contain any

interview or statement regarding plaintiff Rina Oh Amen cutting defendant Virginia Giuffre's leg

or causing a scar to Virginia Giuffre's body.  Decl. Thomas, Ex C.

4.    Virginia Giuffre started "cutting" herself when she was a "little girl."  Decl.

Thomas, Ex. F, p. 160.

5.    Virginia Giuffre still has scars from where she cut herself.  Decl. Thomas, Ex. F,

-33-

pp. 164.

6.      Virginia Giuffre cut her wrist between the years of 2000 and 2003 in an attempt to

commit suicide:

> I did have one episode, and it was a suicide attempt.  My husband didn't know
> what to do.  So he went and got my mother-in-law, and she just let me cry in her
> bog boobies for, like, a long time.  And then she took me to the bathroom and
> gave me a bath and cleaned my wounds.  It's the first time I actually had someone
> actually care for me like that.

Decl. Thomas, Ex. F, pp. 163-164.

7.      Virginia Giuffre claims that Rina Oh Amen cut her leg with a fold up

barbershop razor blade.  Decl. Thomas, Ex. F, pp. 155-159.

8.      Virginia Giuffre testified that:

> But [Rina Oh Amen] dropped to her knees, and she told me to open my legs.  And
> then she sliced a good six inches into my leg.  And it was pretty deep; like it really
> needed stitches.  And the blood was just pouring. . .

Decl. Thomas, Ex. F, pp. 166.

9.      Virginia Giuffre testified that cut caused by Rina Oh Amen was six inches across.

Decl. Thomas, Ex. F, pp. 167.

10.      Virginia Giuffre testified that cut caused by Rina Oh Amen was deep enough to

"see meat."   Decl. Thomas, Ex. F, pp. 167.

11.      Virginia Giuffre testified that the cut caused by Rina Oh Amen was "[m]aybe 2

centimeters, maybe 3 centimeters" deep.  Decl. Thomas, Ex. F, pp. 167.

12.      Virginia Giuffre testified that the wound to her leg, which was caused by Rina Oh

Amen, was first treated with iodine, gauze and tape.  Decl. Thomas, Ex. F, pp. 172-174.

13.      Virginia Giuffre changed the bandage every day and treated the wound with

Neosporin.  Decl. Thomas, Ex. F, p. 174, lines 14-18.

14.      Virginia Giuffre testified that the cut caused by Rina Oh Amen bled for "a good

three or fours days."  Decl. Thomas, Ex. F, pp. 177.

15.      Virginia Giuffre testified that she never sought medical attention for the cut to her

leg that was caused by Rina Oh Amen.  Decl. Thomas, Ex. F., p. 176-177.

16.      Virginia Giuffre testified that she did not photograph the cut to her leg that was

caused by Rina Oh Amen.  Decl. Thomas, Ex. F, pp. 175.

17.      Virginia Giuffre's leg was evaluated by Ariel Ostad, M.D. on June 5, 2023.  Decl.

Dudelson, Ex B.

18.      Dr. Ostad measured a scar on Virginia Giuffre's left upper thigh to be 8 cm,

approximately 2.5 inches, in length.  Decl. Dudelson, Exhibit B.

19.      Dr. Ostad observed no hypertrophy (overgrown beyond the borders of the surface

of the skin) with respect to the scar.  Decl. Dudelson, Exhibit B.  Decl. Dudelson, Ex D, p. 23.

20.      In evaluating Virginia Giuffre's scar, Joel Studin, M.D., a plastic and

reconstructive surgeon, found the following:

> In this case, there is a fine line of scar collagen seen, reported a measuring 3.14"
> or 8cm.  It is not widened as would be seen from an open full-thickness wound,
> allowed to heal without surgical closure.  It is not sunken or raised and the skin
> beyond the edges is normal with appendages intact.  If this was allowed to heal
> without stitches, it is highly likely that this was a three inch wound and not fully
> through the skin.

Decl. Dudelson, Exhibit C.

21.      In evaluating Virginia Giuffre's scar, Joel Studin, M.D., testified as follows:

> A wound that was two to three centimeters deep, six inches long and
> untreated would heal by what they call secondary intention.  A wound that heals

by secondary intention, the edges of the normal skin stay far apart and the middle is bridged with the scar tissue that filled the gap.

If you cut two to three centimeters deep, the edges of your skin are going to burst open. They are not going to come back together with a surface bandage because of swelling from the injury. They're going to stay burst open, and you're going to close that wound by filling in scar tissue from the bottom up.

This scar would have been longer, it would have been wider. And instead of a few millimeters of scar tissue, it would have been a few centimeters across of scar tissue.

Now, how do I know that? Because skin is a complex organ. Skin has hair follicles, sweat glands, oil glands. It - - you can see all the different microstructures of the skin. A scar is cement. It's collagen. And you can never make the bricks and the mortar look the same.

And so, in this picture, the mortar is, like, a millimeter thick. There's no way that this wound burst open and was allowed to heal by itself. It's totally impossible.

* * *

And the length doesn't add up, because the skin beyond the eight centimeters is normal. There's no mortar there. The mortar never disappears. You can have a tiny fine line, but it's impossible for a scar that goes through the skin fully to disappear like it was never there.

And so it doesn't add up, that this is a six-inch scar because it's only eight centimeters in length by the dermatologist and by the pictures, and it doesn't add up that it healed by secondary intention.

This was, like, either a little tiny scrape or a little tiny partial thickness wound, but it was not anywhere near what was described. It's absolutely improbable.

Decl. Dudelson, Exhibit D, p. 25-27.

22.    Plaintiff did not produce an expert report to rebut Dr. Ostad and Dr. Studin's

findings and opinions.

-36-

Dated: Brooklyn, New York
      April 7, 2025

*Alexander Dudelson*
_____
ALEXANDER M. DUDELSON, ESQ. (AD4809)
*Attorney for Plaintiff*
26 Court Street - Suite 2306
Brooklyn, New York 11242
(718) 855-5100