ALEXANDER M. DUDELSON, ESQ. (AD4809)
26 Court Street - Suite 2306
Brooklyn, New York 11242
(718) 855-5100
(718) 624-9552 Fax
*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
RINA OH n/k/a RINA OH AMEN,                    Case No.: 21-cv-8839 (NRB)

                         Plaintiff,

            -against-

VIRGINIA L. GIUFFRE,

                         Defendant.
-------------------------------------------------------X


**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**



                         Respectfully Submitted,

                         ALEXANDER M. DUDELSON, ESQ. (AD4809)
                         *Attorneys for Plaintiff*
                         26 Court Street - Suite 2306
                         Brooklyn, New York 11242
                         (718) 855-5100

Table of Contents:

Table of Authorities...............................................................................................................ii

Preliminary Statement............................................................................................................1

Procedural History..................................................................................................................1

Counter-Statement of Facts....................................................................................................2

Argument..................................................................................................................................8

    I.       DEFENDANT'S STATEMENTS QUALIFY AS LIBEL.......................................9

           A.      Defendant's Contention that her Statements are
                   Opinions is Untenable...................................................................10

           B.      The Statements do no Escalate into the Hyperbolic...................................13

           C.      Statements from Blogs and Forums Boards
                   Qualify as Defamation...................................................................13

    II.      ALTHOUGH NOT RELEVANT TO THIS ACTION
          THE DEFENDANT ACTED WITH ACTUAL MALICE.....................................14

           A.      Although Jeffrey Epstein is an Issue of Public Concern, the
                   Statements Published Concern a Private Matter..........................................15

           B.      The Defendant Acted with Actual Malice...................................................16

    III.     PLAINTIFF HAS SUFFERED DAMAGES........................................................18

           A.      The Statutory Jurisdictional Amount..........................................................18

            B.      Defendant's Statements are Libel Per Se....................................................19

            C.      Plaintiff's Treating Physician Disagrees with
                   Defendant's Experts' Findings......................................................19

            D.      The Jury is the Supreme Arbiter of Damages.............................................21

CONCLUSION........................................................................................................................21

Table of Authorities:

**Statutes:**

Fed. R. Civ. P. 26(a)..............................................................................................................21

Fed.R.Civ.P. 56(c)................................................................................................................8

N.Y. Civ. Rights Law § 76-a.........................................................................................15, 16

N.Y. Penal Law § 120.00....................................................................................................20

**Cases:**

Albert v. Loksen, 239 F.3d 256 (2d Cir. 2001)...................................................................9

Allen v. Coughlin, 64 F.3d 77 (2d Cir.1995).......................................................................9

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)..............8

Biro v. Conde Nast, 883 F.Supp.2d 441 (S.D.N.Y. 2012)........................................................11, 12

Boule v. Hutton, 328 F.3d 84 (2d Cir. 2003)......................................................................21

Bouveng v. NYG Cap. LLC, 175 F. Supp. 3d 280 (S.D.N.Y. 2016)..............................................21

Brian v. Richardson, 87 N.Y.2d 46, 660 N.E.2d 1126, 637 N.Y.S.2d 347 (1995).........................13

Brimelow v. New York Times Co., No. 21-66-CV, 2021 WL 4901969 (2d Cir. 2021)................16

Celle v. Filipino Reporter Enters., Inc., 209 F.3d 163 (2d Cir. 2000)..................................9, 11, 18

Chau v. Lewis, 771 F.3d 118 (2d Cir. 2014)....................................................................10, 11

Church of Scientology Int'l v. Behar, 238 F.3d 168 (2d Cir. 2001)................................................17

Coleman v. Grand, 523 F.Supp.3d 244 (E.D.N.Y. 2021).....................................................15

Contemp. Mission, Inc. v. N.Y. Times Co., 842 F.2d 612 (2d Cir. 1988)....................................16

Conti v. Doe, No. 17-CV-9268 (VEC), 2019 WL 952281 (S.D.N.Y. Feb. 27, 2019).................9, 10

D'Amico v. City of N.Y., 132 F.3d 145 (2d Cir. 1998)............................................................9, 10

Dalbec v. Gentleman's Companion, Inc., 828 F.2d 921 (2d Cir. 1987)..........................17

Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed 469 (1993)..........20

Davis v. Boeheim, 24 N.Y.3d 262, 998 N.Y.S.2d 131, 22 N.E.3d 999 (2014)......................10, 11

DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104 (2d Cir. 2010)....................................14

Dillon v. City of New York, 261 A.D.2d 34, 704 N.Y.S.2d 1 (1st Dept. 1999).............................11

Elias v. Rolling Stone LLC, 872 F.3d 97 (2d Cir. 2017)....................................................9

Ferri v. Berkowitz, 561 F. App'x 64, 65 (2d Cir. 2014)..................................................21

Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219 (2d Cir.1994).......................8

Garrison v. Louisiana, 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964).......................17

Goldman v. Reddington, 417 F. Supp. 3d 163 (E.D.N.Y. 2019)................................14

Gross v. N.Y. Times Co., 82 N.Y.2d 146, 603 N.Y.S.2d 813, 623 N.E.2d 1163 (1993)...............12

Guiffre v. Oh, 231 A.D.3d 594, 218 N.Y.S.3d 618 (1st Dept. 2024)................................2

H & M Hennes & Mauritz LP v. Skanska USA Bldg., Inc.,
617 F.Supp.2d 152 (E.D.N.Y. 2008)..........................................................9

Hayashi v. Ozawa,
No. 17-CV-2558 (AJN), 2019 WL 1409389 (S.D.N.Y. Mar. 28, 2019).......................10

Hotchner v. Castillo-Puche, 551 F.2d 910 (2d Cir. 1977)................................12

Huggins v. Moore, 94 N.Y.2d 296, 704 N.Y.S.2d 904, 726 N.E.2d 456 (1999)......................15, 16

Karedes v. Ackerley Grp., Inc., 423 F.3d 107 (2d Cir. 2005)..........................18

Khalil v. Fox Corporation, 630 F.Supp.3d 568 (S.D.N.Y. 2022)....................................14

Kipper v. NYP Holdings Co.,
12 N.Y.3d 348, 354, 884 N.Y.S.2d 194, 912 N.E.2d 26 (2009)................................16

Kirch v. Liberty Media Corp., 449 F.3d 388 (2d Cir. 2006)....................................10, 11

Krusen v. Moss, 174 A.D.3d 1180, 105 N.Y.S.3d 607 (2019)........................................14

Liberman v. Gelstein, 80 N.Y.2d 429, 605 N.E.2d 344, 590 N.Y.S.2d 857 (1992)..................17, 19

Lynch v. N.Y. Times Co., 171 A.D. 399, 157 N.Y.S. 392 (1st Dept. 1916)..................................21

Manganiello v. Agostini, No. 07 CV 3644, 2008 WL 5159776
(S.D.N.Y. Dec. 9, 2008) affirmed 612 F.3d 149 (2d Cir. 2010)............................................20

Mangla v. Univ. of Rochester, 168 F.R.D. 137 (W.D.N.Y. 1996)..................................20

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)........................................................9

Miss Universe L.P. v. Monnin, 952 F.Supp.2d 591 (S.D.N.Y. 2013)..............................................14

Nelson v. Ardrey, 231 A.D.3d 179, 216 N.Y.S.3d 646 (2d Dept. 2024)..................................15, 16

November v. Time Inc., 13 N.Y.2d 175, 244 N.Y.S.2d 309, 194 N.E.2d 126 (1963)....................11

Palin v. New York Times Company, 940 F.3d 804 (2d Cir. 2019)..................................17

Pierce v. City of New York,
No. 16 CV 5703, 2017 WL 2623857 (E.D.N.Y. June 16, 2017)........................................20

Pisani v. Staten Island Univ. Hosp.,
No. 06-CV-1016, 2008 WL 1771922 (E.D.N.Y. Apr. 15, 2008)..............................................11, 15

Privitera v. Town of Phelps, 79 A.D.2d 1, 435 N.Y.S.2d 402 (4th Dept.1981)..............................19

Qureshi v. St. Barnabas Hosp. Ctr., 430 F. Supp. 2d 279 (S.D.N.Y. 2006)....................................11

Rapaport v. Bar Stools, Inc.,
No. 18-CV-8783 (NRB), 2021 WL 1178240  (S.D.N.Y. Mar. 29, 2021)........................................13

Rodriguez v. City of N.Y., 72 F.3d 1051 (2d Cir.1995)..................................................8

Scherer v. Equitable Life Assurance Society of U.S., 347 F.3d 394 (2d Cir. 2003)........................18

Shepler v. Metro-N. Commuter R.R.,
No. 13 CV 7192, 2016 WL 1532251 (S.D.N.Y. Apr. 15, 2016)........................................20

St. Amant v. Thompson, 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968)..............................17

Stepanov v. Dow Jones & Co., 120 A.D.3d 28, 987 N.Y.S.2d 37 (1ˢᵗ Dept. 2014)........................9

Stern v. Cosby, 645 F. Supp. 2d 258 (S.D.N.Y. 2009)...................................................................19

Torati v. Hodak, 147 A.D.3d 502, 47 N.Y.S.3d 288 (1ˢᵗ Dept. 2017)................................................9

Tsamasiros v. Jones, 232 A.D.3d 816, 223 N.Y.S.2d 144 (2d Dept. 2024)....................................16

Vinas v. Chubb Corp., 499 F. Supp. 2d 427 (S.D.N.Y. 2007)........................................................11

Watson v. N.Y. Doe 1, 439 F. Supp. 3d 152 (S.D.N.Y. 2020).........................................................14

Wilson v. New York,
No. 15-CV-23 (CBA) (VMS), 2018 WL 1466770  (E.D.N.Y. Mar. 26, 2018).............................10

Wolde-Meskel v. Vocational Instruction Project Community Services, Inc.,
166 F.3d 59 (2d Cir. 1999)...........................................................................................................18

Yammine v. DeVita, 43 A.D.3d 520,840 N.Y.S.2d 652 (3d Dept. 2007).....................................21

**PRELIMINARY STATEMENT:**

Plaintiff Rina Oh Amen respectfully submits this Memorandum of Law in opposition to defendant Virginia Giuffre's motion for summary judgment. Defendant's Rule 56.1 statement and Memorandum of Law refer to documents that are not attached as Exhibits, and are replete with misstatements regarding their content. At issue are seven statements that were posted by the defendant on the Twitter (now X) on October 28, 2020, and two thereafter. Defendant does not dispute that she posted the statements. In one particular statement, the defendant responds to a post of a painting authored by the plaintiff which depicts, amongst other things, a woman with a bleeding leg. In response, the defendant states: "This picture that Rina painted with the sliced leg bleeding is exactly what she used to do to me, I have a six inch scar on my left leg from her cutting me. I can let a lot of s**t go, but this I will never forget. #PureEvil #LockHerUp." The defendant seeks to insulate herself from liability by stating that her comments were protected speech as they were opinion and hyperbole. To the contrary, these provable false statements are clearly defamatory. Taken in any context, at least three of the statements conveyed facts about the plaintiff, which were offered for their accuracy. They are not statements of opinion, or even mixed opinion. The statements can be proven true or false by either truthful testimony or conclusive evidence. Defendant Virginia Giuffre has not sustained her heavy burden of demonstrating that there are no genuine issues of material fact. For the reasons stated below, the defendant's motion should be denied.

**PROCEDURAL HISTORY:**

The plaintiff's First Amended Complaint, alleging defamation, was filed on January 4, 2022. (Dkt. 12), Decl. Thomas, Ex. A. Defendant Virginia Giuffre filed an Answer to the Amended Complaint and Counterclaim on May 7, 2022. (Dkt. 23), Decl. Thomas, Ex. A. The Counterclaim

alleged that plaintiff's underlying action is a strategic lawsuit against public participation or SLAPP action as defined by N.Y. Civ. R. § 76-a(1)(a).  (Dkt. 23), Decl. Thomas, Ex. A.  On December 20, 2022, Virginia Giuffre filed an identical SLAPP action against Rina Oh Amen in the Supreme Court of the State of New York, County of New York, Index No.: 150003/2023.  Decl. Dudelson, Ex. E. Rina Oh Amen counterclaimed in that action, alleging a damages under the Adult Survivor's Act. See, Guiffre v. Oh, 231 A.D.3d 594, 218 N.Y.S.3d 618 (1st Dept. 2024).

Defendant Virginia Giuffre now moves for summary judgment, seeking dismissal of Rina Oh Amen's claim of defamation.

**COUNTER-STATEMENT OF FACTS:**

During some or all of the years 2000 and 2001, starting when plaintiff Rina Oh Amen was around (21) twenty-one years' old, plaintiff was solicited, manipulated, exploited, and abused by the notorious Jeffrey Epstein ("Epstein"), and his co-conspirators, Ghislaine Maxwell ("Maxwell") and others. Decl. Thomas, Ex. A, p.2.  Beginning when Defendant Viriginia Giuffre was 16, Ms. Giuffre was the victim of sex trafficking and abuse by Epstein.  Decl. Thomas, Ex. A., p. 11 of Answer and Counterclaim.

Prior to October 2020, the podcast series, produced by an investigative journalist, Tara Palmeri, was published by SONY Entertainment, and told the stories of women who were victimized by Epstein.  Decl. Thomas, Ex C.  Both Plaintiff and Defendant participated in interviews that were to become part of an episode of the Podcast.  Decl. Thomas, Ex C[1].  The Podcast is in the form of

---

[1]In defendant's statement of facts, defendant states: "During the interviews with Defendant, Defendant described her encounters with Plaintiff and identified her as (sic) abuser that had sexually abused Plaintiff as a minor.  For example, Plaintiff (sic) stated that Defendant (sic) used a razor to cut her body during the sex acts and showed Ms. Palmeri a scar that remains on her leg.  (SOMF ¶21)."  Defendant's statement of material fact 21 states: "Ms. Giuffre participated in the podcast, going cross-country and talking with people she remembered from her years as Epstein's victim, sometimes even asking them to come forward with any knowledge they had in order to support

a narrative by Tara Palmieri, which contains inserted parts of interviews with plaintiff, defendant, and Marijke Chartouni.  Decl. Thomas, Ex C.   Plaintiff Rina Oh Amen was interviewed separately from defendant Virginia Giuffre and Marijke Chartouni.  Decl. Thomas, Ex C [00:29:00-00:30:00]. In the Podcast, the only statements directly made by defendant Virginia Giuffre regarding plaintiff Rina Oh Amen is as follows:

> Rina was willing to do whatever Epstein wanted. . . So I met Rina in New York. Jeffrey introduced me to her. And Jeffrey kind of looked at us and he was like, I can totally pair you two together. . . She was [00:25:00] constantly jealous of the fact that she didn't get treated like the other girls. So she couldn't travel with Epstein. She didn't get the. I hate to call them benefits because that's not what it was. It was to go get abused by more men. And she didn't realize what she was saving herself from, but she was like, could you please throw like a good word in for me so I can go travel with you guys. I actually, and I told Jeffrey that she wants to come traveling. She wants to be a part of it more. And I can't remember his sentiments exactly. But it was like, well, she's not going to get it basically. And then I never saw Rina again, after that conversation.

Decl. Thomas, Ex. C [00:24:00-00:26:00].  In the Podcast, Tara Palmeri states: "Virginia also alleges that Rina was involved in abusing her when she was 17, which involves some S&M activity.  Rina denies this."  Decl. Thomas, Ex. C [00:34:00].   In a narrative form, Tara Palmeri also states: "Virginia says Rina not only knew about the sexual activity, she participated in it. Rina denies having any sexual contact with Virginia." Decl. Thomas, Ex. C [00:37:00].  Plaintiff Rina Oh Amen can then be heard stating:

> I'm just letting you know that what she accused me of doing is a complete fabricated lie. And I was nothing but nice to this girl. You know, it was very nice and, and I actually wanted to hang out with her and she declined to hang out with me. So we actually never spent any significant amount of time together, except for that one shopping adventure. And she got her belly button pierced that day.

---

other victims who were looking for answers. Deposition of Virginia Giuffre, 22:10-17."  Not once during the Podcast does defendant discuss being cut with a razor or show Ms. Palmeri a scar on her leg.  Decl. Thomas, Ex. C.

Decl. Thomas, Ex. C [00:37:00].  The Podcast never once mentions that plaintiff Rina Oh Amen cut

the defendant with a razor or caused a scar to the defendant's body. See Id.

After the publication of the Podcast on October 28, 2020, the public started posting

comments on Twitter (now X).  Decl. Dudelson, Ex. D.  In response to the postings, Defendant

Virginia Giuffre responded as follows:

> a. Virginia Giuffre @VRSVirginia "Ladies & Gentlemen meet Rina who now is
> pleading innocence since there's a $VCF$ she has decided to come out as a
> victim, when on the record she was #Epstein's GF"& was rewarded with $$ in
> trade for victims- real victims. May karma be upheld and justice be done." @FBI
> @nytimes Butterfly
> https://twitter.com/MoonProfessor/status/1321613698637598720 9:24 PM
> Oct 28, 2020 Twitter for iPhone
> https://twitter.com/VRSVirginia/status/1321623957183684610

Decl. Thomas, Ex. N, p. 4.

> b. Virginia Giuffre @VRSVirginia Oct 28, 2020 "Rina- if you read this I hope
> you live in shame for the rest of your life. You don't intimidate me any longer &
> the physical & mental scares you left me with should be enough to put your a** in
> jail, my line in the sand is drawn & your guilty! #LockHerUp" 7:03 PM Oct 28,
> 2020
> Twitter for iPhone https://twitter.com/VRSVirginia/status/1321588495467491328

Decl. Thomas, Ex. N, p. 6

> c. Virginia Giuffre @VRSVirginia Oct 28, 2020 "Jeffrey Epstein 'recruiter'
> admits bringing girls but denies abuse" Pathetic excuses from a deranged woman
> who was NO victim & should be sitting in jail next to #GhislaineMaxwell Rina-
> woman to woman, now that I am a woman, U disgust me. @DailyMail"
> 7:21 PM · Oct 28, 2020·Twitter for iPhone
> https://twitter.com/VRSVirginia/status/1321593015622758405

Decl. Thomas, Ex. N, p. 7

> d. Virginia Giuffre @VRSVirginia "What really makes sense is that Rina, a
> co-conspirator for #Epstein & #GhislaineMaxwell would go on to marry a fellow
> co-conspirator involved with #MichaelJackson . 2 sick peas in a pod, you can't
> even imagine how beyond sickened I feel right now. @pinkPeptobismol
> @teresajhelm" 7:59 PM · Oct 28, 2020·Twitter for iPhone

https://twitter.com/VRSVirginia/status/1321602627554045953

Decl. Thomas, Ex. N, p. 8.

    e. Virginia Giuffre @VRSVirginia "This picture that Rina painted with the sliced leg bleeding is exactly what she used to do to me, I have a 6 inch scar on my left leg from her cutting me. I can let a lot of s**t go, but this I will never forget. #PureEvil #LockHerUp" @FBI @thedailybeast @nytimes #Justice" Drop of bloodFolded handsButterfly 8:09 PM · Oct 28, 2020 Twitter for iPhone https://twitter.com/VRSVirginia/status/1321605000628371456

Decl. Dudelson, Ex. D, Plaintiff000019.

    f. Virginia Giuffre @VRSVirginia "Still being robbed of justice- just ask all the men & women I've named in my court docs why they still have their freedom to carry on with their untainted lives why I sit here crying my eyes out over rerun & rerun of the abusers still affecting my life." @FBI @SDNYnews #unfair Butterfly 8:34 PM · Oct 28, 2020·Twitter for iPhone https://twitter.com/VRSVirginia/status/1321611245712150533

Decl. Thomas, Ex. N, p. 5.

    g. Virginia Giuffre @VRSVirginia "Design from 2000-2002 and classically trained in sculpture," Uh Rina- those were the years in which you procured & partook in the abuse of minors with #Epstein Did he pay for that too? Your no survivor, your an oxygen thief. A virus on humanity." #Karma #Justice https://twitter.com/MoonProfessor/status/1321611635258134528 9:13 PM Oct 28, 2020 Twitter

Decl. Thomas, Ex. N, p. 5.

    As to the Tweet wherein defendant Virginia Giuffre states that the plaintiff "partook in the abuse of minors," Ms. Giuffre testified at her deposition as follows: "[w]ell, I was a minor when she abused me." Decl. Thomas, Ex. F, p. 232, lines 19-25. Plaintiff Rina Oh Amen has stated that she was sexually abused by defendant Virginia Giuffre on one occasion when Virginia Giuffre was the age of eighteen years. Decl. Dudelson, Ex. A. This was the only sexual encounter between the parties. Decl. Dudelson, Ex. A.

    Further, during discovery, the plaintiff was able to explore the defendant's allegations

regarding the injury and six inch scar suffered by defendant Virginia Giuffre at the hands of the

plaintiff.  The defendant stated that she started "cutting" herself when she was a "little girl," [Decl.

Thomas, Ex. F, p. 160] and still has scars from where she cut herself [Decl. Thomas, Ex. F, p. 164].

The defendant had cut her wrist between the years of 2000 and 2003 in an attempt to commit suicide.

Decl. Thomas, Ex. F, p. 163-164.  The defendant claims that Rina Oh Amen cut her leg with a fold

up barbershop razor blade in Epstein home.  Decl. Thomas, Ex. F, p. 155-159.  She further testified

that:

> But [Rina Oh Amen] dropped to her knees, and she told me to open my legs.  And
> then she sliced a good six inches into my leg.  And it was pretty deep; like it really
> needed stitches.  And the blood was just pouring. . .

Decl. Thomas, Ex. F, p. 166.  Virginia Giuffre testified that cut caused by Rina Oh Amen was six

inches across (Decl. Thomas, Ex. F, p. 167) and was deep enough to "see meat" (Decl. Thomas, Ex.

F, p. 167).   Virginia Giuffre testified that the incision was "[m]aybe 2 centimeters, maybe 3

centimeters" deep.  Decl. Thomas, Ex. F, p. 167.  The wound to the leg was first treated with iodine

and gauze (Decl. Thomas, Ex. F, p. 172-174) and bled for "a good three or fours days" (Decl.

Thomas, Ex. F, p. 177).  The injury was never treated by a medical professional (Decl. Thomas, Ex.

F., p. 176-177) or photographed by defendant Virginia Giuffre (Decl. Thomas, Ex. F, p. 175).

Plaintiff Rina Oh Amen denies that this incident took place.  Thomas Decl., Ex. B. p. 81, lines 14-

18; p. 141, lines 9-13; p. 141, lines 19-25; p. 142, lines 2-3.

Defendant Virginia Giuffre's leg was evaluated by Ariel Ostad, M.D. on June 5, 2023.  Decl.

Dudelson, Exhibit B.  Dr. Ostad measured a scar on Virginia Giuffre's left upper thigh to be 8 cm,

approximately 2.5 inches, in length.  Decl. Dudelson, Exhibit B.  Dr. Ostad observed no hypertrophy

(overgrown beyond the borders of the surface of the skin) with respect to the scar.  Decl. Dudelson,

Ex. B.;  Decl. Dudelson, Ex. D, p. 23).  In evaluating Virginia Giuffre's scar, Joel Studin, M.D., a

plastic and reconstructive surgeon, found the following:

> In this case, there is a fine line of scar collagen seen, reported a measuring 3.14" or
> 8cm.  It is not widened as would be seen from an open full-thickness wound, allowed
> to heal without surgical closure.  It is not sunken or raised and the skin beyond the
> edges is normal with appendages intact.  If this was allowed to heal without stitches,
> it is highly likely that this was a three inch wound and not fully through the skin.

Decl. Dudelson, Exhibit B.  When questioned about his findings, Joel Studin, M.D., testified as

follows:

> A wound that was two to three centimeters deep, six inches long and
> untreated would heal by what they call secondary intention.  A wound that heals by
> secondary intention, the edges of the normal skin stay far apart and the middle is
> bridged with the scar tissue that filled the gap.

> If you cut two to three centimeters deep, the edges of your skin are going to
> burst open.  They are not going to come back together with a surface bandage
> because of swelling from the injury.  They're going to stay burst open, and you're
> going to close that wound by filling in scar tissue from the bottom up.

> This scar would have been longer, it would have been wider.  And instead of
> a few millimeters of scar tissue, it would have been a few centimeters across of scar
> tissue.

> Now, how do I know that? Because skin is a complex organ.  Skin has hair
> follicles, sweat glands, oil glands.  It - - you can see all the different microstructures
> of the skin.  A scar is cement.  It's collagen.  And you can never make the bricks and
> the mortar look the same.

> And so, in this picture, the mortar is, like, a millimeter thick.  There's no way
> that this wound burst open and was allowed to heal by itself.  It's totally impossible.

> * * *

> And the length doesn't add up, because the skin beyond the eight centimeters
> is normal.  There's no mortar there.  The mortar never disappears.  You can have a
> tiny fine line, but it's impossible for a scar that goes through the skin fully to
> disappear like it was never there.

And so it doesn't add up, that this is a six-inch scar because it's only eight centimeters in length by the dermatologist and by the pictures, and it doesn't add up that it healed by secondary intention.

This was, like, either a little tiny scrape or a little tiny partial thickness wound, but it was not anywhere near what was described.  It's absolutely improbable.

Decl. Dudelson, Ex C, p. 25-27.  Plaintiff did not produce an expert report or records of a treating physician to rebut Dr. Ostad and Dr. Studin's findings and opinions.

## ARGUMENT:

Summary judgment should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c). The courts do not try issues of fact on a motion for summary judgment, but, rather, determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

"The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish [its] right to judgment as a matter of law."  Rodriguez v. City of N.Y., 72 F.3d 1051, 1060–61 (2d Cir.1995).  Summary judgment is appropriate where the moving party has shown that "little or no evidence may be found in support of the nonmoving party's case.  When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper."  Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1223–24 (2d Cir.1994) (citations omitted).  In considering a summary judgment motion, the Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable

inference in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." Allen v. Coughlin, 64 F.3d 77, 79 (2d Cir.1995) (internal citations and quotation marks omitted); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). However, "[t]he non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful." D'Amico v. City of N.Y., 132 F.3d 145, 149 (2d Cir. 1998). When deciding a motion for summary judgment, a court must remain mindful of the fact that summary judgment is "an extreme remedy, cutting off the rights of the non-moving party to present a case to the jury." H & M Hennes & Mauritz LP v. Skanska USA Bldg., Inc., 617 F.Supp.2d 152, 155 (E.D.N.Y. 2008).

## I.    DEFENDANT'S STATEMENTS QUALIFY AS LIBEL

Defamation, "consisting of the twin torts of libel and slander," is "the invasion of the interest in a reputation and good name." Albert v. Loksen, 239 F.3d 256, 265 (2d Cir. 2001) (citation omitted). Defamatory words expressed in writing are classified as libel, and this generally includes social media and text messages. See Celle v. Filipino Reporter Enters., Inc., 209 F.3d 163, 176 (2d Cir. 2000); see also Conti v. Doe, No. 17-CV-9268 (VEC), 2019 WL 952281, at *2 (S.D.N.Y. Feb. 27, 2019) (treating text messages as libel); Torati v. Hodak, 147 A.D.3d 502, 504, 47 N.Y.S.3d 288 (1st Dept. 2017) (Facebook message actionable as libel).

To state a claim for libel under New York law, a complaint must allege "(1) a false statement that is (2) published to a third party (3) without privilege or authorization, and that (4) causes harm," unless the statement is defamatory per se, in which case harm is presumed. Elias v. Rolling Stone LLC, 872 F.3d 97, 104 (2d Cir. 2017) *quoting* Stepanov v. Dow Jones & Co., 120 A.D.3d 28, 34,

987 N.Y.S.2d 37 (1ˢᵗ Dept. 2014).  Statements that falsely charge plaintiffs with "serious" criminal

activity are defamatory per se.  See Hayashi v. Ozawa, No. 17-CV-2558 (AJN), 2019 WL 1409389,

at *2 (S.D.N.Y. Mar. 28, 2019); Wilson v. New York, No. 15-CV-23 (CBA) (VMS), 2018 WL

1466770, at *4 (E.D.N.Y. Mar. 26, 2018).  A crime is "serious. . . if it is (a) punishable by

imprisonment in a state or federal institution, or (b) regarded by public opinion as involving moral

turpitude."  Conti, supra at *7.

### A.      Defendant's Contention that her Statements are Opinions is Untenable.

"[O]nly factual statements are actionable as defamation or libel. . . because New York law

protects derogatory statements which may be categorized as 'opinion' as opposed to 'fact.'" Chau

v. Lewis, 771 F.3d 118, 128 (2d Cir. 2014).  "Determining whether a statement is an allegation of

fact or mere opinion is a legal question for the court." Id.  "The dispositive inquiry is whether a

reasonable reader could have concluded that the statements were conveying facts about the plaintiff."

Davis v. Boeheim, 24 N.Y.3d 262, 998 N.Y.S.2d 131, 22 N.E.3d 999, 1005 (2014) (citation,

alterations, and quotation marks omitted). To determine whether a statement is one of opinion or

fact, courts look to four factors: "(1) whether the specific language in issue has a precise meaning

which is readily understood or whether it is indefinite and ambiguous; (2) a determination of whether

the statement is capable of being objectively characterized as true or false; (3) an examination of the

full context of the communication in which the statement appears; and (4) a consideration of the

broader social context or setting surrounding the communication[,] including the existence of any

applicable customs or conventions which might signal to readers or listeners that what is being read

or heard is likely to be opinion, not fact." Kirch v. Liberty Media Corp., 449 F.3d 388, 402 n.7 (2d

Cir. 2006) (citation and quotation marks omitted); see also Chau, supra at 128–29 (same). "[C]ourts

-10-

should not consider the statement in question in isolation, but must analyze statements 'in the context of the entire communication and of the circumstances in which they were written.'" Pisani v. Staten Island Univ. Hosp., No. 06-CV-1016, 2008 WL 1771922, at *12 (E.D.N.Y. Apr. 15, 2008) (alterations omitted) *quoting* Celle, supra at 179); see also Davis, supra at 1005 (instructing that a court should not "sift[ ] through a communication for the purpose of isolating and identifying assertions of fact," and that a court should instead "look to the [overall] context in which the assertions were made and determine on that basis whether the reasonable reader would have believed that the challenged statements were conveying facts about the plaintiff." A court need not "strain to interpret writings in their mildest and most inoffensive sense to hold them non[-]libelous," (Biro v. Conde Nast, 883 F.Supp.2d 441, 447 [S.D.N.Y. 2012] *quoting* November v. Time Inc., 13 N.Y.2d 175, 244 N.Y.S.2d 309, 194 N.E.2d 126, 128 [1963]), but also should not "render statements actionable by giving them a 'strained or artificial construction,'" (Qureshi v. St. Barnabas Hosp. Ctr., 430 F. Supp. 2d 279, 287 [S.D.N.Y. 2006] *quoting* Dillon v. City of New York, 261 A.D.2d 34, 704 N.Y.S.2d 1, 5 [1st Dept. 1999]).

"[I]f a statement is found to contain opinion, the court must next determine whether the statement is 'pure opinion' (and thus non-actionable) or 'mixed opinion' (and therefore actionable)." Chau, 771 F.3d at 129. "Pure opinion is a statement of opinion which is accompanied by a recitation of the facts upon which it is based or does not imply that it is based on undisclosed facts." Id. A statement of "mixed opinion," on the other hand, "is an opinion that does imply a basis in undisclosed facts, or facts known only to the author." Chau, supra at 129. While statements of "mixed opinion" are actionable, "New York law absolutely protects statements of 'pure opinion,' such that they can never be defamatory." Kirch, supra at 402; see also Vinas v. Chubb Corp., 499

-11-

F. Supp. 2d 427, 435 (S.D.N.Y. 2007).  "This is because a statement of opinion is not an assertion of fact that can be proved false, and '[a]n assertion that cannot be proved false cannot be held libelous.'"  <u>Biro</u>, <u>supra</u> at 459–60 *quoting* <u>Hotchner v. Castillo-Puche</u>, 551 F.2d 910, 913 (2d Cir.1977); <u>see also</u> <u>Gross v. N.Y. Times Co.</u>, 82 N.Y.2d 146, 603 N.Y.S.2d 813, 623 N.E.2d 1163, 1168 (1993) ("[A] proffered hypothesis that is offered after a full recitation of the facts on which it is based is readily understood by the audience as conjecture.").

In the matter at bar, the Defendant has accused the Plaintiff of physical maiming her, which has resulted in a six inch scar on her leg. The first Tweet was in response to a posting of the Podcast, in which the defendant states:  "Rina- if you read this I hope you live in shame for the rest of your life. You don't intimidate me any longer & the physical & mental scares[2] (sic) you left me with should be enough to put your a** in jail, my line in the sand is drawn & your guilty! #LockHerUp" 7:03 PM Oct 28, 2020.  The second Tweet, was in response to a post of the plaintiff's painting that depicts a woman with a bleeding thigh, to wit: "This picture that Rina painted with the sliced leg bleeding is exactly what she used to do to me, I have a 6 inch scar on my left leg from her cutting me. I can let a lot of s**t go, but this I will never forget. #PureEvil #LockHerUp" @FBI @thedailybeast @nytimes #Justice."  The defendant also states in a Tweet that the plaintiff abused the defendant when she was a minor.  The statements have a precise meaning which is understood by a reader.  The is no doubt that a reasonable reader would have believed that the challenged statements were conveying facts about the plaintiff.  Indeed, plaintiff Rina Oh Amen has provided proof establishing the falsity of these statements.

---

[2]During her deposition, the defendant acknowledges that she meant to write "scars" instead of "scares." Decl. Thomas, Ex. F, p. 218, lines 12-22.

**B.**    **The Statements do not Escalate into the Hyperbolic.**

In the matter of <u>Rapaport v. Bar Stools, Inc.</u>, No. 18-CV-8783 (NRB), 2021 WL 1178240

(S.D.N.Y. Mar. 29, 2021), this Court discussed how a statement that is capable of being proven false

may still not be actionable:

> For example, a publication's "tone and apparent purpose" may indicate to the
> audience that what they are hearing is likely to be a statement of opinion delivered
> from a "highly partisan point of view," rather than an accurate factual assessment
> offered by a "disinterested observer." Similarly, a publication may indicate to
> audiences that they are likely hearing opinionated viewpoints and not factual
> assessments when its "tenor . . . often escalates into the hyperbolic," when its "tone
> ... indicates that the writer is expressing his or her personal views, in that it reflects
> a degree of anger and resentment," or when it is presented as satire or fiction that
> audiences would not reasonably interpret as "describing actual facts about the
> plaintiff or actual events in which [he] participated". Moreover, when a statement,
> "read in context, [is] readily understood as conjecture, hypothesis, or speculation,"
> that "signals [to] the reader that what is said is opinion, and not fact."

<u>Id.</u> at *12.  (Citations omitted).

In the matter at bar, the immediate context in which the challenged statements were made

supports the conclusion that the specific accusations of which plaintiff complains could not have

been understood by a reasonable reader as assertions of fact that were proffered for their accuracy.

The author, has publically been identified as a victim of Jeffrey Epstein.  The statements were made

after the release of a Podcast regarding victims of Jeffrey Epstein.  Finally, the identity, role and

reputation of the author herein provide the reader with clues as to the article's import.  <u>See</u> <u>Brian v.</u>

<u>Richardson</u>, 87 N.Y.2d 46, 51, 660 N.E.2d 1126, 637 N.Y.S.2d 347 (1995).  The immediate and

broader context in which the statements supports the conclusion that the defendant's statement were

to be understood by a reasonable reader as assertions of fact that were proffered for their accuracy.

**C.**    **Statements on Blogs and Forum Boards Qualify as Defamation.**

Although courts have "noted that statements made online in blogs or forum boards are more

likely to be interpreted as opinion," courts have also found that such statements qualify as defamation. See, e.g., Khalil v. Fox Corporation, 630 F.Supp.3d 568, 582 (S.D.N.Y. 2022) (finding that statements on Twitter could not be given protections afforded to formed opinions); Watson v. N.Y. Doe 1, 439 F. Supp. 3d 152, 162 (S.D.N.Y. 2020) (finding that a defendant's Facebook comments could "reasonably be read to suggest that [the defendant] intended to endorse the alleged defamatory statement that the plaintiff sexually assaulted women"); Goldman v. Reddington, 417 F. Supp. 3d 163, 173 (E.D.N.Y. 2019) (finding that the plaintiff stated a claim of defamation when the defendant published "numerous statements" on Facebook accusing the plaintiff of rape); Krusen v. Moss, 174 A.D.3d 1180, 105 N.Y.S.3d 607 (2019) (finding that a statement on Facebook that the plaintiff was "pilfering free gas from taxpayers" was "susceptible to a defamatory meaning, in as much as it conveys, at a minimum, serious impropriety and, at worst, criminal behavior"); DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 114 (2d Cir. 2010) (holding that reporter stated a claim for defamation based on statements made on television industry website); Pisani, supra at 179 (denying motion to dismiss defamation claim based on allegations that defendants prepared and approved for publication statements issued in press release on attorney general's website regarding plaintiff's involvement in Medicaid fraud case); Miss Universe L.P. v. Monnin, 952 F.Supp.2d 591, 598 (S.D.N.Y. 2013) (confirming arbitration award on basis that arbitrator did not exceed powers in awarding $5 million in damages for defamation where statements were made, inter alia, on Facebook; arbitrator had found that the defamatory Facebook posts were factual, capable of proof, false, and "obviously harmful to [plaintiff's] business reputation").

## II.    ALTHOUGH NOT RELEVANT TO THIS ACTION, THE DEFENDANT ACTED WITH ACTUAL MALICE.

The New York anti-SLAPP law states:

> In an action involving public petition and participation, damages may only be recovered if the plaintiff, in addition to all other necessary elements, shall have established by clear and convincing evidence that any communication which gives rise to the action was made with knowledge of its falsity or with reckless disregard of whether it was false, where the truth or falsity of such communication is material to the cause of action at issue.

N.Y. Civ. Rights Law § 76-a(2).

### A.    Although Jeffrey Epstein is an Issue of Public Concern, the Statements Published Concern a Private Matter.

 Cases applying New York's anti-SLAPP statute have determined that social media platforms, such as Facebook, constitute a "public forum." See Coleman v. Grand, 523 F.Supp.3d 244, 266 (E.D.N.Y. 2021) (Facebook is a public forum within the meaning of New York's anti-SLAPP law). The decisions have all rested upon findings that postings on those sites constitute statements made in a public forum in connection with an issue of public interest. for the purposes the anti-SLAPP statute. Based upon the intent of the Legislature to redefine New York's anti-SLAPP statute as broadly as possible, and the interpretation in decisions by other state courts of their similar state anti-SLAPP statutes defining Facebook and other social media applications as public forums, New York Courts have concluded that Facebook is a public forum within the meaning of Civil Rights Law § 76–a(1).

Nonetheless, contrary to the defendant's contention, this action is not subject to the anti-SLAPP statute because the defendant's statements published on Twitter concern "a purely private matter" (id. § 76–a[1][d]; see § 76–a[1][a]) and were "directed only to a limited, private audience" (Huggins v. Moore, 94 N.Y.2d 296, 303, 704 N.Y.S.2d 904, 726 N.E.2d 456 [1999]). The New York State Appellate Division, Second Judicial Department held in Nelson v. Ardrey, 231 A.D.3d 179, 216 N.Y.S.3d 646 (2d Dept. 2024), that social media posts accusing the plaintiff of

-15-

sexual assault did not fall within the ambit of the anti-SLAPP statute.  The Second Department held that the action, which was to recover damages for defamation per se, was "not subject to the anti-SLAPP statute because the defendants' statements published on the plaintiff's Facebook page concerned 'a purely private matter' and were 'directed only to a limited, private audience.'" Id. at 183-185.  Here, contrary to the defendant's contention, the subject Tweets concerned a purely private matter and was directed to a limited audience.  Moreover, the subject Tweets did not implicate any issue of broad public interest.  See Huggins supra at 303–304; Nelson, supra.  Like the defendants in Nelson, although defendant Virginia Giuffre "[her] primary focus was not an issue of broad public interest." Id.  Moreover, like the situation in Nelson, the social media posts at issue here are "private allegations of the plaintiff's alleged crimes." Id.  Under these circumstances, and guided by Nelson, the social media posts are "not within the sphere of public interest."  See also Tsamasiros v. Jones, 232 A.D.3d 816, 223 N.Y.S.2d 144 (2d Dept. 2024).

**B.    The Defendant Acted with Actual Malice.**

"[T]he actual malice standard imposes on a plaintiff 'a heavy burden of proof, a burden that is designed to assure to the freedoms of speech and press that breathing space essential to their fruitful exercise.'" Brimelow v. New York Times Co., No. 21-66-CV, 2021 WL 4901969, at *2 (2d Cir. 2021) quoting Contemp. Mission, Inc. v. N.Y. Times Co., 842 F.2d 612, 621 (2d Cir. 1988).  On summary judgment, the question for the Court is "whether the evidence in the record could support a reasonable jury finding either that the plaintiff has shown actual malice by clear and convincing evidence or that the plaintiff has not." Kipper v. NYP Holdings Co., 12 N.Y.3d 348, 354, 884 N.Y.S.2d 194, 912 N.E.2d 26 (2009).

To demonstrate actual malice a plaintiff must show that an allegedly defamatory "statement

was made 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" Palin v. New York Times Company, 940 F.3d 804, 809 (2d Cir. 2019) *quoting* Church of Scientology Int'l v. Behar, 238 F.3d 168, 173–74 (2d Cir. 2001).  The standard is a subjective one, meaning that to satisfy this burden the plaintiff needs to allege that the defendant actually possessed knowledge that the statement was false or a "high degree of awareness of [the statement's] probable falsity." Garrison v. Louisiana, 379 U.S. 64, 74, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964); see also Liberman v. Gelstein, 80 N.Y.2d 429, 438, 590 N.Y.S.2d 857, 605 N.E.2d 344 (1992) ("[T]here is a critical difference between not knowing whether something is true and being highly aware that it is probably false. Only the latter establishes reckless disregard in a defamation action.").

A defendant's subjective mental state "revolves around facts usually within the defendant's knowledge and control, and rarely is admitted." Dalbec v. Gentleman's Companion, Inc., 828 F.2d 921, 927 (2d Cir. 1987).  As such, "a court typically will infer actual malice from objective facts." Celle, supra at 183.  For instance, "[a]ctual malice can be established through the defendant's own actions or statements, the dubious nature of [its] sources, and the inherent improbability of the story among other circumstantial evidence." Id.

"The Supreme Court has provided several factors to consider when determining whether a speaker acted with actual malice: (1) whether a story is fabricated or is based wholly on an unverified, anonymous source, (2) whether the defendant's allegations are so inherently improbable that only a reckless person would have put them in circulation, or (3) whether there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports." Karedes v. Ackerley Grp., Inc., 423 F.3d 107, 114-15 (2d Cir. 2005); Church of Scientology Int'l, supra at 174 (2d Cir. 2001) *citing* St. Amant v. Thompson, 390 U.S. 727, 732, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968).

-17-

This analysis typically requires discovery. Id.

In the matter at bar, it is asserted that defendant Virginia Giuffre has completed fabricated her account of being abused as a minor by the plaintiff, and that she suffered a six inch cut on her leg at the hands of the plaintiff.  Dr. Joel Studin has determined with medical certainty that the Defendant's account of the incident is "impossible."  Defendant has not produced a scintilla of medical proof that rebuts Dr. Studin's findings.  There is no doubt that the defendant has acted with malice in making these statements about fake accounts.

III.    PLAINTIFF HAS SUFFERED DAMAGES

A.    **The Statutory Jurisdictional Amount**.

Defendant seeks to dismiss the complaint on the basis that the Court lacks jurisdiction in this case, because at the time Plaintiff filed her complaint, she did not have a good faith basis for claiming an amount in controversy in excess of $75,000.00.  Merely because the claims and scope of what may be recovered has potentially been whittled down does not render the initial damages allegation as having been made in bad faith.  See Scherer v. Equitable Life Assurance Society of U.S., 347 F.3d 394, 397 (2d Cir. 2003) ("To overcome the face-of-the-complaint presumption, the party opposing jurisdiction must show to a legal certainty that the amount recoverable does not meet the jurisdictional threshold.  Our cases have set a high bar for overcoming this presumption. The legal impossibility of recovery must be so certain as virtually to negative the plaintiff's good faith in asserting the claim. Even where the allegations leave grave doubt about the likelihood of a recovery of the requisite amount, dismissal is not warranted."); Wolde-Meskel v. Vocational Instruction Project Community Services, Inc., 166 F.3d 59, 63 (2d Cir. 1999) ("Legal certainty is analyzed by what appears on the face of the complaint; subsequent events — such as a valid defense

offered by the defendant, or actual recovery in an amount less than the minimum jurisdictional amount — do not show plaintiff's bad faith or oust the jurisdiction."). Accordingly, Defendant's request should be denied.

**B.      Defendant's Statements are Libel Per Se.**

A statement is defamatory *per se* if it (1) charges the plaintiff with a serious crime; (2) tends to injure the plaintiff in her or his trade, business or profession; (3) imputes to the plaintiff a loathsome disease; or (4) imputes unchastity to a woman. <u>Liberman</u>, <u>supra</u> at 435. With respect to such statements, "*the law dispenses with the special damages requirement. . . because [they] are considered so inflammatory and offensive that the law presumes the statements to have caused damage.*" <u>Stern v. Cosby</u>, 645 F. Supp. 2d 258, 289 (S.D.N.Y. 2009). (Emphasis supplied). The Defendant has accused the Plaintiff of physical maiming her, which has resulted in a six inch scar on her leg, and abusing the defendant when she was a minor. In New York, a statement that falsely charges a person who with "an indictable offense upon conviction of which punishment may be inflicted" can be considered defamation *per se*. <u>Privitera v. Town of Phelps</u>, 79 A.D.2d 1, 3, 435 N.Y.S.2d 402, 404 (4th Dept. 1981). Under New York law, Plaintiff's purported actions, if true, could constitute an indictable offense—a person is guilty of assault (in the third degree) when "with intent to cause physical injury to another person, he causes such injury to such person or to a third person," N.Y. Penal Law § 120.00. To make matters worse, the Defendant's statements were in writing: "What gives the sting to the writing is its permanence of form; the spoken word dissolves, but the written one abides and perpetuates the scandal." 43A N.Y.Jur.2d, Defamation and Privacy § 3 (2022).

**C.      Plaintiff's Treating Physician Disagrees with the Defendant's Experts' Findings.**

-19-

"The general rule is that treating physicians are fact witnesses or non-retained experts, whereas doctors 'retained for purposes of trial' who form their opinions based on 'knowledge acquired or developed in anticipation of litigation or for trial' are expert witnesses requiring an expert report." Shepler v. Metro-N. Commuter R.R., No. 13 CV 7192, 2016 WL 1532251, at *2 (S.D.N.Y. Apr. 15, 2016) *quoting* Mangla v. Univ. of Rochester, 168 F.R.D. 137, 139 (W.D.N.Y. 1996). "Because courts are vested with an integral gatekeeping function under Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed 469 (1993), courts in this Circuit have drawn further distinctions regarding the range of acceptable testimony that a treating physician may offer as compared to the range that an expert may offer." Pierce v. City of New York, No. 16 CV 5703, 2017 WL 2623857, at *2 (E.D.N.Y. June 16, 2017).

"Courts in this Circuit have regularly held that treating physicians may testify as to opinions formed during their treatment, including causation, severity, disability, permanency and future impairments, without the obligation to submit an expert report." Manganiello v. Agostini, No. 07 CV 3644, 2008 WL 5159776, at *12 (S.D.N.Y. Dec. 9, 2008) *affirmed* 612 F.3d 149 (2d Cir. 2010). The treating physician need not be formally designated as an expert. See Fed. R. Civ. P. 26(a) advisory committee's note to 2010 amendment ("A witness who is not required to provide a report under Rule 26(a)(2)(B) may both testify as a fact witness and also provide expert testimony under Evidence Rule 702, 703 or 705. Frequent examples include physicians or other health care professionals. . ."). Essentially, a treating physician is permitted to testify to any observation he or she has made with his five senses, as well as to the opinions he or she has formed as a result of these observations. Although a treating physician need not be designated as an expert in order to provide an opinion, the party offering the testimony is still bound to follow the timeliness requirements of

-20-

Rule 26.

In the matter at bar, Dr. William Clark was disclosed as the plaintiff's treating physician. Dr. Clark treated the plaintiff at the time of the defendant's libelous remarks, and found that the nature of the Tweets and the time at which they were printed did cause trauma and contributed to the plaintiff's psychotic symptoms. Decl. Dr. Clark, p. 4.

**D.    The Jury is the Supreme Arbiter of Damages.**

It has long been understood that "[i]n a libel case, more, perhaps, than in any other, the jury is generally considered to be the supreme arbiter on the question of damages." Lynch v. N.Y. Times Co., 171 A.D. 399, 401, 157 N.Y.S. 392 (1st Dept. 1916). "In actions for other torts there is generally some standard by which the reasonableness of an award of damages may be tested, but it is seldom so in actions for libel and slander where the elements of wounded sensibilities and the loss of public esteem play a part." Yammine v. DeVita, 43 A.D.3d 520, 521, 840 N.Y.S.2d 652 (3d Dept. 2007). Indeed, the law presumes damages arising from defamation *per se*, (Boule v. Hutton, 328 F.3d 84, 94 [2d Cir. 2003]), and juries are commonly instructed that defamation damages cannot be proven with "mathematical accuracy," (Ferri v. Berkowitz, 561 F. App'x 64, 65 [2d Cir. 2014] *quoting* N.Y. Pattern Jury Instr., Civil 3:29). Because the assessment of damages is "peculiarly within the jury's province," a court "must use prudence and restraint. . . in the exercise of its discretion over these awards." Bouveng v. NYG Cap. LLC, 175 F. Supp. 3d 280, 344 (S.D.N.Y. 2016) (omission in original).

In the matter at bar, the Jury will be the arbiter of damages.

**CONCLUSION:**

For the reasons stated above, defendant's motion for summary judgment should be denied.

-21-

Dated: Brooklyn, New York
      April 7, 2025

*Alexander Dudelson*
ALEXANDER M. DUDELSON (AD4809)
*Attorney for Plaintiff*
26 Court Street - Suite 2306
Brooklyn, New York 11242
(718) 855-5100

-22-